# TradeWallStreet
**F I N A N C I A L**

1101 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

JM PROPERTY SP Z.O.O SP K
UL ZELAZNA 59
00-848 WARSZAWA
POLAND

### Account Information

| | |
|---|---|
| Account Number: | 30013957 |
| Financial Advisor #: | Y300 |

### Your Financial Advisor

TWS FINANCIAL HOUSE REP
(202) 449-7260

### Statement Period

**April 1, 2011 to April 30, 2011**

### Office Serving You

1101 Pennsylvania Avenue
Suite 600
Washington D.C.  20004
(202) 449-7260

## Account Value

| Asset Category | Current Value 04/30/11 | Prior Value 03/31/11 | Percent of Acct Assets | Estimated Annual Income | Estimated Current Yield |
|---|---|---|---|---|---|
| Cash Account Balance | (95.86) | 0.00 | 100.00% | | |
| Money Fund Balance | 0.00 | 29.14 | | | |
| Total: Portfolio Values | (95.86) | 29.14 | 100.00% | | |
| Less: Margin Loan Balance | (0.17) | 0.00 | 0.18% | | |
| Total Account Value | (96.03) | 29.14 | 100.18% | | |

## Asset Allocation



CASH + MNYMKT
100.00%

## Income Summary

| | This Period | Year to Date |
|---|---|---|
| Margin Interest | (0.17) | (0.17) |
| Total: Income | (0.17) | (0.17) |

The Account of the Customer is subject to the following terms and conditions ("Agreement") which the Customer agrees to and accepts by use, maintenance and/or continuation of the Account notwithstanding any notice or statement of intention to You to the contrary.

**1. Definitions.** "Account" shall refer individually and collectively to all accounts which the Customer has previously opened, now has open or may open in the future, in which the Customer has any interest, with You or any Introducing Broker, and any and all previous, current and future transactions in such accounts. "Customer" refers to the individual(s) and/or entity(ies) in whose name the Account referenced on the face of this Account statement is carried or who may otherwise have any interest in an Account. "Introducing Broker" means any brokerage firm which introduces securities transactions on behalf of the Customer, which transactions are cleared through You, whether one or more. "Obligations" means all indebtedness, debit balances, liabilities or other obligations of any kind of the Customer to You, whether now existing or hereafter arising. "Securities or other Property" shall mean all money, securities, commodities or other property of every kind and nature and all contracts and options relating thereto, whether for present or future delivery. "You" or "Your" refers to Penson Financial Services, Inc.

**2. Payment of Indebtedness Upon Demand.** The Customer shall at all times be liable for the payment upon demand of any Obligations owing from the Customer to You, and Customer shall be liable to You for any deficiency remaining in any Account in the event of the liquidation thereof, in whole or in part, by You, the Introducing Broker, or by the Customer, and the Customer shall pay such Obligations upon demand.

**3. Security Interest; Liquidation.** All Securities or other property now or hereafter held, carried or maintained by You in or for the Account shall be subject to a first and prior lien and security interest for the discharge of all of the Obligations of the Customer and are to be held by You as security for the payment of the Obligations of the Customer to You, to the fullest extent allowed by law. You shall have the right to transfer Securities or other Property so held by You from or to any Account of the Customer whenever You so determine. Whenever the Customer does not, on or before the settlement date, pay in full for any Securities or other Property purchased for the Account of the Customer, or deliver any Securities or other Property sold for such Account, or if any other Obligations of the Customer to You are unpaid, You are authorized (a) until payment or delivery is made, to pledge, repledge, hypothecate or rehypothecate, without notice, any and all Securities or other Property which You may hold for the Customer (either individually or jointly with others), separately or in common with other Securities or other Property, for the sum then due or for a greater or lesser sum and without retaining in your possession and control for delivery a like amount of similar Securities or other Property; (b) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (c) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (d) to buy any or all Securities or other Property which may be short in such Account; and/or (a) to cancel any open orders and to close any or all outstanding contracts; all without notice of sale or purchase, or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein. You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed. Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account. You are authorized, in Your discretion, should You for any reason whatsoever deem it necessary for Your protection, without notice, to cancel any outstanding order, to close out the Account of the Customer, in whole or in part, or to close out any commitment made on behalf of the Customer.

**4. Lending Agreement; Margin or Short Accounts.** With respect to any margin or short Account maintained by the Customer, You are authorized to lend to Yourself, as principal or otherwise, or to others, any Securities or other Property held by You on margin for any Account or as collateral therefor either separately or without other securities. The Customer will at all times maintain such Securities or other Property in the Account of the Customer for margin and/or maintenance purposes as required by You in Your sole discretion, on demand, in accordance with Your general policies regarding margin and maintenance requirements, as such may be modified from time to time, or at other times as You may require, and will be charged, in accordance with Your usual custom or as otherwise determined by You with interest at rates permitted by the laws of the State of Texas. With respect to any margin or short Account of the Customer, You shall have the right at any time and from time to time, in accordance with Your general policies regarding Your margin or maintenance requirements, short Accounts or Accounts in general, as such may be modified from time to time, or at an earlier Point in time than called for by said general policies, in the event that You feel insecure with respect to the Customer's account for any reason in Your sole discretion: (a) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (b) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (c) to buy any or all Securities or other Property which may be short in such Account, and/or (d) to cancel any open orders and to close any or all outstanding contracts; all without demand for margin or additional margin, notice of sale or purchase or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein. You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed. Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account.

**5. Account Carried as Clearing Broker.** The Customer understands that You are carrying the Account of the Customer as clearing broker by arrangement with the Customer's Introducing Broker through whose courtesy the Account of the Customer has been introduced to You. The Customer understands that You act as custodian for funds and securities deposited with You, through the Customer's Introducing Broker, or as a result of transactions You may process for the Customer's Account. Inquiries regarding the Customer's Account or the activity therein should be directed to the Introducing Broker. If Customer is unable to reach the Introducing Broker concerning account activity, or a complaint, Customer may contact Penson at 1700 Pacific Avenue, Suite 1400, Dallas, TX 75201, (214) 765-1100, and speak with the Compliance Department. The Customer understands that the Introducing Broker and not You, is responsible for compliance with all applicable laws and regulations in connection with the Customer's Account. Until receipt by You from the Customer of written notice to the contrary, you may accept and rely upon from such Introducing broker and its representatives employees and other agents, without any inquiry or investigation by You; (a) orders for the purchase or sale in the Customer's Account of Securities or other Property, and (b) any other instructions concerning the Customer's Account. The

(continued)

Customer understands that You act only to clear trades introduced by the Customer's Introducing Broker and to effect other back office functions for the Customer's Introducing Broker. The Customer confirms to You that the Customer is relying for any advice concerning the Customer's Account solely on the Customer's Introducing Broker. The Customer understands that You are not a principal of or partner with and do not control in any way, the Introducing Broker or its representatives, employees or other agents. The Customer understands that You will not review the Customer's account and will have no responsibility for trades made in the Customer's Account. The Customer agrees that You shall not be responsible or liable for any acts or omissions of the Introducing Broker or its representatives, employees or other agents.

**THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN CONJUNCTION WITH THESE DISCLOSURES:**

**a.** ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORM IN WHICH A CLAIM IS FILED;

**b.** ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING; A PARTY'S ABILITY TO HAVE A COURT REVERSE OR MODIFY AN ARBITRATION AWARD IS VERY LIMITED.

**c.** THE ABILITY OF THE PARTIES TO OBTAIN DOCUMENTS, WITNESS STATEMENTS AND OTHER DISCOVERY IS GENERALLY MORE LIMITED IN ARBITRATION THAN IN COURT PROCEEDINGS;

**d.** THE ARBITRATORS DO NOT HAVE TO EXPLAIN THE REASON(S) FOR THEIR AWARD.

**e.** THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

**f.** THE RULES OF SOME ARBITRATION FORUMS MAY IMPOSE TIME LIMITS FOR BRINGING A CLAIM IN ARBITRATION. IN SOME CASES, A CLAIM THAT IS INELIGIBLE FOR ARBITRATION MAY BE BROUGHT IN COURT.

**g.** THE RULES OF THE ARBITRATION FORUM IN WHICH THE CLAIM IS FILED, AND ANY AMENDMENTS THERETO, SHALL BE INCORPORATED INTO THIS AGREEMENT.

**6. ARBITRATION AGREEMENT.** ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE UNDERSIGNED AND YOU, OR THE INTRODUCING BROKER, OR THE AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS OF YOU OR THE INTRODUCING BROKER, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S BUSINESS OR THE UNDERSIGNED'S ACCOUNTS, SHALL BE CONDUCTED PURSUANT TO THE CODE OF ARBITRATION PROCEDURE OF THE FINRA. ARBITRATION MUST BE COMMENCED BY SERVICE OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE. THE DECISION AND AWARD OF THE ARBITRATOR (S) SHALL BE CONCLUSIVE AND BINDING UPON ALL PARTIES, AND ANY JUDGMENT UPON ANY AWARD RENDERED MAY BE ENTERED IN A COURT HAVING JURISDICTION THEREOF, AND NEITHER PARTY SHALL OPPOSE SUCH ENTRY.

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is de-certified; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

**7. Other Agreements; Option Transactions, Charges.** The Customer agrees to be bound by the terms of Your Customer Account Agreement. If the Customer trades on margin or has short positions, the Customer agrees to be bound by the terms of Your Customer Margin and Short Account Agreement. If the Customer trades any options, the customer agrees to be bound by the terms of your Customer Option Agreement. If this is a joint Account, the Customers agree to be bound by Your Joint Account Agreement. The Customer understands that copies of these agreements are available from You and, to the extent applicable, are incorporated by reference herein. The terms of these other agreements are in addition to the provisions of this Agreement and any other written agreements between You and the Customer. You may charge the Customer Account maintenance fees, security transfer fees and account transfer fees, and other charges or fees as agreed between You and the Customer's Introducing Broker or as Independently established by You.

**8. Option Account.** Assignment notices for option contracts are allocated among client short positions pursuant to a manual procedure which randomly selects from all client short option positions, including positions established on the day of assignment, those contracts which are subject to exercise. All American short option positions are subject to assignment at any time. A more detailed description of Your random allocation procedure is available upon request. In accordance with the Customer Option Agreement, if applicable, the Customer must promptly notify the Introducing Broker of any change in the Customer's objectives or financial situation. Individual options commissions and other related charges have been included in the Customer's Confirmation; however, a summary of this information will be made available to the Customer upon request. The customer must promptly advise the introducing broker of any material change in the customer's investment objectives or financial situation.

**9. Miscellaneous.** Customer's financial statement is available for personal inspection or will be mailed to the Customer's request. The headings of each section of the Agreement are descriptive only and do not modify or qualify any provision of this Agreement. Except as provided in this Agreement, no provision of this Agreement may be altered, modified or amended unless in writing signed by Your authorized representative. This Agreement and all provisions shall inure to the benefit of You and Your successors, Your assigns, the Customer's Introducing Broker, and all other persons specified in Paragraph 6 above. Without relieving the Customer's objectives or financial situation. Individual options commissions and other related segregated and may be used in Your business, subject to the limitations of 17 CFR Section 240.15c3-3 of the Securities Exchange Act of 1934. The Customer may receive these funds in the normal course of business following demand to You. You shall not be liable for losses caused directly or indirectly by any events beyond Your reasonable control. The costs and expenses of collection of the debit balance and any unpaid deficiency in the Account of the Customer with You, including but not limited to reasonable attorneys' fees and expenses, incurred and payable or paid by You shall be payable to You by the Customer. The estimated annual income, estimated current yield, and market value calculations are estimates only, and have been obtained or prepared from sources You consider to be reliable, but You make no assurance as to their accuracy.

# TradeWallStreet
**F I N A N C I A L**

1101 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

## Statement of Account

| | | |
|---|---|---|
| JM PROPERTY SP Z.O.O SP K<br>UL ZELAZNA 59 | **Account Information**<br>Account Number: **30013957** | **Statement Period**<br>**April 1, 2011 to April 30, 2011** |

## Portfolio Positions

| Cash & Equivalents | Symbol/<br>Cusip | Account<br>Type | Quantity | Current<br>Price | Current Value | Percent of<br>Acct Assets | Estimated<br>Annual Income | Estimated<br>Current Yield |
|---|---|---|---|---|---|---|---|---|
| Cash | | Cash | | | (95.86) | 100.00 | | |
| Money Market Fund | | MoneyFund | | 1.00 | 0.00 | | | |
| **Total: Cash & Equivalents** | | | | | **(95.86)** | **100.00** | | |
| **Total: Portfolio Values** | | | | | **(95.86)** | **100.00** | | |
| Less: Margin Loan Balance | | Margin | | | (0.17) | 0.18% | | |
| **Total: Account Net Assets/Equity** | | | | | **(96.03)** | **100.18%** | | |

*Account value and totals are based only on priced securities. We may be unable to price all securities in your account. For municipal securities and some other fixed income securities, prices are approximate (not actual market bids) and are provided only as a general guide. They do not necessarily reflect actual market prices. For current prices, please contact your financial consultant.*

## Account Activity

| Cash Account | Entry/Trade Date | Account Type | Transaction | Quantity | Description | Price | Amount |
|---|---|---|---|---|---|---|---|
| | | Cash | | | OPENING BALANCE | | 0.00 |
| | 04/21/11 | Cash | Journal | | ANNUAL FEE 2011 | | (125.00) |
| | 04/25/11 | Cash | Received | | REDEEM: MM PORTFOLIO | | 29.14 |
| **Total: Cash Account Balance** | | | | | | | **(95.86)** |

| Margin Account | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | Margin | | | OPENING BALANCE | | 0.00 |
| | 04/29/11 | Margin | Debit Interest | 7.45000%04/01-04/29 | $33 | | (.17) |
| **Total: Margin Account Balance** | | | | | | | **(.17)** |

# TradeWallStreet
## F I N A N C I A L

104 Pennsylvania Ave.
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

| JM PROPERTY SP Z.O.O SP K | Account Information | Statement Period |
| UL ZELAZNA 59 | Account Number:  30013957 | April 1, 2011 to April 30, 2011 |

## Account Activity

| Scudder MM Port | Entry/Trade Date | Account Type | Transaction | Quantity | Description | Price | Amount |
|---|---|---|---|---|---|---|---|
| | | MoneyFund | | | OPENING BALANCE | | 29.14 |
| | 04/25/11 | MoneyFund | Disbursed | | REDEEM:   MM PORTFOLIO | | (29.14) |
| **Total: Scudder MM Portfolio** | | | | | | | **0.00** |

# Trade Wall Street
**F I N A N C I A L**

L104 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

## Statement of Account

| | | |
|---|---|---|
| **JM PROPERTY SP Z.O.O SP K**<br>**UL ZELAZNA 59** | **Account Information**<br>**Account Number:**    30013957 | **Statement Period**<br>**April 1, 2011 to April 30, 2011** |

*Settled Trades Summary:*

| | | | |
|---|---|---|---|
| *TOTAL PURCHASED (USD):* | 0.00 | *TOTAL SHARES PURCHASED:* | 0.00 |
| *TOTAL SOLD (USD):* | 0.00 | *TOTAL SHARES SOLD:* | 0.00 |

*Pursuant to an agreement, a portion of each transaction fee or commission compensates brokerage firm, broker, advisor, finder, or foreign associate.*

*TWS FINANCIAL, LLC ANNUAL 2011-2012 MARGIN DISCLOSURE STATEMENT*

*We are furnishing this document to you to provide some basic facts about purchasing securities on margin, and to alert you to the risks involved with trading securities in a margin account. Before trading stocks in a margin account, you should carefully review the margin agreement provided by your broker. Consult your broker regarding any questions or concerns you may have with your margin accounts.*

*When you purchase securities, you may pay for the securities in full or you may borrow part of the purchase price from you brokerage firm. If you choose to borrow funds from your firm, you will open a margin account with the firm. The securities purchased are the firm's collateral for the loan to you. If the securities in your account decline in value, so does the value of the collateral supporting your loan, and as a result, the firm can take action, such as issue a margin call and/or sell securities in your account, in order to maintain the required equity in the account. It is important that you fully understand the risks involved in trading securities on margin. These risks include the following:*

_    *You can lose more funds than you deposit in the margin account. A decline in the value of the securities that are purchased on margin may require you to provide additional funds to the firm that has made the loan to avoid the forced sale of those securities or other securities in your account.*
_    *The firm can force the sale of securities in your account. If the equity in your account falls below the maintenance margin requirements under the law, or the firm's higher house requirements, the firm can sell the securities in your account to cover the margin deficiency. You will be responsible for any shortfall in the account after such a sale.*
_    *The firm can sell your securities without contacting you. Some investors mistakenly believe that a firm must contact them for a margin call to be valid, and that the firm cannot liquidate securities in their accounts to meet the call unless the firm has contacted them first. This is not the case. Most firms will attempt to notify their customers of margin calls, but they are not required to do so. However, even if a firm has contacted a customer and provided a specific date by which the customer can meet a margin call, the firm can still take necessary steps to protect its financial interest, including immediately selling the securities without notice to the customer.*
_    *You are not entitled to choose which security in your margin account is liquidated or sold to meet a margin call. Because the securities are collateral for the margin loan, the firm has the right to decide which security to sell in order to protect its interests.*
_    *The firm can increase its house maintenance margin requirement at any time and is not required to provide you advance written notice. These changes in firm policy often take effect immediately and may result in the issuance of a maintenance margin call. Your failure to satisfy the call may cause the member to liquidate or sell securities in your account.*
_    *You are not entitled to an extension of time on a margin call. While an extension of time to meet margin requirements may be available to customers under certain conditions, a customer does not have a right to the extension.*

*TWS FINANCIAL, LLC ANNUAL 2011-2012 DAY TRADING RISK DISCLOSURE STATEMENT RULE 2361*

*You should consider the following points before engaging in a day-trading strategy. For purposes of this notice, a "day-trading strategy" means an overall trading strategy characterized by the regular transmission by a customer of intra-day orders to effect both purchase and sale transactions in the same security or securities.*

# Trade Wall Street
## F I N A N C I A L

1101 Pennsylvania Ave.
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

**JM PROPERTY SP Z.O.O SP K**
**UL ZELAZNA 59**

| Account Information | | Statement Period |
|---|---|---|
| Account Number: | 30013957 | April 1, 2011 to April 30, 2011 |

*Day trading can be extremely risky. Day trading generally is not appropriate for someone of limited resources and limited investment or trading experience and low risk tolerance. You should be prepared to lose all of the funds that you use for day trading. In particular, you should not fund day-trading activities with retirement savings, student loans, second mortgages, emergency funds, funds set aside for purposes such as education or home ownership, or funds required to meet your living expenses. Further, certain evidence indicates that an investment of less than $50,000 will significantly impair the ability of a day trader to make a profit. Of course, an investment of $50,000 or more will in no way guarantee success.*

*Be cautious of claims of large profits from day trading. You should be wary of advertisements or other statements that emphasize the potential for large profits in day trading. Day trading can also lead to large and immediate financial losses.*

*Day trading requires knowledge of securities markets. Day trading requires in-depth knowledge of the securities markets and trading techniques and strategies. In attempting to profit through day trading, you must compete with professional, licensed traders employed by securities firms. You should have appropriate experience before engaging in day trading.*

*Day trading requires knowledge of a firm's operations. You should be familiar with the securities firm's business practices, including the operation of the firm's order execution systems and procedures. Under certain market conditions, you may find it difficult or impossible to liquidate a position quickly at a reasonable price. This can occur, for example, when the market for a stock suddenly drops, or if trading is halted due to recent news events or unusual trading activity. The more volatile a stock is, the greater the likelihood that problems may be encountered in executing a transaction. In addition to normal market risks, you may experience losses due to system failures.*

*Day trading will generate substantial commissions, even if the per trade cost is low. Day trading involves aggressive trading, and generally you will pay commissions on each trade. The total daily commissions that you pay on your trades will add to your losses or significantly reduce your earnings. For instance, assuming that a trade costs $16 and an average of 29 transactions are conducted per day, an investor would need to generate an annual profit of $111,360 just to cover commission expenses.*

*Day trading on margin or short selling may result in losses beyond your initial investment. When you day trade with funds borrowed from a firm or someone else, you can lose more than the funds you originally placed at risk. A decline in the value of the securities that are purchased may require you to provide additional funds to the firm to avoid the forced sale of those securities or other securities in your account. Short selling as part of your day-trading strategy also may lead to extraordinary losses, because you may have to purchase a stock at a very high price in order to cover a short position.*

*Potential Registration Requirements: Persons providing investment advice for others or managing securities accounts for others may need to register as either an "Investment Advisor" under the Investment Advisors Act of 1940 or as a "Broker" or "Dealer" under the Securities Exchange Act of 1934. Such activities may also trigger state registration requirements.*

*TWS FINANCIAL, LLC ANNUAL 2011-2012 MARKET VOLATILITY AND TRADING PLATFORMS NOTICE*

*All trades are executed through Trade Wall Street Financial, Member of the FINRA and SIPC. Our clearing firm is Penson Financial Services. For more information, go to www.penson.com.*

*System response, trade executions and account access may be affected by market conditions, system performance, quote delays and other factors. The risk of loss in electronic trading can be substantial. You should therefore consider whether such trading is suitable for you in light of your financial resources. Money Market Funds are not FDIC Insured. Read our Risk Disclosures.*

# Trade Wall Street
**F I N A N C I A L**

1101 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

| JM PROPERTY SP Z.O.O SP K | Account Information | Statement Period |
|---|---|---|
| UL ZELAZNA 59 | **Account Number:** 30013957 | **April 1, 2011 to April 30, 2011** |

*After-Hours Trading*

There is no assurance that trades will be executed after the market closes.

*Loss of Principal*

Beware of the risk of trading. Trading stocks and other investments are subject to fluctuations in value and possibly entire loss of principal.

TWS FINANCIAL, LLC ANNUAL 2011-2012 PRIVACY NOTICE

Trade Wall Street Financial is committed to protecting confidentiality of the information furnished to us by our clients. We are providing you this information as required by Regulation S-P adopted by the Securities and Exchange Commission.

*Information about You that We Collect*

We collect non-public personal information about you from the following sources: information we receive from you on applications or other forms or through our Web Site and information we receive from a consumer-reporting agency.

*Our Use of Information about You*

Trade Wall Street Financial does not share your non-public personal information with any unaffiliated third parties with whom we have no contractual business relationships, unless:
- You give us written permission
- It is vital to completing a transaction for your account
- It is required by law to protect us against fraud or to comply with a subpoena or other court order.
We do not sell information about you to outside unaffiliated companies.

Trade Wall Street Financial has policies that restrict access to non-public personal information about you to those employees who have need for that information to provide investment alternatives or services to you, or to employees who assist those who provide investment alternatives or services to you. We maintain physical, electronic, and procedural safeguards to protect your non-public personal information.

TWS FINANCIAL, LLC ANNUAL 2011-2012 SIPC NOTICE

All accounts are SIPC Protected for $500,000 Securities, including $100,000 claims for Cash. Penson Financial Services, Inc. (PFSI) has also acquired "Excess SIPC" insurance from a third party insurer to protect client accounts up to their net equity for loss of securities and cash held at Penson Financial Services, Inc. (PFSI). This "Excess SIPC" protection is in addition to the protection provided by the Securities and Investors Protection Act, which is administered by SIPC, and is subject to certain conditions and limitations, details of which are available upon request. The above coverage does not protect against loss of the market value of securities.

# Trade Wall Street
### F I N A N C I A L

1101 Pennsylvania Ave.
Suite 600
Washington, DC 20004
(202) 449-7260

## Statement of Account

| | | |
|---|---|---|
| JM PROPERTY SP Z.O.O SP K<br>UL ZELAZNA 59 | **Account Information**<br>Account Number:    30013957 | **Statement Period**<br>April 1, 2011 to April 30, 2011 |

## ACCOUNT REVIEW

*It is always the client's responsibility to review their investment accounts on a routine basis. If there are any discrepancies of any kind, including but not limited to: current equity, buying power, or positions, the client must contact Trade Wall Street Financial prior to acting on any information that does not match. Also, if you ever believe for any reason that anything is incorrect in your account, please make sure you always contact us before acting. If a client acts before contacting us to verify the validity of their account information or fails to review their account on a daily basis, any issues that arise as a result of not reviewing their information or contacting our firm in a timely manner will be solely the client's responsibility.*

*It is also the client's responsibility to review all their open orders daily, especially if you are placing GTC (good till canceled) orders. If you believe you had an order that for some reason is not showing on your software or have any other issues or problems with any orders, you will need to contact us immediately. You will be responsible for this daily review of your open orders. Any issues caused by the failure to do this review and to contact us in a timely manner to resolve any discrepancies will be solely the client's responsibility.*

## SHORT SALES

*The term 'short sale' means any sale of a security, which the seller does not own, or any sale, which is consummated by the delivery of a security, borrowed by, or for the account of the seller. For stocks hard to borrow, short sales must be preceded by a request to Trade Wall Street Financial to make sure stocks can be borrowed. We will then contact the Penson Stock Loan Department to ensure the availability of the stock. If approval is granted by the Penson Stock Loan Department, Trade Wall Street Financial will inform you that the stock can be sold short. If approval is not received, the security in question cannot be shorted. If you short a stock that has not been located, the transaction may be cancelled and you will be responsible for any losses incurred. Short sales made on stocks not located will result in a buy-in. All trades that violate these rules will be put into TWS Financial's error account. All losses will be charged back to your account. You will not receive any profit from these trades as they are illegally gained. Repeated violations of these rules can result in your account being closed. Assuming the security in question can be shorted, the short sale must take place as 'sell short'. If the trader uses a sell to place a short sale or over-sells a position, it is possible that the trade will be executed illegally. This is a violation of FINRA and SEC rules. The trader is responsible to cover any illegal position immediately with a corresponding buy. These corrections must be reported via e-mail to Trade Wall Street Financial at the end of the trading day.*

*It is your responsibility to review your confirmations and statements upon receipt or when they are made available electronically. Transactions shall be conclusive and binding upon you if no written objection is made to PFSI (within 10 days after available). In all cases PFSI reserves the right to determine the validity of any objection to the information contained in the account statement.*

*Securities Investor Protection Corporation ("SIPC") does not cover commodity contracts and options on futures. For information about SIPC or to request a SIPC brochure, please see www.sipc.org or contact SIPC at (202) 371-8300.*

*DPP and REIT securities are generally illiquid and the estimated value of these securities may not be realized upon liquidation of the security. The value of the security will differ from the purchase price. In the event valuations are provided, they will be based upon estimated values obtained from the issuer's annual report. However, in some cases accurate valuation information is not available and will not be provided.*

*FINRA Rule 2340 requires that we advise you to promptly report any inaccuracy or discrepancy in your account to your brokerage firm and clearing firm (where these are different firms) and to re-confirm any oral communications in writing.*
*http://www.finra.org/web/groups/rules_regs/documents/notice_to_members/p018130.pdf*

*When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day your payment is received, and you will not receive your check back from your financial institution. Please contact your broker if you have questions about electronic check collection or do not want your payments collected electronically.*

# Trade Wall Street
**F I N A N C I A L**

1101 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

**Statement of Account**

---

JM PROPERTY SP Z.O.O SP K
UL ZELAZNA 59

**Account Information**

**Account Number:**    30013957

**Statement Period**

**April 1, 2011 to April 30, 2011**

*Pursuant to SEC Rule 606, Penson Financial Services, Inc. is required to make publicly available a quarterly report with regard to its routing of non-directed orders. For the purpose of this Rule, we have entered into an agreement with Quantum5 Market Surveillance (a Division of S3 Matching Technologies) to disclose all required information pertaining to this rule. This information can be accessed on the internet at: ftp://public.s3.com/11ac1-6/pfsi, or a written copy will be furnished at no cost upon request via telephone to 214-765-1009 or email to cs@penson.com.*

*SEC Rule 606(b) requires a broker-dealer to disclose to its customers, upon request, "the identity of the venue to which the customer's orders were routed for execution in the six months prior to the request, whether the orders were directed orders or non-directed orders, and the time of the transactions, if any, that resulted from such orders."*

*FINRA REQUIRES THAT WE NOTIFY YOU IN WRITING OF THE AVAILABILITY OF AN INVESTOR BROCHURE THAT INCLUDES INFORMATION DESCRIBING THE FINRA'S PUBLIC DISCLOSURE PROGRAM ('PROGRAM'). TO OBTAIN A BROCHURE OR MORE INFORMATION ABOUT THE PROGRAM OR FINRA, CONTACT THE FINRA PROGRAM HOTLINE AT (800) 289-9999 OR ACCESS THE FINRA WEB SITE AT www.finrabrokercheck.com*

**\* End of Statement \***

# Trade Wall Street
### FINANCIAL

1101 Pennsylvania Ave.
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

**JM PROPERTY SP Z.O.O SP K**
**UL ZELAZNA 59**
**00-848 WARSZAWA**
**POLAND**

### Account Information

| | |
|---|---|
| New Account Number: | 3RF05088 |
| Old Account Number: | 30013957 |
| Financial Advisor #: | Y300 |

**Your Financial Advisor**

TWS FINANCIAL - HOUSE REP
(202) 449-7260

### Statement Period

**December 1, 2011 to December 31, 2011**

**Office Serving You**

1101 Pennsylvania Avenue
Suite 600
Washington D.C. 20004
(202) 449-7260

## Account Value

| Asset Category | Current Value 12/31/11 | Prior Value 06/30/11 | Percent of Acct Assets | Estimated Annual Income | Estimated Current Yield |
|---|---|---|---|---|---|
| Money Fund Balance | 0.00 | 0.00 | | | |
| Total: Portfolio Values | 0.00 | 0.00 | | | |
| | | | | | |
| Total Account Value | 0.00 | 0.00 | | | |

## Asset Allocation

## Income Summary

| | This Period | Year to Date |
|---|---|---|
| Margin Interest | 0.00 | (0.79) |
| Total: Income | 0.00 | (0.79) |

The Account of the Customer is subject to the following terms and conditions ("Agreement") which the Customer agrees to and accepts by use, maintenance and/or continuation of the Account notwithstanding any notice or statement of intention to You to the contrary.

**1.   Definitions.**  "Account" shall refer individually and collectively to all accounts which the Customer has previously opened, now has open or may open in the future, in which the Customer has any interest, with You or any Introducing Broker, and any and all previous, current and future transactions in such accounts.  "Customer" refers to the individual(s) and/or entity(ies) in whose name the Account referenced on the face of this Account statement is carried or who may otherwise have any interest in an Account.  "Introducing Broker" means any brokerage firm which introduces securities transactions on behalf of the Customer, which transactions are cleared through You, whether one or more.  "Obligations" means all indebtedness, debit balances, liabilities or other obligations of any kind of the Customer to You, whether now existing or hereafter arising.  "Securities or other Property" shall mean all money, securities, commodities or other property of every kind and nature and all contracts and options relating thereto, whether for present or future delivery.  "You" or "Your" refers to Penson Financial Services, Inc.

**2.   Payment of Indebtedness Upon Demand.**  The Customer shall at all times be liable for the payment upon demand of any Obligations owing from the Customer to You, and Customer shall be liable to You for any deficiency remaining in any Account in the event of the liquidation thereof, in whole or in part, by You, the Introducing Broker, or by the Customer, and the Customer shall pay such Obligations upon demand.

**3.   Security Interest; Liquidation.**  All Securities or other property now or hereafter held, carried or maintained by You in or for the Account shall be subject to a first and prior lien and security interest for the discharge of all of the Obligations of the Customer and are to be held by You as security for the payment of the Obligations of the Customer to You, to the fullest extent allowed by law.  You shall have the right to transfer Securities or other Property so held by You from or to any Account of the Customer whenever You so determine.  Whenever the Customer does not, on or before the settlement date, pay in full for any Securities or other Property purchased for the Account of the Customer, or deliver any Securities or other Property sold for such Account, or if any other Obligations of the Customer to You are unpaid, You are authorized (a) until payment or delivery is made, to pledge, repledge, hypothecate or rehypothecate, without notice, any and all Securities or other Property which You may hold for the Customer (either individually or jointly with others), separately or in common with other Securities or other Property, for the sum then due or for a greater or lesser sum and without retaining in your possession and control for delivery a like amount of similar Securities or other Property; (b) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (c) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (d) to buy any or all Securities or other Property which may be short in such Account; and/or (a) to cancel any open orders and to close any or all outstanding contracts; all without notice of sale or purchase, or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein.  You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed.  Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account.  You are authorized, in Your discretion, should You for any reason whatsoever deem it necessary for Your protection, without notice, to cancel any outstanding order, to close out the Account of the Customer, in whole or in part, or to close out any commitment made on behalf of the Customer.

**4.   Lending Agreement; Margin or Short Accounts.**  With respect to any margin or short Account maintained by the Customer, You are authorized to lend to yourself, as principal or otherwise, or to others, any Securities or other Property held by You on margin for any Account or as collateral therefor either separately or without other securities.  The Customer will at all times maintain such Securities or other Property in the Account of the Customer for margin and/or maintenance purposes as required by You in Your sole discretion, on demand, in accordance with Your general policies regarding margin and maintenance requirements, as such may be modified from time to time, or at other times as You may require, and will be charged, in accordance with Your usual custom or as otherwise determined by You with interest at rates permitted by the laws of the State of Texas.  With respect to any margin or short Account of the Customer, You shall have the right at any time and from time to time, in accordance with Your general policies regarding Your margin or maintenance requirements, short Accounts or Accounts in general, as such may be modified from time to time, or at an earlier Point in time than called for by said general policies, in the event that You feel insecure with respect to the Customer's account for any reason in Your sole discretion: (a) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (b) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (c) to buy any or all Securities or other Property which may be short in such Account, and/or (d) to cancel any open orders and to close any or all outstanding contracts; all without demand for margin or additional margin, notice of sale or purchase or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein.  You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed.  Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account.

**5.   Account Carried as Clearing Broker.**  The Customer understands that You are carrying the Account of the Customer as clearing broker by arrangement with the Customer's Introducing Broker through whose courtesy the Account of the Customer has been introduced to You.  The Customer understands that You act as custodian for funds and securities deposited with You, through the Customer's Introducing Broker, or as a result of transactions You may process for the Customer's Account.  Inquiries regarding the Customer's Account or the activity therein should be directed to the Introducing Broker.  If Customer is unable to reach the Introducing Broker concerning account activity, or a complaint, Customer may contact Penson at 1700 Pacific Avenue, Suite 1400, Dallas, TX  75201, (214) 765-1100, and speak with the Compliance Department.  The Customer understands that the Introducing Broker and not You, is responsible for compliance with all applicable laws and regulations in connection with the Customer's Account.  Until receipt by You from the Customer of written notice to the contrary, you may accept and rely upon from such Introducing broker and its representatives employees and other agents, without any inquiry or investigation by You: (a) orders for the purchase or sale in the Customer's Account of Securities or other Property, and (b) any other instructions concerning the Customer's Account.  The

(continued)

Customer understands that You act only to clear trades introduced by the Customer's Introducing Broker and to effect other back office functions for the Customer's Introducing Broker.  The Customer confirms to You that the Customer is relying for any advice concerning the Customer's Account solely on the Customer's Introducing Broker.  The Customer understands that You are not a principal of or partner with and do not control in any way, the Introducing Broker or its representatives, employees or other agents.  The Customer understands that You will not review the Customer's account and will have no responsibility for trades made in the Customer's Account.  The Customer agrees that You shall not be responsible or liable for any acts or omissions of the Introducing Broker or its representatives, employees or other agents.

**THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN CONJUNCTION WITH THESE DISCLOSURES:**

**a.**   ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORM IN WHICH A CLAIM IS FILED;

**b.**   ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING; A PARTY'S ABILITY TO HAVE A COURT REVERSE OR MODIFY AN ARBITRATION AWARD IS VERY LIMITED.

**c.**   THE ABILITY OF THE PARTIES TO OBTAIN DOCUMENTS, WITNESS STATEMENTS AND OTHER DISCOVERY IS GENERALLY MORE LIMITED IN ARBITRATION THAN IN COURT PROCEEDINGS;

**d.**   THE ARBITRATORS DO NOT HAVE TO EXPLAIN THE REASON(S) FOR THEIR AWARD.

**e.**   THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

**f.**   THE RULES OF SOME ARBITRATION FORUMS MAY IMPOSE TIME LIMITS FOR BRINGING A CLAIM IN ARBITRATION.  IN SOME CASES, A CLAIM THAT IS INELIGIBLE FOR ARBITRATION MAY BE BROUGHT IN COURT.

**g.**   THE RULES OF THE ARBITRATION FORUM IN WHICH THE CLAIM IS FILED, AND ANY AMENDMENTS THERETO, SHALL BE INCORPORATED INTO THIS AGREEMENT.

**6.   ARBITRATION AGREEMENT.**  ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE UNDERSIGNED AND YOU, OR THE INTRODUCING BROKER, OR THE AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS OF YOU OR THE INTRODUCING BROKER, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S BUSINESS OR THE UNDERSIGNED'S ACCOUNTS, SHALL BE CONDUCTED PURSUANT TO THE CODE OF ARBITRATION PROCEDURE OF THE FINRA.  ARBITRATION MUST BE COMMENCED BY SERVICE OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE.  THE DECISION AND AWARD OF THE ARBITRATOR (S) SHALL BE CONCLUSIVE AND BINDING UPON ALL PARTIES, AND ANY JUDGMENT UPON ANY AWARD RENDERED MAY BE ENTERED IN A COURT HAVING JURISDICTION THEREOF, AND NEITHER PARTY SHALL OPPOSE SUCH ENTRY.

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is de-certified; or (iii) the customer is excluded from the class by the court.  Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

**7.   Other Agreements; Option Transactions, Charges.**  The Customer agrees to be bound by the terms of Your Customer Account Agreement.  If the Customer trades on margin or has short positions, the Customer agrees to be bound by the terms of Your Customer Margin and Short Account Agreement.  If the Customer trades any options, the customer agrees to be bound by the terms of your Customer Option Agreement. If this is a joint Account, the Customers agree to be bound by Your Joint Account Agreement. The Customer understands that copies of these agreements are available from You and, to the extent applicable, are incorporated by reference herein.  The terms of these other agreements are in addition to the provisions of this Agreement and any other written agreements between You and the Customer.  You may charge the Customer Account maintenance fees, security transfer fees and account transfer fees, and other charges or fees as agreed between You and the Customer's Introducing Broker or as independently established by You.

**8.   Option Account.**  Assignment notices for option contracts are allocated among client short positions pursuant to a manual procedure which randomly selects from all client short option positions, including positions established on the day of assignment, those contracts which are subject to exercise.  All American short option positions are subject to assignment at any time.  A more detailed description of Your random allocation procedure is available upon request.  In accordance with the Customer Option Agreement, if applicable, the Customer must promptly notify the Introducing Broker of any change in the Customer's objectives or financial situation.  Individual options commissions and other related charges have been included in the Customer's Confirmation; however, a summary of this information will be made available to the Customer upon request.  The customer must promptly advise the introducing broker of any material change in the customer's investment objectives or financial situation.

**9.   Miscellaneous.**  Customer's financial statement is available for personal inspection or will be mailed to the Customer's request.  The headings of each section of the Agreement are descriptive only and do not modify or qualify any provision of this Agreement.  Except as provided in this Agreement, no provision of this Agreement may be altered, modified or amended unless in writing signed by Your authorized representative.  This Agreement and all provisions shall inure to the benefit of You and Your successors, Your assigns, the Customer's Introducing Broker, and all other persons specified in Paragraph 6 above.  With respect to a free credit balance included on the Account statement, such funds are not segregated and may be used in Your business, subject to the limitations of 17 CFR Section 240.15c3-3 of the Securities Exchange Act of 1934.  The Customer may receive these funds in the normal course of business following demand to You.  You shall not be liable for losses caused directly or indirectly by any events beyond Your reasonable control.  The costs and expenses of collection of the debit balance and any unpaid deficiency in the Account of the Customer with You, including but not limited to reasonable attorneys' fees and expenses, incurred and payable or paid by You shall be payable to You by the Customer.  The estimated annual income, estimated current yield, and market value calculations are estimates only, and have been obtained or prepared from sources You consider to be reliable, but You make no assurance as to their accuracy.

# TradeWallStreet
**F I N A N C I A L**

1101 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

| | | |
|---|---|---|
| **JM PROPERTY SP Z.O.O SP K**<br>**UL ZELAZNA 59** | **Account Information**<br>**Account Number:** 30013957 | **Statement Period**<br>**December 1, 2011 to December 31, 2011** |

*Settled Trades Summary:*

| | | | |
|---|---|---|---|
| *TOTAL PURCHASED (USD):* | 0.00 | *TOTAL SHARES PURCHASED:* | 0.00 |
| *TOTAL SOLD (USD):* | 0.00 | *TOTAL SHARES SOLD:* | 0.00 |

*Please be advised that effective January 1, 2012, the VISA International Transaction Fee will be changing from 1% of the purchase amount to 3% for those accounts invested in Reich & Tang Money Market Funds.*

*Dear Customer,*

*Your Broker's clearing firm, Penson Financial Services, Inc. ("Penson"), has enhanced its service platform by moving from Sungard to Broadridge Financial Solutions, Inc.'s system, referred to as Brokerage Processing Services ("BPS"). This conversion to BPS commenced after the close of business on December 9, 2011 and is now complete.*

*As a result of the conversion, you will receive two statements for the month of December:*

*\* One statement is issued under your pre-conversion account number, detailing account activities between December 1, 2011 and December 9, 2011. This statement also displays conversion related activities that moved your assets from your old account number to our new account number. THE ENDING EQUITY ON THIS STATEMENT WILL BE $0.00.*
*\* A second statement is issued under your post-conversion account number, detailing account activities between December 9, 2011 and December 31, 2011. This statement displays conversion related activities that moved your assets from your old account number to your new account number. The ending equity on this statement will be your actual account equity, as of December 31, 2011.*

*Please contact your broker if you have any questions regarding your account statements or the conversion.*

*To our valued customers:*
*In accordance with the Emergency Economic Stabilization Act of 2008, broker dealers are required to track and report cost basis to the IRS in three phases over the next three years.*
*2011: Equity Securities,*
*2012: Mutual funds and dividend reinvestment plan shares,*
*2013: Debt securities, options and all other financial instruments.*
*Beginning this upcoming tax reporting season the cost basis of any covered equity security transaction (purchased after 12/31/10) that is required to be reported on a 1099-B will include its associated cost basis. If you have any questions about this important change to the IRS mandated reporting requirements, please contact your broker.*

*It is your responsibility to review your confirmations and statements upon receipt or when they are made available electronically. Transactions shall be conclusive and binding upon you if no written objection is made to PFSI (within 10 days after available). In all cases PFSI reserves the right to determine the validity of any objection to the information contained in the account statement.*

*Securities Investor Protection Corporation ("SIPC") does not cover commodity contracts and options on futures. For information about SIPC or to request a SIPC brochure, please see www.sipc.org or contact SIPC at (202) 371-8300.*

# Trade Wall Street
**F I N A N C I A L**

1101 Pennsylvania Ave.
Suite 600
Washington, DC 20004
(202) 449-7260

## Statement of Account

**JM PROPERTY SP Z.O.O SP K**
**UL ZELAZNA 59**

**Account Information**

Account Number:    30013957

**Statement Period**

December 1, 2011 to December 31, 2011

---

*DPP and REIT securities are generally illiquid and the estimated value of these securities may not be realized upon liquidation of the security. The value of the security will differ from the purchase price. In the event valuations are provided, they will be based upon estimated values obtained from the issuer's annual report. However, in some cases accurate valuation information is not available and will not be provided.*

*FINRA Rule 2340 requires that we advise you to promptly report any inaccuracy or discrepancy in your account to your brokerage firm and clearing firm (where these are different firms) and to re-confirm any oral communications in writing.*
*http://www.finra.org/web/groups/rules_regs/documents/notice_to_members/p018130.pdf*

*When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day your payment is received, and you will not receive your check back from your financial institution. Please contact your broker if you have questions about electronic check collection or do not want your payments collected electronically.*

*Pursuant to SEC Rule 606, Penson Financial Services, Inc. is required to make publicly available a quarterly report with regard to its routing of non-directed orders. For the purpose of this Rule, we have entered into an agreement with Quantum5 Market Surveillance (a Division of S3 Matching Technologies) to disclose all required information pertaining to this rule. This information can be accessed on the internet at:  ftp://public.s3.com/11ac1-6/pfsi, or a written copy will be furnished at no cost upon request via telephone to 214-765-1009 or email to cs@penson.com.*

*SEC Rule 606(b) requires a broker-dealer to disclose to its customers, upon request, "the identity of the venue to which the customer's orders were routed for execution in the six months prior to the request, whether the orders were directed orders or non-directed orders, and the time of the transactions, if any, that resulted from such orders."*

*FINRA REQUIRES THAT WE NOTIFY YOU IN WRITING OF THE AVAILABILITY OF AN INVESTOR BROCHURE THAT INCLUDES INFORMATION DESCRIBING THE FINRA'S PUBLIC DISCLOSURE PROGRAM ('PROGRAM'). TO OBTAIN A BROCHURE OR MORE INFORMATION ABOUT THE PROGRAM OR FINRA, CONTACT THE FINRA PROGRAM HOTLINE AT (800) 289-9999 OR ACCESS THE FINRA WEB SITE AT www.finrabrokercheck.com*

**\* End of Statement \***

# TradeWallStreet
## F I N A N C I A L

1101 Pennsylvania Ave.
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

JM PROPERTY SP Z.O.O SP K
UL ZELAZNA 59
00-848 WARSZAWA
POLAND

### Account Information

| | |
|---|---|
| New Account Number: | 3RF05088 |
| Old Account Number: | 30013957 |
| Financial Advisor #: | Y300 |

### Your Financial Advisor

TWS FINANCIAL - HOUSE REP
(202) 449-7260

### Statement Period

December 1, 2011 to December 31, 2011

### Office Serving You

1101 Pennsylvania Avenue
Suite 600
Washington D.C.  20004
(202) 449-7260

## Account Value

| Asset Category | Current Value 12/31/11 | Prior Value 06/30/11 | Percent of Acct Assets | Estimated Annual Income | Estimated Current Yield |
|---|---|---|---|---|---|
| Money Fund Balance | 0.00 | 0.00 | | | |
| Total: Portfolio Values | 0.00 | 0.00 | | | |
| Total Account Value | 0.00 | 0.00 | | | |

## Asset Allocation

## Income Summary

| | This Period | Year to Date |
|---|---|---|
| Margin Interest | 0.00 | (0.79) |
| Total: Income | 0.00 | (0.79) |

The Account of the Customer is subject to the following terms and conditions ("Agreement") which the Customer agrees to and accepts by use, maintenance and/or continuation of the Account notwithstanding any notice or statement of intention to You to the contrary.

**1. Definitions.** "Account" shall refer individually and collectively to all accounts which the Customer has previously opened, now has open or may open in the future, in which the Customer has any interest, with You or any Introducing Broker, and any and all previous, current and future transactions in such accounts. "Customer" refers to the individual(s) and/or entity(ies) in whose name the Account referenced on the face of this Account statement is carried or who may otherwise have any interest in an Account. "Introducing Broker" means any brokerage firm which introduces securities transactions on behalf of the Customer, which transactions are cleared through You, whether one or more. "Obligations" means all indebtedness, debit balances, liabilities or other obligations of any kind of the Customer to You, whether now existing or hereafter arising. "Securities or other Property" shall mean all money, securities, commodities or other property of every kind and nature and all contracts and options relating thereto, whether for present or future delivery. "You" or "Your" refers to Penson Financial Services, Inc.

**2. Payment of Indebtedness Upon Demand.** The Customer shall at all times be liable for the payment upon demand of any Obligations owing from the Customer to You, and Customer shall be liable to You for any deficiency remaining in any Account in the event of the liquidation thereof, in whole or in part, by You, the Introducing Broker, or by the Customer, and the Customer shall pay such Obligations upon demand.

**3. Security Interest; Liquidation.** All Securities or other property now or hereafter held, carried or maintained by You in or for the Account shall be subject to a first and prior lien and security interest for the discharge of all of the Obligations of the Customer and are to be held by You as security for the payment of the Obligations of the Customer to You, to the fullest extent allowed by law. You shall have the right to transfer Securities or other Property so held by You from or to any Account of the Customer whenever You so determine. Whenever the Customer does not, on or before the settlement date, pay in full for any Securities or other Property purchased for the Account of the Customer, or deliver any Securities or other Property sold for such Account, or if any other Obligations of the Customer to You are unpaid, You are authorized (a) until payment or delivery is made, to pledge, repledge, hypothecate or rehypothecate, without notice, any and all Securities or other Property which You may hold for the Customer (either individually or jointly with others), separately or in common with other Securities or other Property, for the sum then due or for a greater or lesser sum and without retaining in your possession and control for delivery a like amount of similar Securities or other Property; (b) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (c) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (d) to buy any or all Securities or other Property which may be short in such Account; and/or (a) to cancel any open orders and to close any or all outstanding contracts; all without notice of sale or purchase, or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein. You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed. Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account. You are authorized, in Your discretion, should You for any reason whatsoever deem it necessary for Your protection, without notice, to cancel any outstanding order, to close out the Account of the Customer, in whole or in part, or to close out any commitment made on behalf of the Customer.

**4. Lending Agreement; Margin or Short Accounts.** With respect to any margin or short Account maintained by the Customer, You are authorized to lend to yourself, as principal or otherwise, or to others, any Securities or other Property held by You on margin for any Account or as collateral therefor either separately or without other securities. The Customer will at all times maintain such Securities or other Property in the Account of the Customer for margin and/or maintenance purposes as required by You in Your sole discretion, on demand, in accordance with Your general policies regarding margin and maintenance requirements, as such may be modified from time to time, or at other times as You may require, and will be charged, in accordance with Your usual custom or as otherwise determined by You with interest at rates permitted by the laws of the State of Texas. With respect to any margin or short Account of the Customer, You shall have the right at any time and from time to time, in accordance with Your general policies regarding Your margin or maintenance requirements, short Accounts or Accounts in general, as such may be modified from time to time, or at an earlier Point in time than called for by said general policies, in the event that You feel insecure with respect to the Customer's account for any reason in Your sole discretion: (a) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (b) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (c) to buy any or all Securities or other Property which may be short in such Account, and/or (d) to cancel any open orders and to close any or all outstanding contracts; all without demand for margin or additional margin, notice of sale or purchase or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein. You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed. Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account.

**5. Account Carried as Clearing Broker.** The Customer understands that You are carrying the Account of the Customer as clearing broker by arrangement with the Customer's Introducing Broker through whose courtesy the Account of the Customer has been introduced to You. The Customer understands that You act as custodian for funds and securities deposited with You, through the Customer's Introducing Broker, or as a result of transactions You may process for the Customer's Account. Inquiries regarding the Customer's Account or the activity therein should be directed to the Introducing Broker. If Customer needs to reach the Introducing Broker concerning account activity, or a complaint, Customer may contact Penson at 1700 Pacific Avenue, Suite 1400, Dallas, TX 75201, (214) 765-1100, and speak with the Compliance Department. The Customer understands that the Introducing Broker and not You, is responsible for compliance with all applicable laws and regulations in connection with the Customer's Account. Until receipt by You from the Customer of written notice to the contrary, you may accept and rely upon from such Introducing broker and its representatives employees and other agents, without any inquiry or investigation by You: (a) orders for the purchase or sale in the Customer's Account of Securities or other Property, and (b) any other instructions concerning the Customer's Account. The

(continued)

Customer understands that You act only to clear trades introduced by the Customer's Introducing Broker and to effect other back office functions for the Customer's Introducing Broker. The Customer confirms to You that the Customer is relying for any advice concerning the Customer's Account solely on the Customer's Introducing Broker. The Customer understands that You are not a principal of or partner with and do not control in any way, the Introducing Broker or its representatives, employees or other agents. The Customer understands that You will not review the Customer's account and will have no responsibility for trades made in the Customer's Account. The Customer agrees that You shall not be responsible or liable for any acts or omissions of the Introducing Broker or its representatives, employees or other agents.

**THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN CONJUNCTION WITH THESE DISCLOSURES:**

a. ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORM IN WHICH A CLAIM IS FILED;

b. ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING; A PARTY'S ABILITY TO HAVE A COURT REVERSE OR MODIFY AN ARBITRATION AWARD IS VERY LIMITED.

c. THE ABILITY OF THE PARTIES TO OBTAIN DOCUMENTS, WITNESS STATEMENTS AND OTHER DISCOVERY IS GENERALLY MORE LIMITED IN ARBITRATION THAN IN COURT PROCEEDINGS;

d. THE ARBITRATORS DO NOT HAVE TO EXPLAIN THE REASON(S) FOR THEIR AWARD.

e. THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

f. THE RULES OF SOME ARBITRATION FORUMS MAY IMPOSE TIME LIMITS FOR BRINGING A CLAIM IN ARBITRATION. IN SOME CASES, A CLAIM THAT IS INELIGIBLE FOR ARBITRATION MAY BE BROUGHT IN COURT.

g. THE RULES OF THE ARBITRATION FORUM IN WHICH THE CLAIM IS FILED, AND ANY AMENDMENTS THERETO, SHALL BE INCORPORATED INTO THIS AGREEMENT.

**6. ARBITRATION AGREEMENT.** ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE UNDERSIGNED AND YOU, OR THE INTRODUCING BROKER, OR THE AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS OF YOU OR THE INTRODUCING BROKER, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S BUSINESS OR THE UNDERSIGNED'S ACCOUNTS, SHALL BE CONDUCTED PURSUANT TO THE CODE OF ARBITRATION PROCEDURE OF THE FINRA. ARBITRATION MUST BE COMMENCED BY SERVICE OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE. THE DECISION AND AWARD OF THE ARBITRATOR (S) SHALL BE CONCLUSIVE AND BINDING UPON ALL PARTIES, AND ANY JUDGMENT UPON ANY AWARD RENDERED MAY BE ENTERED IN A COURT HAVING JURISDICTION THEREOF, AND NEITHER PARTY SHALL OPPOSE SUCH ENTRY.

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is de-certified; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

**7. Other Agreements; Option Transactions, Charges.** The Customer agrees to be bound by the terms of Your Customer Account Agreement. If the Customer trades on margin or has short positions, the Customer agrees to be bound by the terms of Your Customer Margin and Short Account Agreement. If the Customer trades any options, the customer agrees to be bound by the terms of your Customer Option Agreement. If this is a joint Account, the Customers agree to be bound by Your Joint Account Agreement. The Customer understands that copies of these agreements are available from You and, to the extent applicable, are incorporated by reference herein. The terms of these other agreements are in addition to the provisions of this Agreement and any other written agreements between You and the Customer. You may charge the Customer Account maintenance fees, security transfer fees and account transfer fees, and other charges or fees as agreed between You and the Customer's Introducing Broker or as Independently established by You.

**8. Option Account.** Assignment notices for option contracts are allocated among client short positions pursuant to a manual procedure which randomly selects from all client short option positions, including positions established on the day of assignment, those contracts which are subject to exercise. All American short option positions are subject to assignment at any time. A more detailed description of Your random allocation procedure is available upon request. In accordance with the Customer Option Agreement, if applicable, the Customer must promptly notify the Introducing Broker of any change in the Customer's objectives or financial situation. Individual options commissions and other related charges have been included in the Customer's Confirmation; however, a summary of this information will be made available to the Customer upon request. The customer must promptly advise the introducing broker of any material change in the customer's investment objectives or financial situation.

**9. Miscellaneous.** Customer's financial statement is available for personal inspection or will be mailed on the Customer's request. The headings of each section of the Agreement are descriptive only and do not modify or qualify any provision of this Agreement. Except as provided in this Agreement, no provision of this Agreement may be altered, modified or amended unless in writing signed by Your authorized representative. This Agreement and all provisions shall inure to the benefit of You and Your successors, Your assigns, the Customer's Introducing Broker, and all other persons specified in Paragraph 6 above. Whenever used in this Agreement, the singular number shall include the plural, the plural, such funds are not segregated and may be used in Your business, subject to the limitations of 17 CFR Section 240.15c3-3 of the Securities Exchange Act of 1934. The Customer may receive these funds in the normal course of business following demand to You. You shall not be liable for losses caused directly or indirectly by any events beyond Your reasonable control. The costs and expenses of collection of the debit balance and any unpaid deficiency in the Account of the Customer with You, including but not limited to reasonable attorneys' fees and expenses, incurred and payable or paid by You shall be payable to You by the Customer. The estimated annual income, estimated current yield, and market value calculations are estimates only, and have been obtained or prepared from sources You consider to be reliable, but You make no assurance as to their accuracy.

**TradeWallStreet**
F I N A N C I A L

1101 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

**Statement of Account**

---

**JM PROPERTY SP Z.O.O SP K**
**UL ZELAZNA 59**

| Account Information | |
|---|---|
| Account Number: | 30013957 |

**Statement Period**

December 1, 2011 to December 31, 2011

---

*Settled Trades Summary:*

| | | | |
|---|---|---|---|
| *TOTAL PURCHASED (USD):* | 0.00 | *TOTAL SHARES PURCHASED:* | 0.00 |
| *TOTAL SOLD (USD):* | 0.00 | *TOTAL SHARES SOLD:* | 0.00 |

*Please be advised that effective January 1, 2012, the VISA International Transaction Fee will be changing from 1% of the purchase amount to 3% for those accounts invested in Reich & Tang Money Market Funds.*

*Dear Customer,*

*Your Broker's clearing firm, Penson Financial Services, Inc. ("Penson"), has enhanced its service platform by moving from Sungard to Broadridge Financial Solutions, Inc.'s system, referred to as Brokerage Processing Services ("BPS"). This conversion to BPS commenced after the close of business on December 9, 2011 and is now complete.*

*As a result of the conversion, you will receive two statements for the month of December:*

*\* One statement is issued under your pre-conversion account number, detailing account activities between December 1, 2011 and December 9, 2011. This statement also displays conversion related activities that moved your assets from your old account number to our new account number. THE ENDING EQUITY ON THIS STATEMENT WILL BE $0.00.*
*\* A second statement is issued under your post-conversion account number, detailing account activities between December 9, 2011 and December 31, 2011. This statement displays conversion related activities that moved your assets from your old account number to your new account number. The ending equity on this statement will be your actual account equity, as of December 31, 2011.*

*Please contact your broker if you have any questions regarding your account statements or the conversion.*

*To our valued customers:*
*In accordance with the Emergency Economic Stabilization Act of 2008, broker dealers are required to track and report cost basis to the IRS in three phases over the next three years.*
*2011: Equity Securities,*
*2012: Mutual funds and dividend reinvestment plan shares,*
*2013: Debt securities, options and all other financial instruments.*
*Beginning this upcoming tax reporting season the cost basis of any covered equity security transaction (purchased after 12/31/10) that is required to be reported on a 1099-B will include its associated cost basis. If you have any questions about this important change to the IRS mandated reporting requirements, please contact your broker.*

*It is your responsibility to review your confirmations and statements upon receipt or when they are made available electronically. Transactions shall be conclusive and binding upon you if no written objection is made to PFSI (within 10 days after available). In all cases PFSI reserves the right to determine the validity of any objection to the information contained in the account statement.*

*Securities Investor Protection Corporation ("SIPC") does not cover commodity contracts and options on futures. For information about SIPC or to request a SIPC brochure, please see www.sipc.org or contact SIPC at (202) 371-8300.*

# Trade WallStreet
### FINANCIAL

1101 Pennsylvania Ave.
Suite 600
Washington, DC 20004
(202) 449-7260

## Statement of Account

| | | |
|---|---|---|
| JM PROPERTY SP Z.O.O SP K | **Account Information** | **Statement Period** |
| UL ZELAZNA 59 | Account Number:    30013957 | December 1, 2011 to December 31, 2011 |

*DPP and REIT securities are generally illiquid and the estimated value of these securities may not be realized upon liquidation of the security. The value of the security will differ from the purchase price. In the event valuations are provided, they will be based upon estimated values obtained from the issuer's annual report. However, in some cases accurate valuation information is not available and will not be provided.*

*FINRA Rule 2340 requires that we advise you to promptly report any inaccuracy or discrepancy in your account to your brokerage firm and clearing firm (where these are different firms) and to re-confirm any oral communications in writing.*
*http://www.finra.org/web/groups/rules_regs/documents/notice_to_members/p018130.pdf*

*When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day your payment is received, and you will not receive your check back from your financial institution. Please contact your broker if you have questions about electronic check collection or do not want your payments collected electronically.*

*Pursuant to SEC Rule 606, Penson Financial Services, Inc. is required to make publicly available a quarterly report with regard to its routing of non-directed orders. For the purpose of this Rule, we have entered into an agreement with Quantum5 Market Surveillance (a Division of S3 Matching Technologies) to disclose all required information pertaining to this rule. This information can be accessed on the internet at: ftp://public.s3.com/11ac1-6/pfsi, or a written copy will be furnished at no cost upon request via telephone to 214-765-1009 or email to cs@penson.com.*

*SEC Rule 606(b) requires a broker-dealer to disclose to its customers, upon request, "the identity of the venue to which the customer's orders were routed for execution in the six months prior to the request, whether the orders were directed orders or non-directed orders, and the time of the transactions, if any, that resulted from such orders."*

*FINRA REQUIRES THAT WE NOTIFY YOU IN WRITING OF THE AVAILABILITY OF AN INVESTOR BROCHURE THAT INCLUDES INFORMATION DESCRIBING THE FINRA'S PUBLIC DISCLOSURE PROGRAM ('PROGRAM'). TO OBTAIN A BROCHURE OR MORE INFORMATION ABOUT THE PROGRAM OR FINRA, CONTACT THE FINRA PROGRAM HOTLINE AT (800) 289-9999 OR ACCESS THE FINRA WEB SITE AT www.finrabrokercheck.com*

**\* End of Statement \***

# TradeWallStreet
## FINANCIAL

1101 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

| Account Information | | Statement Period |
|---|---|---|
| **Account Number:** | 30013957 | **June 1, 2011 to June 30, 2011** |
| **Financial Advisor #:** | Y300 | |

**JM PROPERTY SP Z.O.O SP K**
**UL ZELAZNA 59**
**00-848 WARSZAWA**
**POLAND**

**Your Financial Advisor**

**TWS FINANCIAL HOUSE REP**
**(202) 449-7260**

**Office Serving You**

**1101 Pennsylvania Avenue**
**Suite 600**
**Washington D.C.  20004**
**(202) 449-7260**

## Account Value

| Asset Category | Current Value 06/30/11 | Prior Value 05/31/11 | Percent of Acct Assets | Estimated Annual Income | Estimated Current Yield |
|---|---|---|---|---|---|
| Money Fund Balance | 0.00 | 0.00 | | | |
| **Total: Portfolio Values** | **0.00** | **0.00** | | | |
| Less: Margin Loan Balance | 0.00 | (96.63) | | | |
| **Total Account Value** | **0.00** | **(96.63)** | | | |

## Asset Allocation

## Income Summary

| | This Period | Year to Date |
|---|---|---|
| Margin Interest | (0.02) | (0.79) |
| **Total: Income** | **(0.02)** | **(0.79)** |

The Account of the Customer is subject to the following terms and conditions ("Agreement") which the Customer agrees to and accepts by use, maintenance and/or continuation of the Account notwithstanding any notice or statement of intention to You to the contrary.

**1. Definitions.** "Account" shall refer individually and collectively to all accounts which the Customer has previously opened, now has open or may open in the future, in which the Customer has any interest, with You or any Introducing Broker, and any and all previous, current and future transactions in such accounts. "Customer" refers to the individual(s) and/or entity(ies) in whose name the Account referenced on the face of this Account statement is carried or who may otherwise have any interest in an Account. "Introducing Broker" means any brokerage firm which introduces securities transactions on behalf of the Customer, which transactions are cleared through You, whether one or more. "Obligations" means all indebtedness, debit balances, liabilities or other obligations of any kind of the Customer to You, whether now existing or hereafter arising. "Securities or other Property" shall mean all money, securities, commodities or other property of every kind and nature and all contracts and options relating thereto, whether for present or future delivery. "You" or "Your" refers to Penson Financial Services, Inc.

**2. Payment of Indebtedness Upon Demand.** The Customer shall at all times be liable for the payment upon demand of any Obligations owing from the Customer to You, and Customer shall be liable to You for any deficiency remaining in any Account in the event of the liquidation thereof, in whole or in part, by You, the Introducing Broker, or by the Customer, and the Customer shall pay such Obligations upon demand.

**3. Security Interest; Liquidation.** All Securities or other property now or hereafter held, carried or maintained by You in or for the Account shall be subject to a first and prior lien and security interest for the discharge of all of the Obligations of the Customer and are to be held by You as security for the payment of the Obligations of the Customer to You, to the fullest extent allowed by law. You shall have the right to transfer Securities or other Property so held by You from or to any Account of the Customer whenever You so determine. Whenever the Customer does not, on or before the settlement date, pay in full for any Securities or other Property purchased for the Account of the Customer, or deliver any Securities or other Property sold for such Account, or if any other Obligations of the Customer to You are unpaid, You are authorized (a) until payment or delivery is made, to pledge, repledge, hypothecate or rehypothecate, without notice, any and all Securities or other Property which You may hold for the Customer (either individually or jointly with others), separately or in common with other Securities or other Property, for the sum then due or for a greater or lesser sum and without retaining in your possession and control for delivery a like amount of similar Securities or other Property; (b) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (c) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (d) to buy any or all Securities or other Property which may be short in such Account; and/or (a) to cancel any open orders and to close any or all outstanding contracts; all without notice of sale or purchase, or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein. You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed. Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account. You are authorized, in Your discretion, should You for any reason whatsoever deem it necessary for Your protection, without notice, to cancel any outstanding order, to close out the Account of the Customer, in whole or in part, or to close out any commitment made on behalf of the Customer.

**4. Lending Agreement; Margin or Short Accounts.** With respect to any margin or short Account maintained by the Customer, You are authorized to lend to yourself, as principal or otherwise, or to others, any Securities or other Property held by You on margin for any Account or as collateral therefor either separately or without other securities. The Customer will at all times maintain such Securities or other Property in the Account of the Customer for margin and/or maintenance purposes as required by You in Your sole discretion, on demand, in accordance with Your general policies regarding margin and maintenance requirements, as such may be modified from time to time, or at other times as You may require, and will be charged, in accordance with Your usual custom or as otherwise determined by You with interest at rates permitted by the laws of the State of Texas. With respect to any margin or short Account of the Customer, You shall have the right at any time and from time to time, in accordance with Your general policies regarding Your margin or maintenance requirements, short Accounts or Accounts in general, as such may be modified from time to time, or at an earlier Point in time than called for by said general policies, in the event that You feel insecure with respect to the Customer's account for any reason in Your sole discretion: (a) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (b) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (c) to buy any or all Securities or other Property which may be short in such Account; and/or (d) to cancel any open orders and to close any or all outstanding contracts; all without demand for margin or additional margin, notice of sale or purchase or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein. You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed. Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account.

**5. Account Carried as Clearing Broker.** The Customer understands that You are carrying the Account of the Customer as clearing broker by arrangement with the Customer's Introducing Broker through whose courtesy the Account of the Customer has been introduced to You. The Customer understands that You act as custodian for funds and securities deposited with You, through the Customer's Introducing Broker, or as a result of transactions You may process for the Customer's Account. Inquiries regarding the Customer's Account or the activity therein should be directed to the Introducing Broker. If Customer is unable to reach the Introducing Broker concerning account activity, or a complaint, Customer may contact Penson at 1700 Pacific Avenue, Suite 1400, Dallas, TX 75201, (214) 765-1100, and speak with the Compliance Department. The Customer understands that the Introducing Broker and not You, is responsible for compliance with all applicable laws and regulations in connection with the Customer's Account. Until receipt by You from the Customer of written notice to the contrary, you may accept and rely upon from such Introducing broker and its representatives employees and other agents, without any inquiry or investigation by You: (a) orders for the purchase or sale in the Customer's Account of Securities or other Property, and (b) any other instructions concerning the Customer's Account. The

**(continued)**
Customer understands that You act only to clear trades introduced by the Customer's Introducing Broker and to effect other back office functions for the Customer's Introducing Broker. The Customer confirms to You that the Customer is relying for any advice concerning the Customer's Account solely on the Customer's Introducing Broker. The Customer understands that You are not a principal of or partner with and do not control in any way, the Introducing Broker or its representatives, employees or other agents. The Customer understands that You will not review the Customer's account and will have no responsibility for trades made in the Customer's Account. The Customer agrees that You shall not be responsible or liable for any acts or omissions of the Introducing Broker or its representatives, employees or other agents.

**THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN CONJUNCTION WITH THESE DISCLOSURES:**

a. ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORM IN WHICH A CLAIM IS FILED;

b. ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING; A PARTY'S ABILITY TO HAVE A COURT REVERSE OR MODIFY AN ARBITRATION AWARD IS VERY LIMITED.

c. THE ABILITY OF THE PARTIES TO OBTAIN DOCUMENTS, WITNESS STATEMENTS AND OTHER DISCOVERY IS GENERALLY MORE LIMITED IN ARBITRATION THAN IN COURT PROCEEDINGS;

d. THE ARBITRATORS DO NOT HAVE TO EXPLAIN THE REASON(S) FOR THEIR AWARD.

e. THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

f. THE RULES OF SOME ARBITRATION FORUMS MAY IMPOSE TIME LIMITS FOR BRINGING A CLAIM IN ARBITRATION. IN SOME CASES, A CLAIM THAT IS INELIGIBLE FOR ARBITRATION MAY BE BROUGHT IN COURT.

g. THE RULES OF THE ARBITRATION FORUM IN WHICH THE CLAIM IS FILED, AND ANY AMENDMENTS THERETO, SHALL BE INCORPORATED INTO THIS AGREEMENT.

**6. ARBITRATION AGREEMENT.** ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE UNDERSIGNED AND YOU, OR THE INTRODUCING BROKER, OR THE AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS OF YOU OR THE INTRODUCING BROKER, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S BUSINESS OR THE UNDERSIGNED'S ACCOUNTS, SHALL BE CONDUCTED PURSUANT TO THE CODE OF ARBITRATION PROCEDURE OF THE FINRA. ARBITRATION MUST BE COMMENCED BY SERVICE OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE. THE DECISION AND AWARD OF THE ARBITRATOR (S) SHALL BE CONCLUSIVE AND BINDING UPON ALL PARTIES, AND ANY JUDGMENT UPON ANY AWARD RENDERED MAY BE ENTERED IN A COURT HAVING JURISDICTION THEREOF, AND NEITHER PARTY SHALL OPPOSE SUCH ENTRY.

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is de-certified; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

**7. Other Agreements; Option Transactions, Charges.** The Customer agrees to be bound by the terms of Your Customer Account Agreement. If the Customer trades on margin or has short positions, the Customer agrees to be bound by the terms of Your Customer Margin and Short Account Agreement. If the Customer trades any options, the customer agrees to be bound by the terms of your Customer Option Agreement. If this is a joint Account, the Customers agree to be bound by Your Joint Account Agreement. The Customer understands that copies of these agreements are available from You and, to the extent applicable, are incorporated by reference herein. The terms of these other agreements are in addition to the provisions of this Agreement and any other written agreements between You and the Customer. You may change the Customer Account maintenance fees, security transfer fees and account transfer fees, and other charges or fees as agreed between You and the Customer's Introducing Broker or as independently established by You.

**8. Option Account.** Assignment notices for option contracts are allocated among client short positions pursuant to a manual procedure which randomly selects from all client short option positions, including positions established on the day of assignment, those contracts which are subject to exercise. All American short option positions are subject to assignment at any time. A more detailed description of Your random allocation procedure is available upon request. In accordance with the Customer Option Agreement, if applicable, the Customer must promptly notify the Introducing Broker of any change in the Customer's objectives or financial situation. Individual options commissions and other related charges have been included in the Customer's Confirmation; however, a summary of this information will be made available to the Customer upon request. The customer must promptly advise the introducing broker of any material change in the customer's investment objectives or financial situation.

**9. Miscellaneous.** Customer's financial statement is available for personal inspection or will be mailed to the Customer's request. The headings of each section of the Agreement are descriptive only and do not modify or qualify any provision of this Agreement. Except as provided in this Agreement, no provision of this Agreement may be altered, modified or amended unless in writing signed by Your authorized representative. This Agreement and all provisions shall inure to the benefit of You and Your successors, Your assigns, the Customer's Introducing Broker, and all other persons specified in Paragraph 6 above. Within applicable limitations of any free credit balance included on the Account statement, such funds are not segregated and may be used in Your business, subject to the limitations of 17 CFR Section 24O.15c3-3 of the Securities Exchange Act of 1934. The Customer may receive these funds in the normal course of business following demand to You. You shall not be liable for losses caused directly or indirectly by any events beyond Your reasonable control. The costs and expenses of collection of the debit balance and any unpaid deficiency in the Account of the Customer with You, including but not limited to reasonable attorneys' fees and expenses, incurred and payable or paid by You shall be payable to You by the Customer. The estimated annual income, estimated current yield, and market value calculations are estimates only, and have been obtained or prepared from sources You consider to be reliable, but You make no assurance as to their accuracy.

# TradeWallStreet
### F I N A N C I A L

1101 Pennsylvania Ave.
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

| JM PROPERTY SP Z.O.O SP K | Account Information | | Statement Period |
|---|---|---|---|
| UL ZELAZNA 59 | Account Number: | **30013957** | **June 1, 2011 to June 30, 2011** |

## Portfolio Positions

| | Symbol/ Cusip | Account Type | Quantity | Current Price | Current Value | Percent of Acct Assets | Estimated Annual Income | Estimated Current Yield |
|---|---|---|---|---|---|---|---|---|
| **Total: Portfolio Values** | | | | | **0.00** | | | |
| Less: Margin Loan Balance | | **Margin** | | | 0.00 | | | |
| **Total: Account Net Assets/Equity** | | | | | **0.00** | | | |

*Account value and totals are based only on priced securities. We may be unable to price all securities in your account. For municipal securities and some other fixed income securities, prices are approximate (not actual market bids) and are provided only as a general guide. They do not necessarily reflect actual market prices. For current prices, please contact your financial consultant.*

## Account Activity

| Margin Account | Entry/Trade Date | Account Type | Transaction | Quantity | Description | | Price | Amount |
|---|---|---|---|---|---|---|---|---|
| | | Margin | | | OPENING BALANCE | | | (96.63) |
| | 06/02/11 | Margin | Debit Interest | | 7.46100%06/01-06/01 | $96 | | (.02) |
| | 06/02/11 | Margin | Journal | | WRITE OFF TO REP Y300 | | | 96.65 |
| **Total: Margin Account Balance** | | | | | | | | **0.00** |

# TradeWallStreet
**F I N A N C I A L**

1101 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

| JM PROPERTY SP Z.O.O SP K | Account Information | | Statement Period |
|---|---|---|---|
| UL ZELAZNA 59 | Account Number: | 30013957 | June 1, 2011 to June 30, 2011 |

*Settled Trades Summary:*

| | | | |
|---|---|---|---|
| *TOTAL PURCHASED (USD):* | 0.00 | *TOTAL SHARES PURCHASED:* | 0.00 |
| *TOTAL SOLD (USD):* | 0.00 | *TOTAL SHARES SOLD:* | 0.00 |

*Pursuant to an agreement, a portion of each transaction fee or commission compensates brokerage firm, broker, advisor, finder, or foreign associate.*

*TWS FINANCIAL, LLC ANNUAL 2011-2012 MARGIN DISCLOSURE STATEMENT*

*We are furnishing this document to you to provide some basic facts about purchasing securities on margin, and to alert you to the risks involved with trading securities in a margin account. Before trading stocks in a margin account, you should carefully review the margin agreement provided by your broker. Consult your broker regarding any questions or concerns you may have with your margin accounts.*

*When you purchase securities, you may pay for the securities in full or you may borrow part of the purchase price from you brokerage firm. If you choose to borrow funds from your firm, you will open a margin account with the firm. The securities purchased are the firm's collateral for the loan to you. If the securities in your account decline in value, so does the value of the collateral supporting your loan, and as a result, the firm can take action, such as issue a margin call and/or sell securities in your account, in order to maintain the required equity in the account. It is important that you fully understand the risks involved in trading securities on margin. These risks include the following:*

*_ You can lose more funds than you deposit in the margin account. A decline in the value of the securities that are purchased on margin may require you to provide additional funds to the firm that has made the loan to avoid the forced sale of those securities or other securities in your account.*
*_ The firm can force the sale of securities in your account. If the equity in your account falls below the maintenance margin requirements under the law, or the firm's higher house requirements, the firm can sell the securities in your account to cover the margin deficiency. You will be responsible for any shortfall in the account after such a sale.*
*_ The firm can sell your securities without contacting you. Some investors mistakenly believe that a firm must contact them for a margin call to be valid, and that the firm cannot liquidate securities in their accounts to meet the call unless the firm has contacted them first. This is not the case. Most firms will attempt to notify their customers of margin calls, but they are not required to do so. However, even if a firm has contacted a customer and provided a specific date by which the customer can meet a margin call, the firm can still take necessary steps to protect its financial interest, including immediately selling the securities without notice to the customer.*
*_ You are not entitled to choose which security in your margin account is liquidated or sold to meet a margin call. Because the securities are collateral for the margin loan, the firm has the right to decide which security to sell in order to protect its interests.*
*_ The firm can increase its house maintenance margin requirement at any time and is not required to provide you advance written notice. These changes in firm policy often take effect immediately and may result in the issuance of a maintenance margin call. Your failure to satisfy the call may cause the member to liquidate or sell securities in your account.*
*_ You are not entitled to an extension of time on a margin call. While an extension of time to meet margin requirements may be available to customers under certain conditions, a customer does not have a right to the extension.*

*TWS FINANCIAL, LLC ANNUAL 2011-2012 DAY TRADING RISK DISCLOSURE STATEMENT RULE 2361*

*You should consider the following points before engaging in a day-trading strategy. For purposes of this notice, a "day-trading strategy" means an overall trading strategy characterized by the regular transmission by a customer of intra-day orders to effect both purchase and sale transactions in the same security or securities.*

**TradeWallStreet**
**F I N A N C I A L**

1101 Pennsylvania Ave.
Suite 600
Washington, DC 20004
(202) 449-7260

**Statement of Account**

---

JM PROPERTY SP Z.O.O SP K
UL ZELAZNA 59

| **Account Information** | | **Statement Period** |
|---|---|---|
| **Account Number:** | 30013957 | **June 1, 2011 to June 30, 2011** |

*Day trading can be extremely risky.  Day trading generally is not appropriate for someone of limited resources and limited investment or trading experience and low risk tolerance.  You should be prepared to lose all of the funds that you use for day trading.  In particular, you should not fund day-trading activities with retirement savings, student loans, second mortgages, emergency funds, funds set aside for purposes such as education or home ownership, or funds required to meet your living expenses.  Further, certain evidence indicates that an investment of less than $50,000 will significantly impair the ability of a day trader to make a profit.  Of course, an investment of $50,000 or more will in no way guarantee success.*

*Be cautious of claims of large profits from day trading.  You should be wary of advertisements or other statements that emphasize the potential for large profits in day trading.  Day trading can also lead to large and immediate financial losses.*

*Day trading requires knowledge of securities markets.  Day trading requires in-depth knowledge of the securities markets and trading techniques and strategies.  In attempting to profit through day trading, you must compete with professional, licensed traders employed by securities firms.  You should have appropriate experience before engaging in day trading.*

*Day trading requires knowledge of a firm's operations.  You should be familiar with the securities firm's business practices, including the operation of the firm's order execution systems and procedures.  Under certain market conditions, you may find it difficult or impossible to liquidate a position quickly at a reasonable price.  This can occur, for example, when the market for a stock suddenly drops, or if trading is halted due to recent news events or unusual trading activity.  The more volatile a stock is, the greater the likelihood that problems may be encountered in executing a transaction.  In addition to normal market risks, you may experience losses due to system failures.*

*Day trading will generate substantial commissions, even if the per trade cost is low.  Day trading involves aggressive trading, and generally you will pay commissions on each trade.  The total daily commissions that you pay on your trades will add to your losses or significantly reduce your earnings.  For instance, assuming that a trade costs $16 and an average of 29 transactions are conducted per day, an investor would need to generate an annual profit of $111,360 just to cover commission expenses.*

*Day trading on margin or short selling may result in losses beyond your initial investment.  When you day trade with funds borrowed from a firm or someone else, you can lose more than the funds you originally placed at risk.  A decline in the value of the securities that are purchased may require you to provide additional funds to the firm to avoid the forced sale of those securities or other securities in your account.  Short selling as part of your day-trading strategy also may lead to extraordinary losses, because you may have to purchase a stock at a very high price in order to cover a short position.*

*Potential Registration Requirements: Persons providing investment advice for others or managing securities accounts for others may need to register as either an "Investment Advisor" under the Investment Advisors Act of 1940 or as a "Broker" or "Dealer" under the Securities Exchange Act of 1934.  Such activities may also trigger state registration requirements.*

*TWS FINANCIAL, LLC ANNUAL 2011-2012 MARKET VOLATILITY AND TRADING PLATFORMS NOTICE*

*All trades are executed through Trade Wall Street Financial, Member of the FINRA and SIPC.  Our clearing firm is Penson Financial Services.  For more information, go to www.penson.com.*

*System response, trade executions and account access may be affected by market conditions, system performance, quote delays and other factors.  The risk of loss in electronic trading can be substantial.  You should therefore consider whether such trading is suitable for you in light of your financial resources.  Money Market Funds are not FDIC Insured.  Read our Risk Disclosures.*

**Trade Wall Street**
F I N A N C I A L

104 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

**Statement of Account**

JM PROPERTY SP Z.O.O SP K
UL ZELAZNA 59

**Account Information**

**Account Number:**    30013957

**Statement Period**

**June 1, 2011 to June 30, 2011**

*After-Hours Trading*

There is no assurance that trades will be executed after the market closes.

*Loss of Principal*

Beware of the risk of trading.  Trading stocks and other investments are subject to fluctuations in value and possibly entire loss of principal.

TWS FINANCIAL, LLC ANNUAL 2011-2012 PRIVACY NOTICE

Trade Wall Street Financial is committed to protecting confidentiality of the information furnished to us by our clients.  We are providing you this information as required by Regulation S-P adopted by the Securities and Exchange Commission.

*Information about You that We Collect*

We collect non-public personal information about you from the following sources: information we receive from you on applications or other forms or through our Web Site and information we receive from a consumer-reporting agency.

*Our Use of Information about You*

Trade Wall Street Financial does not share your non-public personal information with any unaffiliated third parties with whom we have no contractual business relationships, unless:
- You give us written permission
- It is vital to completing a transaction for your account
- It is required by law to protect us against fraud or to comply with a subpoena or other court order.
We do not sell information about you to outside unaffiliated companies.

Trade Wall Street Financial has policies that restrict access to non-public personal information about you to those employees who have need for that information to provide investment alternatives or services to you, or to employees who assist those who provide investment alternatives or services to you.  We maintain physical, electronic, and procedural safeguards to protect your non-public personal information.

TWS FINANCIAL, LLC ANNUAL 2011-2012 SIPC NOTICE

All accounts are SIPC Protected for $500,000 Securities, including $100,000 claims for Cash.  Penson Financial Services, Inc. (PFSI) has also acquired "Excess SIPC" insurance from a third party insurer to protect client accounts up to their net equity for loss of securities and cash held at Penson Financial Services, Inc. (PFSI).  This "Excess SIPC" protection is in addition to the protection provided by the Securities and Investors Protection Act, which is administered by SIPC, and is subject to certain conditions and limitations, details of which are available upon request.  The above coverage does not protect against loss of the market value of securities.

**Trade Wall Street**
F I N A N C I A L

1101 Pennsylvania Ave.
Suite 600
Washington, DC 20004
(202) 449-7260

**Statement of Account**

JM PROPERTY SP Z.O.O SP K
UL ZELAZNA 59

| Account Information | | Statement Period |
|---|---|---|
| Account Number: | 30013957 | June 1, 2011 to June 30, 2011 |

### ACCOUNT REVIEW

*It is always the client's responsibility to review their investment accounts on a routine basis. If there are any discrepancies of any kind, including but not limited to: current equity, buying power, or positions, the client must contact Trade Wall Street Financial prior to acting on any information that does not match. Also, if you ever believe for any reason that anything is incorrect in your account, please make sure you always contact us before acting. If a client acts before contacting us to verify the validity of their account information or fails to review their account on a daily basis, any issues that arise as a result of not reviewing their information or contacting our firm in a timely manner will be solely the client's responsibility.*

*It is also the client's responsibility to review all their open orders daily, especially if you are placing GTC (good till canceled) orders. If you believe you had an order that for some reason is not showing on your software or have any other issues or problems with any orders, you will need to contact us immediately. You will be responsible for this daily review of your open orders. Any issues caused by the failure to do this review and to contact us in a timely manner to resolve any discrepancies will be solely the client's responsibility.*

### SHORT SALES

*The term 'short sale' means any sale of a security, which the seller does not own, or any sale, which is consummated by the delivery of a security, borrowed by, or for the account of the seller. For stocks hard to borrow, short sales must be preceded by a request to Trade Wall Street Financial to make sure stocks can be borrowed. We will then contact the Penson Stock Loan Department to ensure the availability of the stock. If approval is granted by the Penson Stock Loan Department, Trade Wall Street Financial will inform you that the stock can be sold short. If approval is not received, the security in question cannot be shorted. If you short a stock that has not been located, the transaction may be cancelled and you will be responsible for any losses incurred. Short sales made on stocks not located will result in a buy-in. All trades that violate these rules will be put into TWS Financial's error account. All losses will be charged back to your account. You will not receive any profit from these trades as they are illegally gained. Repeated violations of these rules can result in your account being closed. Assuming the security in question can be shorted, the short sale must take place as 'sell short'. If the trader uses a sell to place a short sale or over-sells a position, it is possible that the trade will be executed illegally. This is a violation of FINRA and SEC rules. The trader is responsible to cover any illegal position immediately with a corresponding buy. These corrections must be reported via e-mail to Trade Wall Street Financial at the end of the trading day.*

*It is your responsibility to review your confirmations and statements upon receipt or when they are made available electronically. Transactions shall be conclusive and binding upon you if no written objection is made to PFSI (within 10 days after available). In all cases PFSI reserves the right to determine the validity of any objection to the information contained in the account statement.*

*Securities Investor Protection Corporation ("SIPC") does not cover commodity contracts and options on futures. For information about SIPC or to request a SIPC brochure, please see www.sipc.org or contact SIPC at (202) 371-8300.*

*DPP and REIT securities are generally illiquid and the estimated value of these securities may not be realized upon liquidation of the security. The value of the security will differ from the purchase price. In the event valuations are provided, they will be based upon estimated values obtained from the issuer's annual report. However, in some cases accurate valuation information is not available and will not be provided.*

*FINRA Rule 2340 requires that we advise you to promptly report any inaccuracy or discrepancy in your account to your brokerage firm and clearing firm (where these are different firms) and to re-confirm any oral communications in writing.*
*http://www.finra.org/web/groups/rules_regs/documents/notice_to_members/p018130.pdf*

*When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day your payment is received, and you will not receive your check back from your financial institution. Please contact your broker if you have questions about electronic check collection or do not want your payments collected electronically.*

# Trade Wall Street
### F I N A N C I A L

1101 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

**JM PROPERTY SP Z.O.O SP K**
**UL ZELAZNA 59**

| Account Information | |
|---|---|
| Account Number: | 30013957 |

| Statement Period |
|---|
| June 1, 2011 to June 30, 2011 |

*Pursuant to SEC Rule 606, Penson Financial Services, Inc. is required to make publicly available a quarterly report with regard to its routing of non-directed orders. For the purpose of this Rule, we have entered into an agreement with Quantum5 Market Surveillance (a Division of S3 Matching Technologies) to disclose all required information pertaining to this rule. This information can be accessed on the internet at: ftp://public.s3.com/11ac1-6/pfsi, or a written copy will be furnished at no cost upon request via telephone to 214-765-1009 or email to cs@penson.com.*

*SEC Rule 606(b) requires a broker-dealer to disclose to its customers, upon request, "the identity of the venue to which the customer's orders were routed for execution in the six months prior to the request, whether the orders were directed orders or non-directed orders, and the time of the transactions, if any, that resulted from such orders."*

*FINRA REQUIRES THAT WE NOTIFY YOU IN WRITING OF THE AVAILABILITY OF AN INVESTOR BROCHURE THAT INCLUDES INFORMATION DESCRIBING THE FINRA'S PUBLIC DISCLOSURE PROGRAM ('PROGRAM'). TO OBTAIN A BROCHURE OR MORE INFORMATION ABOUT THE PROGRAM OR FINRA, CONTACT THE FINRA PROGRAM HOTLINE AT (800) 289-9999 OR ACCESS THE FINRA WEB SITE AT www.finrabrokercheck.com*

**\* End of Statement \***

# TradeWallStreet
### F I N A N C I A L

1101 Pennsylvania Ave.
Suite 600
Washington, DC 20004
(202) 449-7260

## Statement of Account

**JM PROPERTY SP Z.O.O SP K**
**UL ZELAZNA 59**
**00-848 WARSZAWA**
**POLAND**

### Account Information

| | |
|---|---|
| Account Number: | 30013957 |
| Financial Advisor #: | Y300 |

### Your Financial Advisor

**TWS FINANCIAL HOUSE REP**
**(202) 449-7260**

### Statement Period

**March 1, 2011 to March 31, 2011**

### Office Serving You

**1101 Pennsylvania Avenue**
**Suite 600**
**Washington D.C.  20004**
**(202) 449-7260**

## Account Value

| Asset Category | Current Value 03/31/11 | Prior Value 12/31/10 | Percent of Acct Assets | Estimated Annual Income | Estimated Current Yield |
|---|---|---|---|---|---|
| Money Fund Balance | 29.14 | 29.14 | 100.00% | | |
| **Total: Portfolio Values** | **29.14** | **29.14** | **100.00%** | | |
| **Total Account Value** | **29.14** | **29.14** | **100.00%** | | |

## Asset Allocation



CASH + MNYMKT
100.00%

## Income Summary

| | This Period | Year to Date |
|---|---|---|
| Total: Income | 0.00 | 0.00 |

The Account of the Customer is subject to the following terms and conditions ("Agreement") which the Customer agrees to, and accepts by use, maintenance and/or continuation of the Account notwithstanding any notice or statement of intention to You to the contrary.

**1. Definitions.** "Account" shall refer individually and collectively to all accounts which the Customer has previously opened, now has open or may open in the future, in which the Customer has any interest, with You or any Introducing Broker, and any and all previous, current and future transactions in such accounts. "Customer" refers to the individual(s) and/or entity(ies) in whose name the Account referenced on the face of this Account statement is carried or who may otherwise have any interest in an Account. "Introducing Broker" means any brokerage firm which introduces securities transactions on behalf of the Customer, which transactions are cleared through You, whether one or more. "Obligations" means all indebtedness, debit balances, liabilities or other obligations of any kind of the Customer to You, whether now existing or hereafter arising. "Securities or other Property" shall mean all money, securities, commodities or other property of every kind and nature and all contracts and options relating thereto, whether for present or future delivery. "You" or "Your" refers to Penson Financial Services, Inc.

**2. Payment of Indebtedness Upon Demand.** The Customer shall at all times be liable for the payment upon demand of any Obligations owing from the Customer to You, and Customer shall be liable to You for any deficiency remaining in any Account in the event of the liquidation thereof, in whole or in part, by You, the Introducing Broker, or by the Customer, and the Customer shall pay such Obligations upon demand.

**3. Security Interest; Liquidation.** All Securities or other property now or hereafter held, carried or maintained by You in or for the Account shall be subject to a first and prior lien and security interest for the discharge of all of the Obligations of the Customer and are to be held by You as security for the payment of the Obligations of the Customer to You, to the fullest extent allowed by law. You shall have the right to transfer Securities or other Property so held by You from or to any Account of the Customer whenever You so determine. Whenever the Customer does not, on or before the settlement date, pay in full for any Securities or other Property purchased for the Account of the Customer, or deliver any Securities or other Property sold for such Account, or if any other Obligations of the Customer to You are unpaid, You are authorized (a) until payment or delivery is made, to pledge, repledge, hypothecate or rehypothecate, without notice, any and all Securities or other Property which You may hold for the Customer (either individually or jointly with others), separately or in common with other Securities or other Property, for the sum then due or for a greater or lesser sum and without retaining in your possession and control for delivery a like amount of similar Securities or other Property; (b) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (c) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (d) to buy any or all Securities or other Property which may be short in such Account; and/or (a) to cancel any open orders and to close any or all outstanding contracts; all without notice of sale or purchase, or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein. You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed. Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account. You are authorized, in Your discretion, should You for any reason whatsoever deem it necessary for Your protection, without notice, to cancel any outstanding order, to close out the Account of the Customer, in whole or in part, or to close out any commitment made on behalf of the Customer.

**4. Lending Agreement; Margin or Short Accounts.** With respect to any margin or short Account maintained by the Customer, You are authorized to lend to yourself, as principal or otherwise, or to others, any Securities or other Property held by You on margin for any Account or as collateral therefor either separately or without other securities. The Customer will at all times maintain such Securities or other Property in the Account of the Customer for margin and/or maintenance purposes as required by You in Your sole discretion, on demand, in accordance with Your general policies regarding margin and maintenance requirements, as such may be modified from time to time, or at other times as You may require, and will be charged, in accordance with Your usual custom or as otherwise determined by You with interest at rates permitted by the laws of the State of Texas. With respect to any margin or short Account of the Customer, You shall have the right at any time and from time to time, in accordance with Your general policies regarding Your margin or maintenance requirements, short Accounts or Accounts in general, as such may be modified from time to time, or at an earlier Point in time than called for by said general policies, in the event that You feel insecure with respect to the Customer's account for any reason in Your sole discretion: (a) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (b) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (c) to buy any or all Securities or other Property which may be short in such Account, and/or (d) to cancel any open orders and to close any or all outstanding contracts; all without demand for margin or additional margin, notice of sale or purchase or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein. You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed. Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account.

**5. Account Carried as Clearing Broker.** The Customer understands that You are carrying the Account of the Customer as clearing broker by arrangement with the Customer's Introducing Broker through whose courtesy the Account of the Customer has been introduced to You. The Customer understands that You act as custodian for funds and securities deposited with You, through the Customer's Introducing Broker, or as a result of transactions You may process for the Customer's Account. Inquiries regarding the Customer's Account or the activity therein should be directed to the Introducing Broker. If Customer is unable to reach the Introducing Broker concerning account activity, or a complaint, Customer may contact Penson at 1700 Pacific Avenue, Suite 1400, Dallas, TX 75201, (214) 765-1100, and speak with the Compliance Department. The Customer understands that the Introducing Broker and not You, is responsible for compliance with all applicable laws and regulations in connection with the Customer's Account. Until receipt by You from the Customer of written notice to the contrary, you may accept and rely upon from such Introducing broker and its representatives employees and other agents, without any inquiry or investigation by You: (a) orders for the purchase or sale in the Customer's Account of Securities or other Property, and (b) any other instructions concerning the Customer's Account. The

**(continued)**
Customer understands that You act only to clear trades introduced by the Customer's Introducing Broker and to effect other back office functions for the Customer's Introducing Broker. The Customer confirms to You that the Customer is relying for any advice concerning the Customer's Account solely on the Customer's Introducing Broker. The Customer understands that You are not a principal or partner with and do not control in any way, the Introducing Broker or its representatives, employees or other agents. The Customer understands that You will not review the Customer's account and will have no responsibility for trades made in the Customer's Account. The Customer agrees that You shall not be responsible or liable for any acts or omissions of the Introducing Broker or its representatives, employees or other agents.

**THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN CONJUNCTION WITH THESE DISCLOSURES:**

a. ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORUM IN WHICH A CLAIM IS FILED;

b. ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING; A PARTY'S ABILITY TO HAVE A COURT REVERSE OR MODIFY AN ARBITRATION AWARD IS VERY LIMITED.

c. THE ABILITY OF THE PARTIES TO OBTAIN DOCUMENTS, WITNESS STATEMENTS AND OTHER DISCOVERY IS GENERALLY MORE LIMITED IN ARBITRATION THAN IN COURT PROCEEDINGS;

d. THE ARBITRATORS DO NOT HAVE TO EXPLAIN THE REASON(S) FOR THEIR AWARD.

e. THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

f. THE RULES OF SOME ARBITRATION FORUMS MAY IMPOSE TIME LIMITS FOR BRINGING A CLAIM IN ARBITRATION. IN SOME CASES, A CLAIM THAT IS INELIGIBLE FOR ARBITRATION MAY BE BROUGHT IN COURT.

g. THE RULES OF THE ARBITRATION FORUM IN WHICH THE CLAIM IS FILED, AND ANY AMENDMENTS THERETO, SHALL BE INCORPORATED INTO THIS AGREEMENT.

**6. ARBITRATION AGREEMENT.** ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE UNDERSIGNED AND YOU, OR THE INTRODUCING BROKER, OR THE AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS OF YOU OR THE INTRODUCING BROKER, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S BUSINESS OR THE UNDERSIGNED'S ACCOUNTS, SHALL BE CONDUCTED PURSUANT TO THE CODE OF ARBITRATION PROCEDURE OF THE FINRA. ARBITRATION MUST BE COMMENCED BY SERVICE OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE. THE DECISION AND AWARD OF THE ARBITRATOR (S) SHALL BE CONCLUSIVE AND BINDING UPON ALL PARTIES, AND ANY JUDGMENT UPON ANY AWARD RENDERED MAY BE ENTERED IN A COURT HAVING JURISDICTION THEREOF, AND NEITHER PARTY SHALL OPPOSE SUCH ENTRY.

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is de-certified; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

**7. Other Agreements; Option Transactions, Charges.** The Customer agrees to be bound by the terms of Your Customer Account Agreement. If the Customer trades on margin or has short positions, the Customer agrees to be bound by the terms of Your Customer Margin and Short Account Agreement. If the Customer trades any options, the customer agrees to be bound by the terms of your Customer Option Agreement. If this is a joint Account, the Customers agree to be bound by Your Joint Account Agreement. The Customer understands that copies of these agreements are available from You and, to the extent applicable, are incorporated by reference herein. The terms of these other agreements are in addition to the provisions of this Agreement and any other written agreements between You and the Customer. You may charge the Customer Account maintenance fees, security transfer fees and account transfer fees, and other charges or fees as agreed between You and the Customer's Introducing Broker or as Independently established by You.

**8. Option Account.** Assignment notices for option contracts are allocated among client short positions pursuant to a manual procedure which randomly selects from all client short option positions, including positions established on the day of assignment, those contracts which are subject to exercise. All American short option positions are subject to assignment at any time. A more detailed description of Your random allocation procedure is available upon request. In accordance with the Customer Option Agreement, if applicable, the Customer must promptly notify the Introducing Broker of any change in the Customer's objectives or financial situation. Individual options commissions and other related charges have been included in the Customer's Confirmation; however, a summary of this information will be made available to the Customer upon request. The customer must promptly advise the introducing broker of any material change in the customer's investment objectives or financial situation.

**9. Miscellaneous.** Customer's financial statement is available for personal inspection or will be mailed to the Customer's request. The headings of each section of the Agreement are descriptive only and do not modify or qualify any provision of this Agreement. Except as provided in this Agreement, no provision of this Agreement may be altered, modified or amended unless in writing signed by Your authorized representative. This Agreement and all provisions shall inure to the benefit of You and Your successors, Your assigns, the Customer's Introducing Broker, and all other persons specified in Paragraph 6 above. Within applicable law and Your conduct being herein under in the Account statement, such funds are not segregated and may be used in Your business, subject to the limitations of 17 CFR Section 240.15c3-3 of the Securities Exchange Act of 1934. The Customer may receive these funds in the normal course of business following demand to You. You shall not be liable for losses caused directly or indirectly by any events beyond Your reasonable control. The costs and expenses of collection of the debit balance and any unpaid deficiency in the Account of the Customer with You, including but not limited to reasonable attorneys' fees and expenses, incurred and payable or paid by You shall be payable to You by the Customer. The estimated annual income, estimated current yield, and market value calculations are estimates only, and have been obtained or prepared from sources You consider to be reliable, but You make no assurance as to their accuracy.

# TradeWallStreet
## F I N A N C I A L

1101 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

**JM PROPERTY SP Z.O.O SP K**
**UL ZELAZNA 59**

| Account Information | |
| --- | --- |
| Account Number: | 30013957 |

| Statement Period | |
| --- | --- |
| March 1, 2011 to March 31, 2011 | |

## Portfolio Positions

| Cash & Equivalents | Symbol/ Cusip | Account Type | Quantity | Current Price | Current Value | Percent of Acct Assets | Estimated Annual Income | Estimated Current Yield |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Money Market Fund | | MoneyFund | | 1.00 | 29.14 | 100.00 | | |
| **Total: Cash & Equivalents** | | | | | **29.14** | **100.00** | | |
| | | | | | | | | |
| **Total: Account Net Assets/Equity** | | | | | **29.14** | **100.00** | | |

*Account value and totals are based only on priced securities. We may be unable to price all securities in your account. For municipal securities and some other fixed income securities, prices are approximate (not actual market bids) and are provided only as a general guide. They do not necessarily reflect actual market prices. For current prices, please contact your financial consultant.*

## Account Activity

| Scudder MM Port | Entry/Trade Date | Account Type | Transaction | Quantity | Description | Price | Amount |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | MoneyFund | | | OPENING BALANCE | | 29.14 |
| **Total: Scudder MM Portfolio** | | | | | | | **29.14** |

# TradeWallStreet
**F I N A N C I A L**

1101 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

| JM PROPERTY SP Z.O.O SP K | Account Information | Statement Period |
|---|---|---|
| UL ZELAZNA 59 | **Account Number:**      30013957 | **March 1, 2011 to March 31, 2011** |

*Settled Trades Summary:*

| | | | |
|---|---|---|---|
| *TOTAL PURCHASED (USD):* | 0.00 | *TOTAL SHARES PURCHASED:* | 0.00 |
| *TOTAL SOLD (USD):* | 0.00 | *TOTAL SHARES SOLD:* | 0.00 |

*A copy of the Penson Financial Services, Inc. (PFSI) Statement of Financial Condition at December 31, 2010 is available on the website at www.penson.com. A copy may also be obtained at no cost by calling 1-888-321-6162. At December 31, 2010, PFSI had net capital of $139,495,210, and was $96,493,676 in excess of its required net capital of $43,001,534. At February 28, 2011, PFSI had net capital of $141,651,483 and was $95,180,304 in excess of its required net capital of $46,471,179.*

*Pursuant to an agreement, a portion of each transaction fee or commission compensates brokerage firm, broker, advisor, finder, or foreign associate.*

*TWS FINANCIAL, LLC ANNUAL 2011-2012 MARGIN DISCLOSURE STATEMENT*

*We are furnishing this document to you to provide some basic facts about purchasing securities on margin, and to alert you to the risks involved with trading securities in a margin account. Before trading stocks in a margin account, you should carefully review the margin agreement provided by your broker. Consult your broker regarding any questions or concerns you may have with your margin accounts.*

*When you purchase securities, you may pay for the securities in full or you may borrow part of the purchase price from you brokerage firm. If you choose to borrow funds from your firm, you will open a margin account with the firm. The securities purchased are the firm's collateral for the loan to you. If the securities in your account decline in value, so does the value of the collateral supporting your loan, and as a result, the firm can take action, such as issue a margin call and/or sell securities in your account, in order to maintain the required equity in the account. It is important that you fully understand the risks involved in trading securities on margin. These risks include the following:*

*_     You can lose more funds than you deposit in the margin account. A decline in the value of the securities that are purchased on margin may require you to provide additional funds to the firm that has made the loan to avoid the forced sale of those securities or other securities in your account.*
*_     The firm can force the sale of securities in your account. If the equity in your account falls below the maintenance margin requirements under the law, or the firm's higher house requirements, the firm can sell the securities in your account to cover the margin deficiency. You will be responsible for any shortfall in the account after such a sale.*
*_     The firm can sell your securities without contacting you. Some investors mistakenly believe that a firm must contact them for a margin call to be valid, and that the firm cannot liquidate securities in their accounts to meet the call unless the firm has contacted them first. This is not the case. Most firms will attempt to notify their customers of margin calls, but they are not required to do so. However, even if a firm has contacted a customer and provided a specific date by which the customer can meet a margin call, the firm can still take necessary steps to protect its financial interest, including immediately selling the securities without notice to the customer.*
*_     You are not entitled to choose which security in your margin account is liquidated or sold to meet a margin call. Because the securities are collateral for the margin loan, the firm has the right to decide which security to sell in order to protect its interests.*
*_     The firm can increase its house maintenance margin requirement at any time and is not required to provide you advance written notice. These changes in firm policy often take effect immediately and may result in the issuance of a maintenance margin call. Your failure to satisfy the call may cause the member to liquidate or sell securities in your account.*
*_     You are not entitled to an extension of time on a margin call. While an extension of time to meet margin requirements may be available to customers under certain conditions, a customer does not have a right to the extension.*

# Trade Wall Street
**FINANCIAL**

1101 Pennsylvania Ave.
Suite 600
Washington, DC 20004
(202) 449-7260

## Statement of Account

JM PROPERTY SP Z.O.O SP K
UL ZELAZNA 59

**Account Information**

**Account Number:** 30013957

**Statement Period**

**March 1, 2011 to March 31, 2011**

*TWS FINANCIAL, LLC ANNUAL 2011-2012 DAY TRADING RISK DISCLOSURE STATEMENT RULE 2361*

*You should consider the following points before engaging in a day-trading strategy. For purposes of this notice, a "day-trading strategy" means an overall trading strategy characterized by the regular transmission by a customer of intra-day orders to effect both purchase and sale transactions in the same security or securities.*

*Day trading can be extremely risky. Day trading generally is not appropriate for someone of limited resources and limited investment or trading experience and low risk tolerance. You should be prepared to lose all of the funds that you use for day trading. In particular, you should not fund day-trading activities with retirement savings, student loans, second mortgages, emergency funds, funds set aside for purposes such as education or home ownership, or funds required to meet your living expenses. Further, certain evidence indicates that an investment of less than $50,000 will significantly impair the ability of a day trader to make a profit. Of course, an investment of $50,000 or more will in no way guarantee success.*

*Be cautious of claims of large profits from day trading. You should be wary of advertisements or other statements that emphasize the potential for large profits in day trading. Day trading can also lead to large and immediate financial losses.*

*Day trading requires knowledge of securities markets. Day trading requires in-depth knowledge of the securities markets and trading techniques and strategies. In attempting to profit through day trading, you must compete with professional, licensed traders employed by securities firms. You should have appropriate experience before engaging in day trading.*

*Day trading requires knowledge of a firm's operations. You should be familiar with the securities firm's business practices, including the operation of the firm's order execution systems and procedures. Under certain market conditions, you may find it difficult or impossible to liquidate a position quickly at a reasonable price. This can occur, for example, when the market for a stock suddenly drops, or if trading is halted due to recent news events or unusual trading activity. The more volatile a stock is, the greater the likelihood that problems may be encountered in executing a transaction. In addition to normal market risks, you may experience losses due to system failures.*

*Day trading will generate substantial commissions, even if the per trade cost is low. Day trading involves aggressive trading, and generally you will pay commissions on each trade. The total daily commissions that you pay on your trades will add to your losses or significantly reduce your earnings. For instance, assuming that a trade costs $16 and an average of 29 transactions are conducted per day, an investor would need to generate an annual profit of $111,360 just to cover commission expenses.*

*Day trading on margin or short selling may result in losses beyond your initial investment. When you day trade with funds borrowed from a firm or someone else, you can lose more than the funds you originally placed at risk. A decline in the value of the securities that are purchased may require you to provide additional funds to the firm to avoid the forced sale of those securities or other securities in your account. Short selling as part of your day-trading strategy also may lead to extraordinary losses, because you may have to purchase a stock at a very high price in order to cover a short position.*

*Potential Registration Requirements: Persons providing investment advice for others or managing securities accounts for others may need to register as either an "Investment Advisor" under the Investment Advisors Act of 1940 or as a "Broker" or "Dealer" under the Securities Exchange Act of 1934. Such activities may also trigger state registration requirements.*

*TWS FINANCIAL, LLC ANNUAL 2011-2012 MARKET VOLATILITY AND TRADING PLATFORMS NOTICE*

*All trades are executed through Trade Wall Street Financial, Member of the FINRA and SIPC. Our clearing firm is Penson Financial Services. For more information, go to www.penson.com.*

*System response, trade executions and account access may be affected by market conditions, system performance, quote delays and other factors. The risk of loss in electronic trading can be substantial. You should therefore consider whether such trading is suitable for you in light of your financial resources. Money Market Funds are not FDIC Insured. Read our Risk Disclosures.*

# TradeWallStreet
### F I N A N C I A L

1101 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

## Statement of Account

**JM PROPERTY SP Z.O.O SP K**
**UL ZELAZNA 59**

**Account Information**

Account Number:  **30013957**

**Statement Period**

**March 1, 2011 to March 31, 2011**

*After-Hours Trading*

There is no assurance that trades will be executed after the market closes.

*Loss of Principal*

Beware of the risk of trading.  Trading stocks and other investments are subject to fluctuations in value and possibly entire loss of principal.

TWS FINANCIAL, LLC ANNUAL 2011-2012 PRIVACY NOTICE

Trade Wall Street Financial is committed to protecting confidentiality of the information furnished to us by our clients.  We are providing you this information as required by Regulation S-P adopted by the Securities and Exchange Commission.

*Information about You that We Collect*

We collect non-public personal information about you from the following sources: information we receive from you on applications or other forms or through our Web Site and information we receive from a consumer-reporting agency.

*Our Use of Information about You*

Trade Wall Street Financial does not share your non-public personal information with any unaffiliated third parties with whom we have no contractual business relationships, unless:
- You give us written permission
- It is vital to completing a transaction for your account
- It is required by law to protect us against fraud or to comply with a subpoena or other court order.
We do not sell information about you to outside unaffiliated companies.

Trade Wall Street Financial has policies that restrict access to non-public personal information about you to those employees who have need for that information to provide investment alternatives or services to you, or to employees who assist those who provide investment alternatives or services to you.  We maintain physical, electronic, and procedural safeguards to protect your non-public personal information.

TWS FINANCIAL, LLC ANNUAL 2011-2012 SIPC NOTICE

All accounts are SIPC Protected for $500,000 Securities, including $100,000 claims for Cash.  Penson Financial Services, Inc. (PFSI) has also acquired "Excess SIPC" insurance from a third party insurer to protect client accounts up to their net equity for loss of securities and cash held at Penson Financial Services, Inc. (PFSI).  This "Excess SIPC" protection is in addition to the protection provided by the Securities and Investors Protection Act, which is administered by SIPC, and is subject to certain conditions and limitations, details of which are available upon request.  The above coverage does not protect against loss of the market value of securities.

# Trade Wall Street
**F I N A N C I A L**

1101 Pennsylvania Ave.
Suite 600
Washington, DC 20004
(202) 449-7260

**Statement of Account**

---

**JM PROPERTY SP Z.O.O SP K**
**UL ZELAZNA 59**

| Account Information | | Statement Period |
|---|---|---|
| **Account Number:** | 30013957 | **March 1, 2011 to March 31, 2011** |

## ACCOUNT REVIEW

*It is always the client's responsibility to review their investment accounts on a routine basis. If there are any discrepancies of any kind, including but not limited to: current equity, buying power, or positions, the client must contact Trade Wall Street Financial prior to acting on any information that does not match. Also, if you ever believe for any reason that anything is incorrect in your account, please make sure you always contact us before acting. If a client acts before contacting us to verify the validity of their account information or fails to review their account on a daily basis, any issues that arise as a result of not reviewing their information or contacting our firm in a timely manner will be solely the client's responsibility.*

*It is also the client's responsibility to review all their open orders daily, especially if you are placing GTC (good till canceled) orders. If you believe you had an order that for some reason is not showing on your software or have any other issues or problems with any orders, you will need to contact us immediately. You will be responsible for this daily review of your open orders. Any issues caused by the failure to do this review and to contact us in a timely manner to resolve any discrepancies will be solely the client's responsibility.*

## SHORT SALES

*The term 'short sale' means any sale of a security, which the seller does not own, or any sale, which is consummated by the delivery of a security, borrowed by, or for the account of the seller. For stocks hard to borrow, short sales must be preceded by a request to Trade Wall Street Financial to make sure stocks can be borrowed. We will then contact the Penson Stock Loan Department to ensure the availability of the stock. If approval is granted by the Penson Stock Loan Department, Trade Wall Street Financial will inform you that the stock can be sold short. If approval is not received, the security in question cannot be shorted. If you short a stock that has not been located, the transaction may be cancelled and you will be responsible for any losses incurred. Short sales made on stocks not located will result in a buy-in. All trades that violate these rules will be put into TWS Financial's error account. All losses will be charged back to your account. You will not receive any profit from these trades as they are illegally gained. Repeated violations of these rules can result in your account being closed. Assuming the security in question can be shorted, the short sale must take place as 'sell short'. If the trader uses a sell to place a short sale or over-sells a position, it is possible that the trade will be executed illegally. This is a violation of FINRA and SEC rules. The trader is responsible to cover any illegal position immediately with a corresponding buy. These corrections must be reported via e-mail to Trade Wall Street Financial at the end of the trading day.*

*It is your responsibility to review your confirmations and statements upon receipt or when they are made available electronically. Transactions shall be conclusive and binding upon you if no written objection is made to PFSI (within 10 days after available). In all cases PFSI reserves the right to determine the validity of any objection to the information contained in the account statement.*

*Securities Investor Protection Corporation ("SIPC") does not cover commodity contracts and options on futures. For information about SIPC or to request a SIPC brochure, please see www.sipc.org or contact SIPC at (202) 371-8300.*

*DPP and REIT securities are generally illiquid and the estimated value of these securities may not be realized upon liquidation of the security. The value of the security will differ from the purchase price. In the event valuations are provided, they will be based upon estimated values obtained from the issuer's annual report. However, in some cases accurate valuation information is not available and will not be provided.*

*FINRA Rule 2340 requires that we advise you to promptly report any inaccuracy or discrepancy in your account to your brokerage firm and clearing firm (where these are different firms) and to re-confirm any oral communications in writing.*
*http://www.finra.org/web/groups/rules_regs/documents/notice_to_members/p018130.pdf*

*When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day your payment is received, and you will not receive your check back from your financial institution. Please contact your broker if you have questions about electronic check collection or do not want your payments collected electronically.*

# TradeWallStreet
**F I N A N C I A L**

1101 Pennsylvania Ave.
Suite 600
Washington, DC 20004
(202) 449-7260

**Statement of Account**

---

JM PROPERTY SP Z.O.O SP K
UL ZELAZNA 59

| Account Information | |
| --- | --- |
| Account Number: | 30013957 |

| Statement Period |
| --- |
| March 1, 2011 to March 31, 2011 |

*Pursuant to SEC Rule 606, Penson Financial Services, Inc. is required to make publicly available a quarterly report with regard to its routing of non-directed orders. For the purpose of this Rule, we have entered into an agreement with Quantum5 Market Surveillance (a Division of S3 Matching Technologies) to disclose all required information pertaining to this rule. This information can be accessed on the internet at: ftp://public.s3.com/11ac1-6/pfsi, or a written copy will be furnished at no cost upon request via telephone to 214-765-1009 or email to cs@penson.com.*

*SEC Rule 606(b) requires a broker-dealer to disclose to its customers, upon request, "the identity of the venue to which the customer's orders were routed for execution in the six months prior to the request, whether the orders were directed orders or non-directed orders, and the time of the transactions, if any, that resulted from such orders."*

*FINRA REQUIRES THAT WE NOTIFY YOU IN WRITING OF THE AVAILABILITY OF AN INVESTOR BROCHURE THAT INCLUDES INFORMATION DESCRIBING THE FINRA'S PUBLIC DISCLOSURE PROGRAM ('PROGRAM'). TO OBTAIN A BROCHURE OR MORE INFORMATION ABOUT THE PROGRAM OR FINRA, CONTACT THE FINRA PROGRAM HOTLINE AT (800) 289-9999 OR ACCESS THE FINRA WEB SITE AT www.finrabrokercheck.com*

**\* End of Statement \***

# Trade Wall Street
## FINANCIAL

1101 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

JM PROPERTY SP Z.O.O SP K
UL ZELAZNA 59
00-848 WARSZAWA
POLAND

### Account Information

| | |
|---|---|
| Account Number: | 30013957 |
| Financial Advisor #: | Y300 |

### Your Financial Advisor

TWS FINANCIAL HOUSE REP
(202) 449-7260

### Statement Period

**May 1, 2011 to May 31, 2011**

### Office Serving You

1101 Pennsylvania Avenue
Suite 600
Washington D.C.  20004
(202) 449-7260

## Account Value

| Asset Category | Current Value 05/31/11 | Prior Value 04/29/11 | Percent of Acct Assets | Estimated Annual Income | Estimated Current Yield |
|---|---|---|---|---|---|
| Cash Account Balance | 0.00 | (95.86) | | | |
| Money Fund Balance | 0.00 | 0.00 | | | |
| Total: Portfolio Values | 0.00 | (95.86) | | | |
| Less:  Margin Loan Balance | (96.63) | (0.17) | | | |
| Total Account Value | (96.63) | (96.03) | | | |

## Asset Allocation

## Income Summary

| | This Period | Year to Date |
|---|---|---|
| Margin Interest | (0.60) | (0.77) |
| Total: Income | (0.60) | (0.77) |

The Account of the Customer is subject to the following terms and conditions ("Agreement") which the Customer agrees to, and accepts by use, maintenance and/or continuation of the Account notwithstanding any notice or statement of intention to You to the contrary.

**1. Definitions.** "Account" shall refer individually and collectively to all accounts which the Customer has previously opened, now has open or may open in the future, in which the Customer has any interest, with You or any Introducing Broker, and any and all previous, current and future transactions in such accounts. "Customer" refers to the individual(s) and/or entity(ies) in whose name the Account referenced on the face of this Account statement is carried or who may otherwise have any interest in an Account. "Introducing Broker" means any brokerage firm which introduces securities transactions on behalf of the Customer, which transactions are cleared through You, whether one or more. "Obligations" means all indebtedness, debit balances, liabilities or other obligations of any kind of the Customer to You, whether now existing or hereafter arising. "Securities or other Property" shall mean all money, securities, commodities or other property of every kind and nature and all contracts and options relating thereto, whether for present or future delivery. "You" or "Your" refers to Penson Financial Services, Inc.

**2. Payment of Indebtedness Upon Demand.** The Customer shall at all times be liable for the payment upon demand of any Obligations owing from the Customer to You, and Customer shall be liable to You for any deficiency remaining in any Account in the event of the liquidation thereof, in whole or in part, by You, the Introducing Broker, or by the Customer, and the Customer shall pay such Obligations upon demand.

**3. Security Interest; Liquidation.** All Securities or other property now or hereafter held, carried or maintained by You in or for the Account shall be subject to a first and prior lien and security interest for the discharge of all of the Obligations of the Customer and are to be held by You as security for the payment of the Obligations of the Customer to You, to the fullest extent allowed by law. You shall have the right to transfer Securities or other Property so held by You from or to any Account of the Customer whenever You so determine. Whenever the Customer does not, on or before the settlement date, pay in full for any Securities or other Property purchased for the Account of the Customer, or deliver any Securities or other Property sold for such Account, or if any other Obligations of the Customer to You are unpaid, You are authorized (a) until payment or delivery is made, to pledge, repledge, hypothecate or rehypothecate, without notice, any and all Securities or other Property which You may hold for the Customer (either individually or jointly with others), separately or in common with other Securities or other Property, for the sum then due or for a greater or lesser sum and without retaining in your possession and control for delivery a like amount of similar Securities or other Property; (b) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (c) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (d) to buy any or all Securities or other Property which may be short in such Account; and/or (a) to cancel any open orders and to close any or all outstanding contracts; all without notice of sale or purchase, or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein. You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed. Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account. You are authorized, in Your discretion, should You for any reason whatsoever deem it necessary for Your protection, without notice, to cancel any outstanding order, to close out the Account of the Customer, in whole or in part, or to close out any commitment made on behalf of the Customer.

**4. Lending Agreement; Margin or Short Accounts.** With respect to any margin or short Account maintained by the Customer, You are authorized to lend to yourself, as principal or otherwise, or to others, any Securities or other Property held by You on margin for any Account or as collateral therefor either separately or without other securities. The Customer will at all times maintain such Securities or other Property in the Account of the Customer for margin and/or maintenance purposes as required by You in Your sole discretion, on demand, in accordance with Your general policies regarding margin and maintenance requirements, as such may be modified from time to time, or at other times as You may require, and will be charged, in accordance with Your usual custom or as otherwise determined by You with interest at rates permitted by the laws of the State of Texas. With respect to any margin or short Account of the Customer, You shall have the right at any time and from time to time, in accordance with Your general policies regarding Your margin or maintenance requirements, short Accounts or Accounts in general, as such may be modified from time to time, or at an earlier point in time than called for by said general policies, in the event that You feel insecure with respect to the Customer's account for any reason in Your sole discretion: (a) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (b) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (c) to buy any or all Securities or other Property which may be short in such Account, and/or (d) to cancel any open orders and to close any or all outstanding contracts; all without demand for margin or additional margin, notice of sale or purchase or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein. You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed. Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account.

**5. Account Carried as Clearing Broker.** The Customer understands that You are carrying the Account of the Customer as clearing broker by arrangement with the Customer's Introducing Broker through whose courtesy the Account of the Customer has been introduced to You. The Customer understands that You act as custodian for funds and securities deposited with You, through the Customer's Introducing Broker, or as a result of transactions You may process for the Customer's Account. Inquiries regarding the Customer's Account or the activity therein should be directed to the Introducing Broker. If Customer requires in reach the Introducing Broker concerning account activity, or a complaint, Customer may contact Penson at 1700 Pacific Avenue, Suite 1400, Dallas, TX 75201, (214) 765-1100, and speak with the Compliance Department. The Customer understands that the Introducing Broker and not You, is responsible for compliance with all applicable laws and regulations in connection with the Customer's Account. Until receipt by You from the Customer of written notice to the contrary, you may accept and rely upon from such Introducing broker and its representatives employees and other agents, without any inquiry or investigation by You: (a) orders for the purchase or sale in the Customer's Account of Securities or other Property, and (b) any other instructions concerning the Customer's Account. The

**5.** (continued)
Customer understands that You act only to clear trades introduced by the Customer's Introducing Broker and to effect other back office functions for the Customer's Introducing Broker. The Customer confirms to You that the Customer is relying for any advice concerning the Customer's Account solely on the Customer's Introducing Broker. The Customer understands that You are not a principal of or partner with and do not control in any way, the Introducing Broker or its representatives, employees or other agents. The Customer understands that You will not review the Customer's account and will have no responsibility for trades made in the Customer's Account. The Customer agrees that You shall not be responsible or liable for any acts or omissions of the Introducing Broker or its representatives, employees or other agents.

**THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN CONJUNCTION WITH THESE DISCLOSURES:**

a. ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORM IN WHICH A CLAIM IS FILED;

b. ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING; A PARTY'S ABILITY TO HAVE A COURT REVERSE OR MODIFY AN ARBITRATION AWARD IS VERY LIMITED.

c. THE ABILITY OF THE PARTIES TO OBTAIN DOCUMENTS, WITNESS STATEMENTS AND OTHER DISCOVERY IS GENERALLY MORE LIMITED IN ARBITRATION THAN IN COURT PROCEEDINGS;

d. THE ARBITRATORS DO NOT HAVE TO EXPLAIN THE REASON(S) FOR THEIR AWARD.

e. THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

f. THE RULES OF SOME ARBITRATION FORUMS MAY IMPOSE TIME LIMITS FOR BRINGING A CLAIM IN ARBITRATION. IN SOME CASES, A CLAIM THAT IS INELIGIBLE FOR ARBITRATION MAY BE BROUGHT IN COURT.

g. THE RULES OF THE ARBITRATION FORUM IN WHICH THE CLAIM IS FILED, AND ANY AMENDMENTS THERETO, SHALL BE INCORPORATED INTO THIS AGREEMENT.

**6. ARBITRATION AGREEMENT.** ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE UNDERSIGNED AND YOU, OR THE INTRODUCING BROKER, OR THE AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS OF YOU OR THE INTRODUCING BROKER, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S BUSINESS OR THE UNDERSIGNED'S ACCOUNTS, SHALL BE CONDUCTED PURSUANT TO THE CODE OF ARBITRATION PROCEDURE OF THE FINRA. ARBITRATION MUST BE COMMENCED BY SERVICE OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE. THE DECISION AND AWARD OF THE ARBITRATOR (S) SHALL BE CONCLUSIVE AND BINDING UPON ALL PARTIES, AND ANY JUDGMENT UPON ANY AWARD RENDERED MAY BE ENTERED IN A COURT HAVING JURISDICTION THEREOF, AND NEITHER PARTY SHALL OPPOSE SUCH ENTRY.

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is de-certified; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

**7. Other Agreements; Option Transactions, Charges.** The Customer agrees to be bound by the terms of Your Customer Account Agreement. If the Customer trades on margin or has short positions, the Customer agrees to be bound by the terms of Your Customer Margin and Short Account Agreement. If the Customer trades any options, the customer agrees to be bound by the terms of your Customer Option Agreement. If this is a joint Account, the Customers agree to be bound by Your Joint Account Agreement. The Customer understands that copies of these agreements are available from You and, to the extent applicable, are incorporated by reference herein. The terms of these other agreements are in addition to the provisions of this Agreement and any other written agreements between You and the Customer. You may charge the Customer Account maintenance fees, security transfer fees and account transfer fees, and other charges or fees as agreed between You and the Customer's Introducing Broker or as Independently established by You.

**8. Option Account.** Assignment notices for option contracts are allocated among client short positions pursuant to a manual procedure which randomly selects from all client short option positions, including positions established on the day of assignment, those contracts which are subject to exercise. All American short option positions are subject to assignment at any time. A more detailed description of Your random allocation procedure is available upon request. In accordance with the Customer Option Agreement, if applicable, the Customer must promptly notify the Introducing Broker of any change in the Customer's objectives or financial situation. Individual options commissions and other related charges have been included in the Customer's Confirmation; however, a summary of this information will be made available to the Customer upon request. The customer must promptly advise the introducing broker of any material change in the customer's investment objectives or financial situation.

**9. Miscellaneous.** Customer's financial statement is available for personal inspection or will be mailed on the Customer's request. The headings of each section of the Agreement are descriptive only and do not modify or qualify any provision of this Agreement. Except as provided in this Agreement, no provision of this Agreement may be altered, modified or amended unless in writing signed by Your authorized representative. This Agreement and all provisions shall inure to the benefit of You and Your successors, Your assigns, the Customer's Introducing Broker, and all other persons specified in Paragraph 6 above. With respect to any free credit balance included on the Account statement, such funds are not segregated and may be used in Your business, subject to the limitations of 17 CFR Section 240.15c3-3 of the Securities Exchange Act of 1934. The Customer may receive these funds in the normal course of business following demand to You. You shall not be liable for losses caused directly or indirectly by any events beyond Your reasonable control. The costs and expenses of collection of the debit balance and any unpaid deficiency in the Account of the Customer with You, including but not limited to reasonable attorneys' fees and expenses, incurred and payable or paid by You shall be payable to You by the Customer. The estimated annual income, estimated current yield, and market value calculations are estimates only, and have been obtained or prepared from sources You consider to be reliable, but You make no assurance as to their accuracy.

# TradeWallStreet
**F I N A N C I A L**

1101 Pennsylvania Ave.
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

| JM PROPERTY SP Z.O.O SP K | Account Information | | Statement Period |
|---|---|---|---|
| UL ZELAZNA 59 | Account Number: | 30013957 | May 1, 2011 to May 31, 2011 |

## Portfolio Positions

| Cash & Equivalents | Symbol/ Cusip | Account Type | Quantity | Current Price | Current Value | Percent of Acct Assets | Estimated Annual Income | Estimated Current Yield |
|---|---|---|---|---|---|---|---|---|
| Cash | | Cash | | | 0.00 | | | |
| Total: Cash & Equivalents | | | | | **0.00** | | | |
| | | | | | | | | |
| Total: Portfolio Values | | | | | **0.00** | | | |
| | | | | | | | | |
| Less: Margin Loan Balance | | Margin | | | (96.63) | | | |
| | | | | | | | | |
| Total: Account Net Assets/Equity | | | | | **(96.63)** | | | |

*Account value and totals are based only on priced securities. We may be unable to price all securities in your account. For municipal securities and some other fixed income securities, prices are approximate (not actual market bids) and are provided only as a general guide. They do not necessarily reflect actual market prices. For current prices, please contact your financial consultant.*

## Account Activity

| Cash Account | Entry/Trade Date | Account Type | Transaction | Quantity | Description | | Price | Amount |
|---|---|---|---|---|---|---|---|---|
| | | Cash | | | OPENING BALANCE | | | (95.86) |
| | 05/03/11 | Cash | Journal | | FLATTEN STRADDLE | | | 95.86 |
| Total: Cash Account Balance | | | | | | | | **0.00** |

**Margin Account**

| | Entry/Trade Date | Account Type | Transaction | Quantity | Description | | Price | Amount |
|---|---|---|---|---|---|---|---|---|
| | | Margin | | | OPENING BALANCE | | | (.17) |
| | 05/03/11 | Margin | Journal | | FLATTEN STRADDLE | | | (95.86) |
| | 05/31/11 | Margin | Debit Interest | 7.45000%04/30-05/31 | $96 | | | (.60) |
| Total: Margin Account Balance | | | | | | | | **(96.63)** |

# TradeWallStreet
### FINANCIAL

1101 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

## Statement of Account

| | Account Information | Statement Period |
|---|---|---|
| **JM PROPERTY SP Z.O.O SP K**<br>**UL ZELAZNA 59** | **Account Number:** 30013957 | **May 1, 2011 to May 31, 2011** |

Settled Trades Summary:

| | | | |
|---|---|---|---|
| TOTAL PURCHASED (USD): | 0.00 | TOTAL SHARES PURCHASED: | 0.00 |
| TOTAL SOLD (USD): | 0.00 | TOTAL SHARES SOLD: | 0.00 |

Pursuant to an agreement, a portion of each transaction fee or commission compensates brokerage firm, broker, advisor, finder, or foreign associate.

TWS FINANCIAL, LLC ANNUAL 2011-2012 MARGIN DISCLOSURE STATEMENT

We are furnishing this document to you to provide some basic facts about purchasing securities on margin, and to alert you to the risks involved with trading securities in a margin account. Before trading stocks in a margin account, you should carefully review the margin agreement provided by your broker. Consult your broker regarding any questions or concerns you may have with your margin accounts.

When you purchase securities, you may pay for the securities in full or you may borrow part of the purchase price from you brokerage firm. If you choose to borrow funds from your firm, you will open a margin account with the firm. The securities purchased are the firm's collateral for the loan to you. If the securities in your account decline in value, so does the value of the collateral supporting your loan, and as a result, the firm can take action, such as issue a margin call and/or sell securities in your account, in order to maintain the required equity in the account. It is important that you fully understand the risks involved in trading securities on margin. These risks include the following:

_    You can lose more funds than you deposit in the margin account. A decline in the value of the securities that are purchased on margin may require you to provide additional funds to the firm that has made the loan to avoid the forced sale of those securities or other securities in your account.
_    The firm can force the sale of securities in your account. If the equity in your account falls below the maintenance margin requirements under the law, or the firm's higher house requirements, the firm can sell the securities in your account to cover the margin deficiency. You will be responsible for any shortfall in the account after such a sale.
_    The firm can sell your securities without contacting you. Some investors mistakenly believe that a firm must contact them for a margin call to be valid, and that the firm cannot liquidate securities in their accounts to meet the call unless the firm has contacted them first. This is not the case. Most firms will attempt to notify their customers of margin calls, but they are not required to do so. However, even if a firm has contacted a customer and provided a specific date by which the customer can meet a margin call, the firm can still take necessary steps to protect its financial interest, including immediately selling the securities without notice to the customer.
_    You are not entitled to choose which security in your margin account is liquidated or sold to meet a margin call. Because the securities are collateral for the margin loan, the firm has the right to decide which security to sell in order to protect its interests.
_    The firm can increase its house maintenance margin requirement at any time and is not required to provide you advance written notice. These changes in firm policy often take effect immediately and may result in the issuance of a maintenance margin call. Your failure to satisfy the call may cause the member to liquidate or sell securities in your account.
_    You are not entitled to an extension of time on a margin call. While an extension of time to meet margin requirements may be available to customers under certain conditions, a customer does not have a right to the extension.

TWS FINANCIAL, LLC ANNUAL 2011-2012 DAY TRADING RISK DISCLOSURE STATEMENT RULE 2361

You should consider the following points before engaging in a day-trading strategy. For purposes of this notice, a "day-trading strategy" means an overall trading strategy characterized by the regular transmission by a customer of intra-day orders to effect both purchase and sale transactions in the same security or securities.

# Trade Wall Street
## F I N A N C I A L

1101 Pennsylvania Ave.
Suite 600
Washington, DC 20004
(202) 449-7260

## Statement of Account

| | | |
|---|---|---|
| **JM PROPERTY SP Z.O.O SP K**<br>**UL ZELAZNA 59** | **Account Information**<br><br>**Account Number:**     30013957 | **Statement Period**<br><br>**May 1, 2011 to May 31, 2011** |

*Day trading can be extremely risky. Day trading generally is not appropriate for someone of limited resources and limited investment or trading experience and low risk tolerance. You should be prepared to lose all of the funds that you use for day trading. In particular, you should not fund day-trading activities with retirement savings, student loans, second mortgages, emergency funds, funds set aside for purposes such as education or home ownership, or funds required to meet your living expenses. Further, certain evidence indicates that an investment of less than $50,000 will significantly impair the ability of a day trader to make a profit. Of course, an investment of $50,000 or more will in no way guarantee success.*

*Be cautious of claims of large profits from day trading. You should be wary of advertisements or other statements that emphasize the potential for large profits in day trading. Day trading can also lead to large and immediate financial losses.*

*Day trading requires knowledge of securities markets. Day trading requires in-depth knowledge of the securities markets and trading techniques and strategies. In attempting to profit through day trading, you must compete with professional, licensed traders employed by securities firms. You should have appropriate experience before engaging in day trading.*

*Day trading requires knowledge of a firm's operations. You should be familiar with the securities firm's business practices, including the operation of the firm's order execution systems and procedures. Under certain market conditions, you may find it difficult or impossible to liquidate a position quickly at a reasonable price. This can occur, for example, when the market for a stock suddenly drops, or if trading is halted due to recent news events or unusual trading activity. The more volatile a stock is, the greater the likelihood that problems may be encountered in executing a transaction. In addition to normal market risks, you may experience losses due to system failures.*

*Day trading will generate substantial commissions, even if the per trade cost is low. Day trading involves aggressive trading, and generally you will pay commissions on each trade. The total daily commissions that you pay on your trades will add to your losses or significantly reduce your earnings. For instance, assuming that a trade costs $16 and an average of 29 transactions are conducted per day, an investor would need to generate an annual profit of $111,360 just to cover commission expenses.*

*Day trading on margin or short selling may result in losses beyond your initial investment. When you day trade with funds borrowed from a firm or someone else, you can lose more than the funds you originally placed at risk. A decline in the value of the securities that are purchased may require you to provide additional funds to the firm to avoid the forced sale of those securities or other securities in your account. Short selling as part of your day-trading strategy also may lead to extraordinary losses, because you may have to purchase a stock at a very high price in order to cover a short position.*

*Potential Registration Requirements: Persons providing investment advice for others or managing securities accounts for others may need to register as either an "Investment Advisor" under the Investment Advisors Act of 1940 or as a "Broker" or "Dealer" under the Securities Exchange Act of 1934. Such activities may also trigger state registration requirements.*

*TWS FINANCIAL, LLC ANNUAL 2011-2012 MARKET VOLATILITY AND TRADING PLATFORMS NOTICE*

*All trades are executed through Trade Wall Street Financial, Member of the FINRA and SIPC. Our clearing firm is Penson Financial Services. For more information, go to www.penson.com.*

*System response, trade executions and account access may be affected by market conditions, system performance, quote delays and other factors. The risk of loss in electronic trading can be substantial. You should therefore consider whether such trading is suitable for you in light of your financial resources. Money Market Funds are not FDIC Insured. Read our Risk Disclosures.*

# TradeWallStreet
**F I N A N C I A L**

101 Pennsylvania Ave,
Suite 600
Washington, DC 20004
(202) 449-7260

**Statement of Account**

---

**JM PROPERTY SP Z.O.O SP K**
**UL ZELAZNA 59**

| Account Information | | Statement Period |
|---|---|---|
| Account Number: | **30013957** | **May 1, 2011 to May 31, 2011** |

*After-Hours Trading*

There is no assurance that trades will be executed after the market closes.

*Loss of Principal*

Beware of the risk of trading.  Trading stocks and other investments are subject to fluctuations in value and possibly entire loss of principal.

TWS FINANCIAL, LLC ANNUAL 2011-2012 PRIVACY NOTICE

Trade Wall Street Financial is committed to protecting confidentiality of the information furnished to us by our clients.  We are providing you this information as required by Regulation S-P adopted by the Securities and Exchange Commission.

*Information about You that We Collect*

We collect non-public personal information about you from the following sources: information we receive from you on applications or other forms or through our Web Site and information we receive from a consumer-reporting agency.

*Our Use of Information about You*

Trade Wall Street Financial does not share your non-public personal information with any unaffiliated third parties with whom we have no contractual business relationships, unless:
- You give us written permission
- It is vital to completing a transaction for your account
- It is required by law to protect us against fraud or to comply with a subpoena or other court order.
We do not sell information about you to outside unaffiliated companies.

Trade Wall Street Financial has policies that restrict access to non-public personal information about you to those employees who have need for that information to provide investment alternatives or services to you, or to employees who assist those who provide investment alternatives or services to you.  We maintain physical, electronic, and procedural safeguards to protect your non-public personal information.

TWS FINANCIAL, LLC ANNUAL 2011-2012 SIPC NOTICE

All accounts are SIPC Protected for $500,000 Securities, including $100,000 claims for Cash.  Penson Financial Services, Inc. (PFSI) has also acquired "Excess SIPC" insurance from a third party insurer to protect client accounts up to their net equity for loss of securities and cash held at Penson Financial Services, Inc. (PFSI).  This "Excess SIPC" protection is in addition to the protection provided by the Securities and Investors Protection Act, which is administered by SIPC, and is subject to certain conditions and limitations, details of which are available upon request.  The above coverage does not protect against loss of the market value of securities.

# Trade Wall Street
## FINANCIAL

L104 Pennsylvania Ave.
Suite 600
Washington, DC 20004
(202) 449-7260

**Statement of Account**

JM PROPERTY SP Z.O.O SP K
UL ZELAZNA 59

| Account Information | | Statement Period |
|---|---|---|
| **Account Number:** | 30013957 | **May 1, 2011 to May 31, 2011** |

## ACCOUNT REVIEW

*It is always the client's responsibility to review their investment accounts on a routine basis. If there are any discrepancies of any kind, including but not limited to: current equity, buying power, or positions, the client must contact Trade Wall Street Financial prior to acting on any information that does not match. Also, if you ever believe for any reason that anything is incorrect in your account, please make sure you always contact us before acting. If a client acts before contacting us to verify the validity of their account information or fails to review their account on a daily basis, any issues that arise as a result of not reviewing their information or contacting our firm in a timely manner will be solely the client's responsibility.*

*It is also the client's responsibility to review all their open orders daily, especially if you are placing GTC (good till canceled) orders. If you believe you had an order that for some reason is not showing on your software or have any other issues or problems with any orders, you will need to contact us immediately. You will be responsible for this daily review of your open orders. Any issues caused by the failure to do this review and to contact us in a timely manner to resolve any discrepancies will be solely the client's responsibility.*

## SHORT SALES

*The term 'short sale' means any sale of a security, which the seller does not own, or any sale, which is consummated by the delivery of a security, borrowed by, or for the account of the seller. For stocks hard to borrow, short sales must be preceded by a request to Trade Wall Street Financial to make sure stocks can be borrowed. We will then contact the Penson Stock Loan Department to ensure the availability of the stock. If approval is granted by the Penson Stock Loan Department, Trade Wall Street Financial will inform you that the stock can be sold short. If approval is not received, the security in question cannot be shorted. If you short a stock that has not been located, the transaction may be cancelled and you will be responsible for any losses incurred. Short sales made on stocks not located will result in a buy-in. All trades that violate these rules will be put into TWS Financial's error account. All losses will be charged back to your account. You will not receive any profit from these trades as they are illegally gained. Repeated violations of these rules can result in your account being closed. Assuming the security in question can be shorted, the short sale must take place as 'sell short'. If the trader uses a sell to place a short sale or over-sells a position, it is possible that the trade will be executed illegally. This is a violation of FINRA and SEC rules. The trader is responsible to cover any illegal position immediately with a corresponding buy. These corrections must be reported via e-mail to Trade Wall Street Financial at the end of the trading day.*

*It is your responsibility to review your confirmations and statements upon receipt or when they are made available electronically. Transactions shall be conclusive and binding upon you if no written objection is made to PFSI (within 10 days after available). In all cases PFSI reserves the right to determine the validity of any objection to the information contained in the account statement.*

*Securities Investor Protection Corporation ("SIPC") does not cover commodity contracts and options on futures. For information about SIPC or to request a SIPC brochure, please see www.sipc.org or contact SIPC at (202) 371-8300.*

*DPP and REIT securities are generally illiquid and the estimated value of these securities may not be realized upon liquidation of the security. The value of the security will differ from the purchase price. In the event valuations are provided, they will be based upon estimated values obtained from the issuer's annual report. However, in some cases accurate valuation information is not available and will not be provided.*

*FINRA Rule 2340 requires that we advise you to promptly report any inaccuracy or discrepancy in your account to your brokerage firm and clearing firm (where these are different firms) and to re-confirm any oral communications in writing.*
*http://www.finra.org/web/groups/rules_regs/documents/notice_to_members/p018130.pdf*

*When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day your payment is received, and you will not receive your check back from your financial institution. Please contact your broker if you have questions about electronic check collection or do not want your payments collected electronically.*

# TradeWallStreet
### F I N A N C I A L

1101 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

**JM PROPERTY SP Z.O.O SP K**
**UL ZELAZNA 59**

| Account Information | | Statement Period |
|---|---|---|
| Account Number: | **30013957** | **May 1, 2011 to May 31, 2011** |

*Pursuant to SEC Rule 606, Penson Financial Services, Inc. is required to make publicly available a quarterly report with regard to its routing of non-directed orders. For the purpose of this Rule, we have entered into an agreement with Quantum5 Market Surveillance (a Division of S3 Matching Technologies) to disclose all required information pertaining to this rule. This information can be accessed on the internet at: ftp://public.s3.com/11ac1-6/pfsi, or a written copy will be furnished at no cost upon request via telephone to 214-765-1009 or email to cs@penson.com.*

*SEC Rule 606(b) requires a broker-dealer to disclose to its customers, upon request, "the identity of the venue to which the customer's orders were routed for execution in the six months prior to the request, whether the orders were directed orders or non-directed orders, and the time of the transactions, if any, that resulted from such orders."*

*FINRA REQUIRES THAT WE NOTIFY YOU IN WRITING OF THE AVAILABILITY OF AN INVESTOR BROCHURE THAT INCLUDES INFORMATION DESCRIBING THE FINRA'S PUBLIC DISCLOSURE PROGRAM ('PROGRAM'). TO OBTAIN A BROCHURE OR MORE INFORMATION ABOUT THE PROGRAM OR FINRA, CONTACT THE FINRA PROGRAM HOTLINE AT (800) 289-9999 OR ACCESS THE FINRA WEB SITE AT www.finrabrokercheck.com*

**\* End of Statement \***



Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

NDV INVESTMENT COMPANY
SUITE 4 TEMPLE BUILDING MAIN & PRINCE
WILLIAM STREET
CHARLESTOWN_NEVIS

### Account Information

| | |
|---|---|
| Account Number: | 38004503 |
| Financial Advisor #: | Y321 |

### Your Financial Advisor

**TRADEWALL STREET
FINANCIAL**

### Statement Period

**Apr. 1, 2011 to Apr. 30, 2011**

### Office Serving You

**1101 Pennsylvania Avenue
Suite 600
Washington D.C.  20004
(202) 449-7260**

## Account Value Summary

| | | Local Currency | Exchange Rate | Base Currency (USD) |
|---|---|---|---|---|
| USD | Money Fund Balance | 0.00 | | 0.00 |
| USD | Margin Loan Balance | (6.94) | | (6.94) |
| USD | **TOTAL ACCOUNT VALUE** | **(6.94)** | **1.0000** | **(6.94)** |
| | | | | |
| PLN | No Value To Report | 0.00 | | 0.00 |
| PLN | **TOTAL ACCOUNT VALUE** | **0.00** | **0.3772** | **0.00** |
| | **GRAND TOTAL ( USD EQUIVALENT)** | | | **(6.94)** |

ACCOUNT VALUES ARE BASED ON PRICED SECURITIES. WE  MAY BE UNABLE TO PRICE ALL SECURITIES IN YOUR ACCOUNT.  FOR SOME OTHER FIXED INCOME SECURITIES, PRICES ARE APPROXIMATE (NOT ACTUAL MARKET BIDS) AND ARE PROVIDED ONLY AS A GENERAL GUIDE.  THEY  DO NOT NECESSARILY REFLECT ACTUAL MARKET PRICES.

# TradeWallStreet
**F I N A N C I A L**

1101 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

## Statement of Account

| Account Information | | Statement Period |
|---|---|---|
| Account Number: | 38004503 | April 1, 2011 to April 30, 2011 |
| Financial Advisor #: | Y321 | |

NDV INVESTMENT COMPANY
SUITE 4 TEMPLE BUILDING MAIN & PRINCE
WILLIAM STREET
CHARLESTOWN_NEVIS

**Your Financial Advisor**

TRADEWALL STREET FINANCIAL
(202) 449-7260

**Office Serving You**

1101 Pennsylvania Avenue
Suite 600
Washington D.C.  20004
(202) 449-7260

## Account Value

| Asset Category | Current Value 04/30/11 | Prior Value 03/31/11 | Percent of Acct Assets | Estimated Annual Income | Estimated Current Yield |
|---|---|---|---|---|---|
| Money Fund Balance | 0.00 | 0.00 | | | |
| Total: Portfolio Values | 0.00 | 0.00 | | | |
| Less:  Margin Loan Balance | (6.94) | (6.92) | | | |
| Total Account Value | (6.94) | (6.92) | | | |

## Asset Allocation

## Income Summary

| | This Period | Year to Date |
|---|---|---|
| Money Fund Dividends - Tax Exempt | 0.00 | 0.11 |
| Margin Interest | (0.02) | (6.96) |
| Total: Income | (0.02) | (6.85) |

The Account of the Customer is subject to the following terms and conditions ("Agreement") which the Customer agrees to, and accepts by use, maintenance and/or continuation of the Account notwithstanding any notice or statement of intention to You to the contrary.

**1.   Definitions.**  "Account" shall refer individually and collectively to all accounts which the Customer has previously opened, now has open or may open in the future, in which the Customer has any interest, with You or any Introducing Broker, and any and all previous, current and future transactions in such accounts. "Customer" refers to the individual(s) and/or entity(ies) in whose name the Account referenced on the face of this Account statement is carried or who may otherwise have any interest in an Account. "Introducing Broker" means any brokerage firm which introduces securities transactions on behalf of the Customer, which transactions are cleared through You, whether one or more.  "Obligations" means all indebtedness, debit balances, liabilities or other obligations of any kind of the Customer to You, whether now existing or hereafter arising.  "Securities or other Property" shall mean all money, securities, commodities or other property of every kind and nature and all contracts and options relating thereto, whether for present or future delivery.  "You" or "Your" refers to Penson Financial Services, Inc.

**2.   Payment of Indebtedness Upon Demand.**  The Customer shall at all times be liable for the payment upon demand of any Obligations owing from the Customer to You, and Customer shall be liable to You for any deficiency remaining in any Account in the event of the liquidation thereof, in whole or in part, by You, the Introducing Broker, or by the Customer, and the Customer shall pay such Obligations upon demand.

**3.   Security Interest; Liquidation.**  All Securities or other property now or hereafter held, carried or maintained by You in or for the Account shall be subject to a first and prior lien and security interest for the discharge of all of the Obligations of the Customer and are to be held by You as security for the payment of the Obligations of the Customer to You, to the fullest extent allowed by law.  You shall have the right to transfer Securities or other Property so held by You from or to any Account of the Customer whenever You so determine. Whenever the Customer does not, on or before the settlement date, pay in full for any Securities or other Property purchased for the Account of the Customer, or deliver any Securities or other Property sold for such Account, or if any other Obligations of the Customer to You are unpaid, You are authorized (a) until payment or delivery is made, to pledge, repledge, hypothecate or rehypothecate, without notice, any and all Securities or other Property which You may hold for the Customer (either individually or jointly with others), separately or in common with other Securities or other Property, for the sum then due or for a greater or lesser sum and without retaining in your possession and control for delivery a like amount of similar Securities or other Property; (b) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (c) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (d) to buy any or all Securities or other Property which may be short in such Account; and/or (a) to cancel any open orders and to close any or all outstanding contracts; all without notice of sale or purchase, or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein.  You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed.  Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account.  You are authorized, in Your discretion, should You for any reason whatsoever deem it necessary for Your protection, without notice, to cancel any outstanding order, to close out the Account of the Customer, in whole or in part, or to close out any commitment made on behalf of the Customer.

**4.   Lending Agreement; Margin or Short Accounts.**  With respect to any margin or short Account maintained by the Customer, You are authorized to lend to yourself, as principal or otherwise, or to others, any Securities or other Property held by You on margin for any Account or as collateral therefor either separately or without other securities. The Customer will at all times maintain such Securities or other Property in the Account of the Customer for margin and/or maintenance purposes as required by You in Your sole discretion, on demand, in accordance with Your general policies regarding margin and maintenance requirements, as such may be modified from time to time, or at other times as You may require, and will be charged, in accordance with Your usual custom or as otherwise determined by You with interest at rates permitted by the laws of the State of Texas.  With respect to any margin or short Account of the Customer, You shall have the right at any time and from time to time, in accordance with Your general policies regarding Your margin or maintenance requirements, short Accounts or Accounts in general, as such may be modified from time to time, or at an earlier Point in time than called for by said general policies, in the event that You feel insecure with respect to the Customer's account for any reason in Your sole discretion: (a) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (b) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (c) to buy any or all Securities or other Property which may be short in such Account, and/or (d) to cancel any open orders and to close any or all outstanding contracts; all without demand for margin or additional margin, notice of sale or purchase or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein. You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed.  Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account.

**5.   Account Carried as Clearing Broker.**  The Customer understands that You are carrying the Account of the Customer as clearing broker by arrangement with the Customer's Introducing Broker through whose courtesy the Account of the Customer has been introduced to You.  The Customer understands that You act as custodian for funds and securities deposited with You, through the Customer's Introducing Broker, or as a result of transactions You may process for the Customer's Account.  Inquiries regarding the Customer's Account or the activity therein should be directed to the Introducing Broker.  If Customer is unable to reach the Introducing Broker concerning account activity, or a complaint, Customer may contact Penson at 1700 Pacific Avenue, Suite 1400, Dallas, TX  75201, (214) 765-1100, and speak with the Compliance Department.  The Customer understands that the Introducing Broker and not You, is responsible for compliance with all applicable laws and regulations in connection with the Customer's Account.  Until receipt by You from the Customer of written notice to the contrary, you may accept and rely upon from such Introducing broker and its representatives employees and other agents, without any inquiry or investigation by You: (a) orders for the purchase or sale in the Customer's Account of Securities or other Property, and (b) any other instructions concerning the Customer's Account. The

**1.   (continued)**  Customer understands that You act only to clear trades introduced by the Customer's Introducing Broker and to effect other back office functions for the Customer's Introducing Broker. The Customer confirms to You that the Customer is relying for any advice concerning the Customer's Account solely on the Customer's Introducing Broker. The Customer understands that You are not a principal of or partner with and do not control in any way, the Introducing Broker or its representatives, employees or other agents.  The Customer understands that You will not review the Customer's account and will have no responsibility for trades made in the Customer's Account. The Customer agrees that You shall not be responsible or liable for any acts or omissions of the Introducing Broker or its representatives, employees or other agents.

**THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN CONJUNCTION WITH THESE DISCLOSURES:**

a.   ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORM IN WHICH A CLAIM IS FILED;

b.   ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING; A PARTY'S ABILITY TO HAVE A COURT REVERSE OR MODIFY AN ARBITRATION AWARD IS VERY LIMITED.

c.   THE ABILITY OF THE PARTIES TO OBTAIN DOCUMENTS, WITNESS STATEMENTS AND OTHER DISCOVERY IS GENERALLY MORE LIMITED IN ARBITRATION THAN IN COURT PROCEEDINGS;

d.   THE ARBITRATORS DO NOT HAVE TO EXPLAIN THE REASON(S) FOR THEIR AWARD.

e.   THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

f.   THE RULES OF SOME ARBITRATION FORUMS MAY IMPOSE TIME LIMITS FOR BRINGING A CLAIM IN ARBITRATION. IN SOME CASES, A CLAIM THAT IS INELIGIBLE FOR ARBITRATION MAY BE BROUGHT IN COURT.

g.   THE RULES OF THE ARBITRATION FORUM IN WHICH THE CLAIM IS FILED, AND ANY AMENDMENTS THERETO, SHALL BE INCORPORATED INTO THIS AGREEMENT.

**6.   ARBITRATION AGREEMENT.**  ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE UNDERSIGNED AND YOU, OR THE INTRODUCING BROKER, OR THE AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS OF YOU OR THE INTRODUCING BROKER, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S BUSINESS OR THE UNDERSIGNED'S ACCOUNTS, SHALL BE CONDUCTED PURSUANT TO THE CODE OF ARBITRATION PROCEDURE OF THE FINRA.  ARBITRATION MUST BE COMMENCED BY SERVICE OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE. THE DECISION AND AWARD OF THE ARBITRATOR (S) SHALL BE CONCLUSIVE AND BINDING UPON ALL PARTIES, AND ANY JUDGMENT UPON ANY AWARD RENDERED MAY BE ENTERED IN A COURT HAVING JURISDICTION THEREOF, AND NEITHER PARTY SHALL OPPOSE SUCH ENTRY.

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is de-certified; or (iii) the customer is excluded from the class by the court.  Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

**7.   Other Agreements; Option Transactions; Charges.**  The Customer agrees to be bound by the terms of Your Customer Account Agreement.  If the Customer trades on margin or has short positions, the Customer agrees to be bound by the terms of Your Customer Margin and Short Account Agreement.  If the Customer trades any options, the customer agrees to be bound by the terms of your Customer Option Agreement. If this is a joint Account, the Customers agree to be bound by Your Joint Account Agreement. The Customer understands that copies of these agreements are available from You and, to the extent applicable, are incorporated by reference herein.  The terms of these other agreements are in addition to the provisions of this Agreement and any other written agreements between You and the Customer.  You may change the Customer Account maintenance fees, security transfer fees and account transfer fees, and other charges or fees as agreed between You and the Customer's Introducing Broker or as Independently established by You.

**8.   Option Account.**  Assignment notices for option contracts are allocated among client short positions pursuant to a manual procedure which randomly selects from all client short option positions, including positions established on the day of assignment, those contracts which are subject to exercise.  All American short option positions are subject to assignment at any time.  A more detailed description of Your random allocation procedure is available upon request.  In accordance with the Customer Option Agreement, if applicable, the Customer must promptly notify the Introducing Broker of any change in the Customer's objectives or financial situation.  Individual options commissions and other related charges have been included in the Customer's Confirmation; however, a summary of this information will be made available to the Customer upon request.  The customer must promptly advise the introducing broker of any material change in the customer's investment objectives or financial situation.

**9.   Miscellaneous.**  Customer's financial statement is available for personal inspection or will be mailed to the Customer's request.  The headings of each section of the Agreement are descriptive only and do not modify or qualify any provision of this Agreement.  Except as provided in this Agreement, no provision of this Agreement may be altered, modified or amended unless in writing signed by Your authorized representative.  This Agreement and all provisions shall inure to the benefit of You and Your successors, Your assigns, the Customer's Introducing Broker, and all other persons specified in Paragraph 6 above.  Within seventy-two (72) hours after any free credit balance included on the Account statement, such funds are not segregated and may be used in Your business, subject to the limitations of 17 CFR Section 240.15c3-3 of the Securities Exchange Act of 1934.  The Customer may receive these funds in the normal course of business following demand to You. You shall not be liable for losses caused directly or indirectly by any events beyond Your reasonable control.  The costs and expenses of collection of the debit balance and any unpaid deficiency in the Account of the Customer with You, including but not limited to reasonable attorneys' fees and expenses, incurred and payable or paid by You shall be payable to You by the Customer. The estimated annual income, estimated current yield, and market value calculations are estimates only, and have been obtained or prepared from sources You consider to be reliable, but You make no assurance as to their accuracy.

# TradeWallStreet
## F I N A N C I A L

104 Pennsylvania Ave.
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

| | |
|---|---|
| **NDV INVESTMENT COMPANY** | |
| SUITE 4 TEMPLE BUILDING MAIN & PRINCE | |
| WILLIAM STREET | |
| CHARLESTOWN_NEVIS | |

**Account Information**

Account Number: **38004503**

**Statement Period**

**April 1, 2011 to April 30, 2011**

## Portfolio Positions

| | Symbol/ Cusip | Account Type | Quantity | Current Price | Current Value | Percent of Acct Assets | Estimated Annual Income | Estimated Current Yield |
|---|---|---|---|---|---|---|---|---|
| **Total: Portfolio Values** | | | | | **0.00** | | | |
| | | | | | | | | |
| Less: Margin Loan Balance | | Margin | | | (6.94) | | | |
| **Total: Account Net Assets/Equity** | | | | | **(6.94)** | | | |

*Account value and totals are based only on priced securities. We may be unable to price all securities in your account. For municipal securities and some other fixed income securities, prices are approximate (not actual market bids) and are provided only as a general guide. They do not necessarily reflect actual market prices. For current prices, please contact your financial consultant.*

## Account Activity

| Margin Account | Entry/Trade Date | Account Type | Transaction | Quantity | Description | | Price | Amount |
|---|---|---|---|---|---|---|---|---|
| | | Margin | | | OPENING BALANCE | | | (6.92) |
| | 04/29/11 | Margin | Debit Interest | | 7.45000%04/01-04/29 | $6 | | (.02) |
| **Total: Margin Account Balance** | | | | | | | | **(6.94)** |

ACCOUNTS CARRIED BY PENSON FINANCIAL SERVICES, INC.   ● MEMBER FINRA, NYSE AND SIPC

# TradeWallStreet
**F I N A N C I A L**

1101 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

| | Account Information | Statement Period |
|---|---|---|
| **NDV INVESTMENT COMPANY**<br>**SUITE 4 TEMPLE BUILDING MAIN & PRINCE**<br>**WILLIAM STREET**<br>**CHARLESTOWN_NEVIS** | **Account Number:** 38004503 | **April 1, 2011 to April 30, 2011** |

*Settled Trades Summary:*

| | | | |
|---|---|---|---|
| *TOTAL PURCHASED (USD):* | 0.00 | *TOTAL SHARES PURCHASED:* | 0.00 |
| *TOTAL SOLD (USD):* | 0.00 | *TOTAL SHARES SOLD:* | 0.00 |

*Pursuant to an agreement, a portion of each transaction fee or commission compensates brokerage firm, broker, advisor, finder, or foreign associate.*

*TWS FINANCIAL, LLC ANNUAL 2011-2012 MARGIN DISCLOSURE STATEMENT*

*We are furnishing this document to you to provide some basic facts about purchasing securities on margin, and to alert you to the risks involved with trading securities in a margin account. Before trading stocks in a margin account, you should carefully review the margin agreement provided by your broker. Consult your broker regarding any questions or concerns you may have with your margin accounts.*

*When you purchase securities, you may pay for the securities in full or you may borrow part of the purchase price from you brokerage firm. If you choose to borrow funds from your firm, you will open a margin account with the firm. The securities purchased are the firm's collateral for the loan to you. If the securities in your account decline in value, so does the value of the collateral supporting your loan, and as a result, the firm can take action, such as issue a margin call and/or sell securities in your account, in order to maintain the required equity in the account. It is important that you fully understand the risks involved in trading securities on margin. These risks include the following:*

_    *You can lose more funds than you deposit in the margin account. A decline in the value of the securities that are purchased on margin may require you to provide additional funds to the firm that has made the loan to avoid the forced sale of those securities or other securities in your account.*
_    *The firm can force the sale of securities in your account. If the equity in your account falls below the maintenance margin requirements under the law, or the firm's higher house requirements, the firm can sell the securities in your account to cover the margin deficiency. You will be responsible for any shortfall in the account after such a sale.*
_    *The firm can sell your securities without contacting you. Some investors mistakenly believe that a firm must contact them for a margin call to be valid, and that the firm cannot liquidate securities in their accounts to meet the call unless the firm has contacted them first. This is not the case. Most firms will attempt to notify their customers of margin calls, but they are not required to do so. However, even if a firm has contacted a customer and provided a specific date by which the customer can meet a margin call, the firm can still take necessary steps to protect its financial interest, including immediately selling the securities without notice to the customer.*
_    *You are not entitled to choose which security in your margin account is liquidated or sold to meet a margin call. Because the securities are collateral for the margin loan, the firm has the right to decide which security to sell in order to protect its interests.*
_    *The firm can increase its house maintenance margin requirement at any time and is not required to provide you advance written notice. These changes in firm policy often take effect immediately and may result in the issuance of a maintenance margin call. Your failure to satisfy the call may cause the member to liquidate or sell securities in your account.*
_    *You are not entitled to an extension of time on a margin call. While an extension of time to meet margin requirements may be available to customers under certain conditions, a customer does not have a right to the extension.*

*TWS FINANCIAL, LLC ANNUAL 2011-2012 DAY TRADING RISK DISCLOSURE STATEMENT RULE 2361*

*You should consider the following points before engaging in a day-trading strategy. For purposes of this notice, a "day-trading strategy" means an overall trading strategy characterized by the regular transmission by a customer of intra-day orders to effect both purchase and sale transactions in the same security or securities.*

## Trade Wall Street FINANCIAL

104 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

NDV INVESTMENT COMPANY
SUITE 4 TEMPLE BUILDING MAIN & PRINCE
WILLIAM STREET
CHARLESTOWN_NEVIS

**Account Information**

Account Number:   38004503

**Statement Period**

April 1, 2011 to April 30, 2011

*Day trading can be extremely risky. Day trading generally is not appropriate for someone of limited resources and limited investment or trading experience and low risk tolerance. You should be prepared to lose all of the funds that you use for day trading. In particular, you should not fund day-trading activities with retirement savings, student loans, second mortgages, emergency funds, funds set aside for purposes such as education or home ownership, or funds required to meet your living expenses. Further, certain evidence indicates that an investment of less than $50,000 will significantly impair the ability of a day trader to make a profit. Of course, an investment of $50,000 or more will in no way guarantee success.*

*Be cautious of claims of large profits from day trading. You should be wary of advertisements or other statements that emphasize the potential for large profits in day trading. Day trading can also lead to large and immediate financial losses.*

*Day trading requires knowledge of securities markets. Day trading requires in-depth knowledge of the securities markets and trading techniques and strategies. In attempting to profit through day trading, you must compete with professional, licensed traders employed by securities firms. You should have appropriate experience before engaging in day trading.*

*Day trading requires knowledge of a firm's operations. You should be familiar with the securities firm's business practices, including the operation of the firm's order execution systems and procedures. Under certain market conditions, you may find it difficult or impossible to liquidate a position quickly at a reasonable price. This can occur, for example, when the market for a stock suddenly drops, or if trading is halted due to recent news events or unusual trading activity. The more volatile a stock is, the greater the likelihood that problems may be encountered in executing a transaction. In addition to normal market risks, you may experience losses due to system failures.*

*Day trading will generate substantial commissions, even if the per trade cost is low. Day trading involves aggressive trading, and generally you will pay commissions on each trade. The total daily commissions that you pay on your trades will add to your losses or significantly reduce your earnings. For instance, assuming that a trade costs $16 and an average of 29 transactions are conducted per day, an investor would need to generate an annual profit of $111,360 just to cover commission expenses.*

*Day trading on margin or short selling may result in losses beyond your initial investment. When you day trade with funds borrowed from a firm or someone else, you can lose more than the funds you originally placed at risk. A decline in the value of the securities that are purchased may require you to provide additional funds to the firm to avoid the forced sale of those securities or other securities in your account. Short selling as part of your day-trading strategy also may lead to extraordinary losses, because you may have to purchase a stock at a very high price in order to cover a short position.*

*Potential Registration Requirements: Persons providing investment advice for others or managing securities accounts for others may need to register as either an "Investment Advisor" under the Investment Advisors Act of 1940 or as a "Broker" or "Dealer" under the Securities Exchange Act of 1934. Such activities may also trigger state registration requirements.*

*TWS FINANCIAL, LLC ANNUAL 2011-2012 MARKET VOLATILITY AND TRADING PLATFORMS NOTICE*

*All trades are executed through Trade Wall Street Financial, Member of the FINRA and SIPC. Our clearing firm is Penson Financial Services. For more information, go to www.penson.com.*

*System response, trade executions and account access may be affected by market conditions, system performance, quote delays and other factors. The risk of loss in electronic trading can be substantial. You should therefore consider whether such trading is suitable for you in light of your financial resources. Money Market Funds are not FDIC Insured. Read our Risk Disclosures.*

# Trade Wall Street
**F I N A N C I A L**

104 Pennsylvania Ave.
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

**NDV INVESTMENT COMPANY**
**SUITE 4 TEMPLE BUILDING MAIN & PRINCE**
**WILLIAM STREET**
**CHARLESTOWN_NEVIS**

**Account Information**

Account Number:        **38004503**

**Statement Period**

**April 1, 2011 to April 30, 2011**

*After-Hours Trading*

*There is no assurance that trades will be executed after the market closes.*

*Loss of Principal*

*Beware of the risk of trading.  Trading stocks and other investments are subject to fluctuations in value and possibly entire loss of principal.*

*TWS FINANCIAL, LLC ANNUAL 2011-2012 PRIVACY NOTICE*

*Trade Wall Street Financial is committed to protecting confidentiality of the information furnished to us by our clients.  We are providing you this information as required by Regulation S-P adopted by the Securities and Exchange Commission.*

*Information about You that We Collect*

*We collect non-public personal information about you from the following sources: information we receive from you on applications or other forms or through our Web Site and information we receive from a consumer-reporting agency.*

*Our Use of Information about You*

*Trade Wall Street Financial does not share your non-public personal information with any unaffiliated third parties with whom we have no contractual business relationships, unless:*
*- You give us written permission*
*- It is vital to completing a transaction for your account*
*- It is required by law to protect us against fraud or to comply with a subpoena or other court order.*
*We do not sell information about you to outside unaffiliated companies.*

*Trade Wall Street Financial has policies that restrict access to non-public personal information about you to those employees who have need for that information to provide investment alternatives or services to you, or to employees who assist those who provide investment alternatives or services to you.  We maintain physical, electronic, and procedural safeguards to protect your non-public personal information.*

*TWS FINANCIAL, LLC ANNUAL 2011-2012 SIPC NOTICE*

*All accounts are SIPC Protected for $500,000 Securities, including $100,000 claims for Cash.  Penson Financial Services, Inc. (PFSI) has also acquired "Excess SIPC" insurance from a third party insurer to protect client accounts up to their net equity for loss of securities and cash held at Penson Financial Services, Inc. (PFSI).  This "Excess SIPC" protection is in addition to the protection provided by the Securities and Investors Protection Act, which is administered by SIPC, and is subject to certain conditions and limitations, details of which are available upon request.  The above coverage does not protect against loss of the market value of securities.*

Trade Wall Street
F I N A N C I A L

1104 Pennsylvania Ave.
Suite 600
Washington, DC 20004
(202) 449-7260

11-20050-rdd    Doc 38-8    Filed 04/05/13    Entered 04/05/13 17:07:55    Exhibit    Pg
49 of 104

**Statement of Account**

NDV INVESTMENT COMPANY
SUITE 4 TEMPLE BUILDING MAIN & PRINCE
WILLIAM STREET
CHARLESTOWN_NEVIS

**Account Information**

Account Number:    38004503

**Statement Period**

**April 1, 2011 to April 30, 2011**

*ACCOUNT REVIEW*

*It is always the client's responsibility to review their investment accounts on a routine basis. If there are any discrepancies of any kind, including but not limited to: current equity, buying power, or positions, the client must contact Trade Wall Street Financial prior to acting on any information that does not match. Also, if you ever believe for any reason that anything is incorrect in your account, please make sure you always contact us before acting. If a client acts before contacting us to verify the validity of their account information or fails to review their account on a daily basis, any issues that arise as a result of not reviewing their information or contacting our firm in a timely manner will be solely the client's responsibility.*

*It is also the client's responsibility to review all their open orders daily, especially if you are placing GTC (good till canceled) orders. If you believe you had an order that for some reason is not showing on your software or have any other issues or problems with any orders, you will need to contact us immediately. You will be responsible for this daily review of your open orders. Any issues caused by the failure to do this review and to contact us in a timely manner to resolve any discrepancies will be solely the client's responsibility.*

*SHORT SALES*

*The term 'short sale' means any sale of a security, which the seller does not own, or any sale, which is consummated by the delivery of a security, borrowed by, or for the account of the seller. For stocks hard to borrow, short sales must be preceded by a request to Trade Wall Street Financial to make sure stocks can be borrowed. We will then contact the Penson Stock Loan Department to ensure the availability of the stock. If approval is granted by the Penson Stock Loan Department, Trade Wall Street Financial will inform you that the stock can be sold short. If approval is not received, the security in question cannot be shorted. If you short a stock that has not been located, the transaction may be cancelled and you will be responsible for any losses incurred. Short sales made on stocks not located will result in a buy-in. All trades that violate these rules will be put into TWS Financial's error account. All losses will be charged back to your account. You will not receive any profit from these trades as they are illegally gained. Repeated violations of these rules can result in your account being closed. Assuming the security in question can be shorted, the short sale must take place as 'sell short'. If the trader uses a sell to place a short sale or over-sells a position, it is possible that the trade will be executed illegally. This is a violation of FINRA and SEC rules. The trader is responsible to cover any illegal position immediately with a corresponding buy. These corrections must be reported via e-mail to Trade Wall Street Financial at the end of the trading day.*

*It is your responsibility to review your confirmations and statements upon receipt or when they are made available electronically. Transactions shall be conclusive and binding upon you if no written objection is made to PFSI (within 10 days after available). In all cases PFSI reserves the right to determine the validity of any objection to the information contained in an account statement.*

*Securities Investor Protection Corporation ("SIPC") does not cover commodity contracts and options on futures. For information about SIPC or to request a SIPC brochure, please see www.sipc.org or contact SIPC at (202) 371-8300.*

*DPP and REIT securities are generally illiquid and the estimated value of these securities may not be realized upon liquidation of the security. The value of the security will differ from the purchase price. In the event valuations are provided, they will be based upon estimated values obtained from the issuer's annual report. However, in some cases accurate valuation information is not available and will not be provided.*

*FINRA Rule 2340 requires that we advise you to promptly report any inaccuracy or discrepancy in your account to your brokerage firm and clearing firm (where these are different firms) and to re-confirm any oral communications in writing. http://www.finra.org/web/groups/rules_regs/documents/notice_to_members/p018130.pdf*

*When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day your payment is received, and you will not receive your check back from your financial institution. Please contact your broker if you have questions about electronic check collection or do not want your payments collected electronically.*

# Trade Wall Street
**F I N A N C I A L**

1101 Pennsylvania Ave.
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

| | | |
|---|---|---|
| NDV INVESTMENT COMPANY | **Account Information** | **Statement Period** |
| SUITE 4 TEMPLE BUILDING MAIN & PRINCE | **Account Number:** 38004503 | **April 1, 2011 to April 30, 2011** |
| WILLIAM STREET | | |
| CHARLESTOWN_NEVIS | | |

*Pursuant to SEC Rule 606, Penson Financial Services, Inc. is required to make publicly available a quarterly report with regard to its routing of non-directed orders. For the purpose of this Rule, we have entered into an agreement with Quantum5 Market Surveillance (a Division of S3 Matching Technologies) to disclose all required information pertaining to this rule. This information can be accessed on the internet at: ftp://public.s3.com/11ac1-6/pfsi, or a written copy will be furnished at no cost upon request via telephone to 214-765-1009 or email to cs@penson.com.*

*SEC Rule 606(b) requires a broker-dealer to disclose to its customers, upon request, "the identity of the venue to which the customer's orders were routed for execution in the six months prior to the request, whether the orders were directed orders or non-directed orders, and the time of the transactions, if any, that resulted from such orders."*

*FINRA REQUIRES THAT WE NOTIFY YOU IN WRITING OF THE AVAILABILITY OF AN INVESTOR BROCHURE THAT INCLUDES INFORMATION DESCRIBING THE FINRA'S PUBLIC DISCLOSURE PROGRAM ('PROGRAM'). TO OBTAIN A BROCHURE OR MORE INFORMATION ABOUT THE PROGRAM OR FINRA, CONTACT THE FINRA PROGRAM HOTLINE AT (800) 289-9999 OR ACCESS THE FINRA WEB SITE AT www.finrabrokercheck.com*

**\* End of Statement \***

# TradeWallStreet
**F I N A N C I A L**

1101 Pennsylvania Ave.
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

---

**NDV INVESTMENT COMPANY**
SUITE 4 TEMPLE BLDG MAIN &
PRINCE WILLIAM STREET
CHARLESTON
ST KITTS & NEV

### Account Information

| | |
|---|---|
| New Account Number: | 3RF05327 |
| Old Account Number: | 38004503 |
| Financial Advisor #: | Y321 |

**Your Financial Advisor**

TRADEWALL STREET FINANCIAL
(202) 449-7260

### Statement Period

December 1, 2011 to December 31, 2011

### Office Serving You

1101 Pennsylvania Avenue
Suite 600
Washington D.C.  20004
(202) 449-7260

---

## Account Value

| Asset Category | Current Value 12/31/11 | Prior Value 06/30/11 | Percent of Acct Assets | Estimated Annual Income | Estimated Current Yield |
|---|---|---|---|---|---|
| Money Fund Balance | 0.00 | 0.00 | | | |
| Total: Portfolio Values | 0.00 | 0.00 | | | |
| | | | | | |
| Total Account Value | 0.00 | 0.00 | | | |

## Asset Allocation

## Income Summary

| | This Period | Year to Date |
|---|---|---|
| Money Fund Dividends - Tax Exempt | 0.00 | 0.11 |
| Margin Interest | 0.00 | (6.99) |
| Total: Income | 0.00 | (6.88) |

---

The Account of the Customer is subject to the following terms and conditions ("Agreement") which the Customer agrees to and accepts by use, maintenance and/or continuation of the Account notwithstanding any notice or statement of intention to You to the contrary.

**1. Definitions.** "Account" shall refer individually and collectively to all accounts which the Customer has previously opened, now has open or may open in the future, in which the Customer has any interest, with You or any Introducing Broker, and any and all previous, current and future transactions in such accounts. "Customer" refers to the individual(s) and/or entity(ies) in whose name the Account referenced on the face of this Account statement is carried or who may otherwise have any interest in an Account. "Introducing Broker" means any brokerage firm which introduces securities transactions on behalf of the Customer, which transactions are cleared through You, whether one or more. "Obligations" means all indebtedness, debit balances, liabilities or other obligations of any kind of the Customer to You, whether now existing or hereafter arising. "Securities or other Property" shall mean all money, securities, commodities or other property of every kind and nature and all contracts and options relating thereto, whether for present or future delivery. "You" or "Your" refers to Penson Financial Services, Inc.

**2. Payment of Indebtedness Upon Demand.** The Customer shall at all times be liable for the payment upon demand of any Obligations owing from the Customer to You, and Customer shall be liable to You for any deficiency remaining in any Account in the event of the liquidation thereof, in whole or in part, by You, the Introducing Broker, or by the Customer, and the Customer shall pay such Obligations upon demand.

**3. Security Interest; Liquidation.** All Securities or other property now or hereafter held, carried or maintained by You in or for the Account shall be subject to a first and prior lien and security interest for the discharge of all of the Obligations of the Customer and are to be held by You as security for the payment of the Obligations of the Customer to You, to the fullest extent allowed by law. You shall have the right to transfer Securities or other Property so held by You from or to any Account of the Customer whenever You so determine. Whenever the Customer does not, on or before the settlement date, pay in full for any Securities or other Property purchased for the Account of the Customer, or deliver any Securities or other Property sold for such Account, or if any other Obligations of the Customer to You are unpaid, You are authorized (a) until payment or delivery is made, to pledge, repledge, hypothecate or rehypothecate, without notice, any and all Securities or other Property which You may hold for the Customer (either individually or jointly with others), separately or in common with other Securities or other Property, for the sum then due or for a greater or lesser sum and without retaining in your possession and control for delivery a like amount of similar Securities or other Property; (b) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (c) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (d) to buy any or all Securities or other Property which may be short in such Account; and/or (a) to cancel any open orders and to close any or all outstanding contracts; all without notice of sale or purchase, or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein. You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed. Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account. You are authorized, in Your discretion, should You for any reason whatsoever deem it necessary for Your protection, without notice, to cancel any outstanding order, to close out the Account of the Customer, in whole or in part, or to close out any commitment made on behalf of the Customer.

**4. Lending Agreement; Margin or Short Accounts.** With respect to any margin or short Account maintained by the Customer, You are authorized to lend to yourself, as principal or otherwise, or to others, any Securities or other Property held by You on margin for any Account or as collateral therefor either separately or without other securities. The Customer will at all times maintain such Securities or other Property in the Account of the Customer for margin and/or maintenance purposes as required by You in Your sole discretion, on demand, in accordance with Your general policies regarding margin and maintenance requirements, as such may be modified from time to time, or at other times as You may require, and will be charged, in accordance with Your usual custom or as otherwise determined by You with interest at rates permitted by the laws of the State of Texas. With respect to any margin or short Account of the Customer, You shall have the right at any time and from time to time, in accordance with Your general policies regarding Your margin or maintenance requirements, short Accounts or Accounts in general, as such may be modified from time to time, or at an earlier Point in time than called for by said general policies, in the event that You feel insecure with respect to the Customer's account for any reason in Your sole discretion: (a) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (b) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (c) to buy any or all Securities or other Property which may be short in such Account; and/or (d) to cancel any open orders and to close any or all outstanding contracts; all without demand for margin or additional margin, notice of sale or purchase or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein. You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed. Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account.

**5. Account Carried as Clearing Broker.** The Customer understands that You are carrying the Account of the Customer as clearing broker by arrangement with the Customer's Introducing Broker through whose courtesy the Account of the Customer has been introduced to You. The Customer understands that You act as custodian for funds and securities deposited with You, through the Customer's Introducing Broker, or as a result of transactions You may process for the Customer's Account. Inquiries regarding the Customer's Account or the activity therein should be directed to the Introducing Broker. If Customer is unable to reach the Introducing Broker concerning account activity, or a complaint, Customer may contact Penson at 1700 Pacific Avenue, Suite 1400, Dallas, TX 75201, (214) 765-1100, and speak with the Compliance Department. The Customer understands that the Introducing Broker and not You, is responsible for compliance with all applicable laws and regulations in connection with the Customer's Account. Until receipt by You from the Customer of written notice to the contrary, you may accept and rely upon from such Introducing broker and its representatives employees and other agents, without any inquiry or investigation by You; (a) orders for the purchase or sale in the Customer's Account of Securities or other Property, and (b) any other instructions concerning the Customer's Account. The

**(continued)**

Customer understands that You act only to clear trades introduced by the Customer's Introducing Broker and to effect other back office functions for the Customer's Introducing Broker. The Customer confirms to You that the Customer is relying for any advice concerning the Customer's Account solely on the Customer's Introducing Broker. The Customer understands that You are not a principal of or partner with and do not control in any way, the Introducing Broker or its representatives, employees or other agents. The Customer understands that You will not review the Customer's account and will have no responsibility for trades made in the Customer's Account. The Customer agrees that You shall not be responsible or liable for any acts or omissions of the Introducing Broker or its representatives, employees or other agents.

**THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN CONJUNCTION WITH THESE DISCLOSURES:**

a. ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORM IN WHICH A CLAIM IS FILED;

b. ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING; A PARTY'S ABILITY TO HAVE A COURT REVERSE OR MODIFY AN ARBITRATION AWARD IS VERY LIMITED.

c. THE ABILITY OF THE PARTIES TO OBTAIN DOCUMENTS, WITNESS STATEMENTS AND OTHER DISCOVERY IS GENERALLY MORE LIMITED IN ARBITRATION THAN IN COURT PROCEEDINGS;

d. THE ARBITRATORS DO NOT HAVE TO EXPLAIN THE REASON(S) FOR THEIR AWARD.

e. THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

f. THE RULES OF SOME ARBITRATION FORUMS MAY IMPOSE TIME LIMITS FOR BRINGING A CLAIM IN ARBITRATION. IN SOME CASES, A CLAIM THAT IS INELIGIBLE FOR ARBITRATION MAY BE BROUGHT IN COURT.

g. THE RULES OF THE ARBITRATION FORUM IN WHICH THE CLAIM IS FILED, AND ANY AMENDMENTS THERETO, SHALL BE INCORPORATED INTO THIS AGREEMENT.

**6. ARBITRATION AGREEMENT.** ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE UNDERSIGNED AND YOU, OR THE INTRODUCING BROKER, OR THE AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS OF YOU OR THE INTRODUCING BROKER, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S BUSINESS OR THE UNDERSIGNED'S ACCOUNTS, SHALL BE CONDUCTED PURSUANT TO THE CODE OF ARBITRATION PROCEDURE OF THE FINRA. ARBITRATION MUST BE COMMENCED BY SERVICE OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE. THE DECISION AND AWARD OF THE ARBITRATOR (S) SHALL BE CONCLUSIVE AND BINDING UPON ALL PARTIES, AND ANY JUDGMENT UPON ANY AWARD RENDERED MAY BE ENTERED IN A COURT HAVING JURISDICTION THEREOF, AND NEITHER PARTY SHALL OPPOSE SUCH ENTRY.

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is de-certified; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

**7. Other Agreements; Option Transactions, Charges.** The Customer agrees to be bound by the terms of Your Customer Account Agreement. If the Customer trades on margin or has short positions, the Customer agrees to be bound by the terms of Your Customer Margin and Short Account Agreement. If the Customer trades any options, the customer agrees to be bound by the terms of your Customer Option Agreement. If this is a joint Account, the Customers agree to be bound by Your Joint Account Agreement. The Customer understands that copies of these agreements are available from You and, to the extent applicable, are incorporated by reference herein. The terms of these other agreements are in addition to the provisions of this Agreement and any other written agreements between You and the Customer. You may charge the Customer Account maintenance fees, security transfer fees and account transfer fees, and other charges or fees as agreed between You and the Customer's Introducing Broker or as Independently established by You.

**8. Option Account.** Assignment notices for option contracts are allocated among client short positions pursuant to a manual procedure which randomly selects from all client short option positions, including positions established on the day of assignment, those contracts which are subject to exercise. All American short option positions are subject to assignment at any time. A more detailed description of Your random allocation procedure is available upon request. In accordance with the Customer Option Agreement, if applicable, the Customer must promptly notify the Introducing Broker of any change in the Customer's objectives or financial situation. Individual options commissions and other related charges have been included in the Customer's Confirmation; however, a summary of this information will be made available to the Customer upon request. The customer must promptly advise the introducing broker of any material change in the customer's investment objectives or financial situation.

**9. Miscellaneous.** Customer's financial statement is available for personal inspection or will be mailed to the Customer's request. The headings of each section of the Agreement are descriptive only and do not modify or qualify any provision of this Agreement. Except as provided in this Agreement, no provision of this Agreement may be altered, modified or amended unless in writing signed by Your authorized representative. This Agreement and all provisions shall inure to the benefit of You and Your successors, Your assigns, the Customer's Introducing Broker, and all other persons specified in Paragraph 6 above. Without limiting any other provisions of this Agreement, the terms of these other agreements are not segregated and may be used in Your business, subject to the limitations of 17 CFR Section 240.15c3-3 of the Securities Exchange Act of 1934. The Customer may receive these funds in the normal course of business following demand to You. You shall not be liable for losses caused directly or indirectly by any events beyond Your reasonable control. The costs and expenses of collection of the debit balance and any unpaid deficiency in the Account of the Customer with You, including but not limited to reasonable attorneys' fees and expenses, incurred and payable or paid by You shall be payable to You by the Customer. The estimated annual income, estimated current yield, and market value calculations are estimates only, and have been obtained or prepared from sources You consider to be reliable, but You make no assurance as to their accuracy.

# TradeWallStreet
## F I N A N C I A L

104 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

**Statement of Account**

---

**NDV INVESTMENT COMPANY**
**SUITE 4 TEMPLE BLDG MAIN &**
**PRINCE WILLIAM STREET**
**CHARLESTON**

| Account Information | |
|---|---|
| Account Number: | 38004503 |

| Statement Period |
|---|
| December 1, 2011 to December 31, 2011 |

*Settled Trades Summary:*

| | | | |
|---|---|---|---|
| *TOTAL PURCHASED (USD):* | 0.00 | *TOTAL SHARES PURCHASED:* | 0.00 |
| *TOTAL SOLD (USD):* | 0.00 | *TOTAL SHARES SOLD:* | 0.00 |

*Please be advised that effective January 1, 2012, the VISA International Transaction Fee will be changing from 1% of the purchase amount to 3% for those accounts invested in Reich & Tang Money Market Funds.*

*Dear Customer,*

*Your Broker's clearing firm, Penson Financial Services, Inc. ("Penson"), has enhanced its service platform by moving from Sungard to Broadridge Financial Solutions, Inc.'s system, referred to as Brokerage Processing Services ("BPS"). This conversion to BPS commenced after the close of business on December 9, 2011 and is now complete.*

*As a result of the conversion, you will receive two statements for the month of December:*

*\*  One statement is issued under your pre-conversion account number, detailing account activities between December 1, 2011 and December 9, 2011. This statement also displays conversion related activities that moved your assets from your old account number to our new account number. THE ENDING EQUITY ON THIS STATEMENT WILL BE $0.00.*
*\*  A second statement is issued under your post-conversion account number, detailing account activities between December 9, 2011 and December 31, 2011. This statement displays conversion related activities that moved your assets from your old account number to your new account number. The ending equity on this statement will be your actual account equity, as of December 31, 2011.*

*Please contact your broker if you have any questions regarding your account statements or the conversion.*

*To our valued customers:*
*In accordance with the Emergency Economic Stabilization Act of 2008, broker dealers are required to track and report cost basis to the IRS in three phases over the next three years.*
*2011: Equity Securities,*
*2012: Mutual funds and dividend reinvestment plan shares,*
*2013: Debt securities, options and all other financial instruments.*
*Beginning this upcoming tax reporting season the cost basis of any covered equity security transaction (purchased after 12/31/10) that is required to be reported on a 1099-B will include its associated cost basis. If you have any questions about this important change to the IRS mandated reporting requirements, please contact your broker.*

*It is your responsibility to review your confirmations and statements upon receipt or when they are made available electronically. Transactions shall be conclusive and binding upon you if no written objection is made to PFSI (within 10 days after available). In all cases PFSI reserves the right to determine the validity of any objection to the information contained in the account statement.*

*Securities Investor Protection Corporation ("SIPC") does not cover commodity contracts and options on futures. For information about SIPC or to request a SIPC brochure, please see www.sipc.org or contact SIPC at (202) 371-8300.*

# TradeWallStreet
## F I N A N C I A L

104 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

## Statement of Account

NDV INVESTMENT COMPANY
SUITE 4 TEMPLE BLDG MAIN &
PRINCE WILLIAM STREET
CHARLESTON

| Account Information | |
|---|---|
| Account Number: | 38004503 |

| Statement Period |
|---|
| December 1, 2011 to December 31, 2011 |

*DPP and REIT securities are generally illiquid and the estimated value of these securities may not be realized upon liquidation of the security. The value of the security will differ from the purchase price.  In the event valuations are provided, they will be based upon estimated values obtained from the issuer's annual report.  However, in some cases accurate valuation information is not available and will not be provided.*

*FINRA Rule 2340 requires that we advise you to promptly report any inaccuracy or discrepancy in your account to your brokerage firm and clearing firm (where these are different firms) and to re-confirm any oral communications in writing.*
*http://www.finra.org/web/groups/rules_regs/documents/notice_to_members/p018130.pdf*

*When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction.  When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day your payment is received, and you will not receive your check back from your financial institution.  Please contact your broker if you have questions about electronic check collection or do not want your payments collected electronically.*

*Pursuant to SEC Rule 606, Penson Financial Services, Inc. is required to make publicly available a quarterly report with regard to its routing of non-directed orders.  For the purpose of this Rule, we have entered into an agreement with Quantum5 Market Surveillance (a Division of S3 Matching Technologies) to disclose all required information pertaining to this rule.  This information can be accessed on the internet at:  ftp://public.s3.com/11ac1-6/pfsi, or a written copy will be furnished at no cost upon request via telephone to 214-765-1009 or email to cs@penson.com.*

*SEC Rule 606(b) requires a broker-dealer to disclose to its customers, upon request, "the identity of the venue to which the customer's orders were routed for execution in the six months prior to the request, whether the orders were directed orders or non-directed orders, and the time of the transactions, if any, that resulted from such orders."*

*FINRA REQUIRES THAT WE NOTIFY YOU IN WRITING OF THE AVAILABILITY OF AN INVESTOR BROCHURE THAT INCLUDES INFORMATION DESCRIBING THE FINRA'S PUBLIC DISCLOSURE PROGRAM ('PROGRAM').  TO OBTAIN A BROCHURE OR MORE INFORMATION ABOUT THE PROGRAM OR FINRA, CONTACT THE FINRA PROGRAM HOTLINE AT (800) 289-9999 OR ACCESS THE FINRA WEB SITE AT www.finrabrokercheck.com*

**\* End of Statement \***

# TradeWallStreet
### F I N A N C I A L

1101 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

NDV INVESTMENT COMPANY
SUITE 4 TEMPLE BLDG MAIN &
PRINCE WILLIAM STREET
CHARLESTON
ST KITTS & NEV

### Account Information

| New Account Number: | 3RF05327 |
| Old Account Number: | 38004503 |
| Financial Advisor #: | Y321 |

**Your Financial Advisor**

TRADEWALL STREET FINANCIAL
(202) 449-7260

### Statement Period

**December 1, 2011 to December 31, 2011**

### Office Serving You

1101 Pennsylvania Avenue
Suite 600
Washington D.C.  20004
(202) 449-7260

## Account Value

| Asset Category | Current Value 12/31/11 | Prior Value 06/30/11 | Percent of Acct Assets | Estimated Annual Income | Estimated Current Yield |
|---|---|---|---|---|---|
| Money Fund Balance | 0.00 | 0.00 | | | |
| Total: Portfolio Values | 0.00 | 0.00 | | | |
| Total Account Value | 0.00 | 0.00 | | | |

## Asset Allocation

## Income Summary

| | This Period | Year to Date |
|---|---|---|
| Money Fund Dividends - Tax Exempt | 0.00 | 0.11 |
| Margin Interest | 0.00 | (6.99) |
| Total: Income | 0.00 | (6.88) |

The Account of the Customer is subject to the following terms and conditions ("Agreement") which the Customer agrees to and accepts by use, maintenance and/or continuation of the Account notwithstanding any notice or statement of intention to You to the contrary.

**1.   Definitions.**  "Account" shall refer individually and collectively to all accounts which the Customer has previously opened, now has open or may open in the future, in which the Customer has any interest, with You or any Introducing Broker, and any and all previous, current and future transactions in such accounts.  "Customer" refers to the individual(s) and/or entity(ies) in whose name the Account referenced on the face of this Account statement is carried or who may otherwise have any interest in an Account.  "Introducing Broker" means any brokerage firm which introduces securities transactions on behalf of the Customer, which transactions are cleared through You, whether one or more.  "Obligations" means all indebtedness, debit balances, liabilities or other obligations of any kind of the Customer to You, whether now existing or hereafter arising.  "Securities or other Property" shall mean all money, securities, commodities or other property of every kind and nature and all contracts and options relating thereto, whether for present or future delivery.  "You" or "Your" refers to Penson Financial Services, Inc.

**2.   Payment of Indebtedness Upon Demand.**  The Customer shall at all times be liable for the payment upon demand of any Obligations owing from the Customer to You, and Customer shall be liable to You for any deficiency remaining in any Account in the event of the liquidation thereof, in whole or in part, by You, the Introducing Broker, or by the Customer, and the Customer shall pay such Obligations upon demand.

**3.   Security Interest; Liquidation.**  All Securities or other property now or hereafter held, carried or maintained by You in or for the Account shall be subject to a first and prior lien and security interest for the discharge of all of the Obligations of the Customer and are to be held by You as security for the payment of the Obligations of the Customer to You, to the fullest extent allowed by law.  You shall have the right to transfer Securities or other Property so held by You from or to any Account of the Customer whenever You so determine. Whenever the Customer does not, on or before the settlement date, pay in full for any Securities or other Property purchased for the Account of the Customer, or deliver any Securities or other Property sold for such Account, or if any other Obligations of the Customer to You are unpaid, You are authorized (a) until payment or delivery is made, to pledge, repledge, hypothecate or rehypothecate, without notice, any and all Securities or other Property which You may hold for the Customer (either individually or jointly with others), separately or in common with other Securities or other Property, for the sum then due or for a greater or lesser sum and without retaining in your possession and control for delivery a like amount of similar Securities or other Property; (b) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (c) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (d) to buy any or all Securities or other Property which may be short in such Account; and/or (a) to cancel any open orders and to close any or all outstanding contracts; all without notice of sale or purchase, or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein.  You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed.  Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account.  You are authorized, in Your discretion, should You for any reason whatsoever deem it necessary for Your protection, without notice, to cancel any outstanding order, to close out the Account of the Customer, in whole or in part, or to close out any commitment made on behalf of the Customer.

**4.   Lending Agreement; Margin or Short Accounts.**  With respect to any margin or short Account maintained by the Customer, You are authorized to lend to yourself, as principal or otherwise, or to others, any Securities or other Property held by You on margin for any Account or as collateral therefor either separately or without other securities. The Customer will at all times maintain such Securities or other Property in the Account of the Customer for margin and/or maintenance purposes as required by You in Your sole discretion, on demand, in accordance with Your general policies regarding margin and maintenance requirements, as such may be modified from time to time, or at other times as You may require, and will be charged, in accordance with Your usual custom or as otherwise determined by You with interest at rates permitted by the laws of the State of Texas.  With respect to any margin or short Account of the Customer, You shall have the right at any time and from time to time, in accordance with Your general policies regarding Your margin or maintenance requirements, short Accounts or Accounts in general, as such may be modified from time to time, or at an earlier Point in time than called for by said general policies, in the event that You feel insecure with respect to the Customer's account for any reason in Your sole discretion: (a) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (b) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (c) to buy any or all Securities or other Property which may be short in such Account, and/or (d) to cancel any open orders and to close any or all outstanding contracts; all without demand for margin or additional margin, notice of sale or purchase or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein.  You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed.  Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account.

**5.   Account Carried as Clearing Broker.**  The Customer understands that You are carrying the Account of the Customer as clearing broker by arrangement with the Customer's Introducing Broker through whose courtesy the Account of the Customer has been introduced to You.  The Customer understands that You act as custodian for funds and securities deposited with You, through the Customer's Introducing Broker, or as a result of transactions You may process for the Customer's Account.  Inquiries regarding the Customer's Account or the activity therein should be directed to the Introducing Broker.  If Customer is unable to reach the Introducing Broker concerning account activity, or a complaint, Customer may contact Penson at 1700 Pacific Avenue, Suite 1400, Dallas, TX  75201, (214) 765-1100, and speak with the Compliance Department.  The Customer understands that the Introducing Broker and not You, is responsible for compliance with all applicable laws and regulations in connection with the Customer's Account.  Until receipt by You from the Customer of written notice to the contrary, you may accept and rely upon from such Introducing broker and its representatives employees and other agents, without any inquiry or investigation by You: (a) orders for the purchase or sale in the Customer's Account of Securities or other Property, and (b) any other instructions concerning the Customer's Account.  The

**(continued)**

Customer understands that You act only to clear trades introduced by the Customer's Introducing Broker and to effect other back office functions for the Customer's Introducing Broker.  The Customer confirms to You that the Customer is relying for any advice concerning the Customer's Account solely on the Customer's Introducing Broker.  The Customer understands that You are not a principal of or partner with and do not control in any way, the Introducing Broker or its representatives, employees or other agents.  The Customer understands that You will not review the Customer's account and will have no responsibility for trades made in the Customer's Account.  The Customer agrees that You shall not be responsible or liable for any acts or omissions of the Introducing Broker or its representatives, employees or other agents.

**THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN CONJUNCTION WITH THESE DISCLOSURES:**

a.   ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORM IN WHICH A CLAIM IS FILED;

b.   ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING; A PARTY'S ABILITY TO HAVE A COURT REVERSE OR MODIFY AN ARBITRATION AWARD IS VERY LIMITED.

c.   THE ABILITY OF THE PARTIES TO OBTAIN DOCUMENTS, WITNESS STATEMENTS AND OTHER DISCOVERY IS GENERALLY MORE LIMITED IN ARBITRATION THAN IN COURT PROCEEDINGS;

d.   THE ARBITRATORS DO NOT HAVE TO EXPLAIN THE REASON(S) FOR THEIR AWARD.

e.   THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

f.   THE RULES OF SOME ARBITRATION FORUMS MAY IMPOSE TIME LIMITS FOR BRINGING A CLAIM IN ARBITRATION. IN SOME CASES, A CLAIM THAT IS INELIGIBLE FOR ARBITRATION MAY BE BROUGHT IN COURT.

g.   THE RULES OF THE ARBITRATION FORUM IN WHICH THE CLAIM IS FILED, AND ANY AMENDMENTS THERETO, SHALL BE INCORPORATED INTO THIS AGREEMENT.

**6.   ARBITRATION AGREEMENT.**  ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE UNDERSIGNED AND YOU, OR THE INTRODUCING BROKER, OR THE AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS OF YOU OR THE INTRODUCING BROKER, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S BUSINESS OR THE UNDERSIGNED'S ACCOUNTS, SHALL BE CONDUCTED PURSUANT TO THE CODE OF ARBITRATION PROCEDURE OF THE FINRA.  ARBITRATION MUST BE COMMENCED BY SERVICE OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE.  THE DECISION AND AWARD OF THE ARBITRATOR (S) SHALL BE CONCLUSIVE AND BINDING UPON ALL PARTIES, AND ANY JUDGMENT UPON ANY AWARD RENDERED MAY BE ENTERED IN A COURT HAVING JURISDICTION THEREOF, AND NEITHER PARTY SHALL OPPOSE SUCH ENTRY.

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is de-certified; or (iii) the customer is excluded from the class by the court.  Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

**7.   Other Agreements; Option Transactions, Charges.**  The Customer agrees to be bound by the terms of Your Customer Account Agreement.  If the Customer trades on margin or has short positions, the Customer agrees to be bound by the terms of Your Customer Margin and Short Account Agreement.  If the Customer trades any options, the customer agrees to be bound by the terms of your Customer Option Agreement. If this is a joint Account, the Customers agree to be bound by Your Joint Account Agreement.  The Customer understands that copies of these agreements are available from You and, to the extent applicable, are incorporated by reference herein.  The terms of these other agreements are in addition to the provisions of this Agreement and any other written agreements between You and the Customer.  You may charge the Customer Account maintenance fees, security transfer fees and account transfer fees, and other charges or fees as agreed between You and the Customer's Introducing Broker or as independently established by You.

**8.   Option Account.**  Assignment notices for option contracts are allocated among client short positions pursuant to a manual procedure which randomly selects from all client short option positions, including positions established on the day of assignment, those contracts which are subject to exercise.  All American short option positions are subject to assignment at any time.  A more detailed description of Your random allocation procedure is available upon request.  In accordance with the Customer Option Agreement, if applicable, the Customer must promptly notify the Introducing Broker of any change in the Customer's objectives or financial situation.  Individual options commissions and other related charges have been included in the Customer's Confirmation; however, a summary of this information will be made available to the Customer upon request.  The customer must promptly advise the introducing broker of any material change in the customer's investment objectives or financial situation.

**9.   Miscellaneous.**  Customer's financial statement is available for personal inspection or will be mailed to the Customer's request.  The headings of each section of the Agreement are descriptive only and do not modify or qualify any provision of this Agreement.  Except as provided in this Agreement, no provision of this Agreement may be altered, modified or amended unless in writing signed by Your authorized representative.  This Agreement and all provisions shall inure to the benefit of You and Your successors, Your assigns, the Customer's Introducing Broker, and all other persons specified in Paragraph 6 above.  Within respect to any free credit balance included on the Account statement, such funds are not segregated and may be used in Your business, subject to the limitations of 17 CFR Section 24O.15c3-3 of the Securities Exchange Act of 1934.  The Customer may receive these funds in the normal course of business following demand to You. You shall not be liable for losses caused directly or indirectly by any events beyond Your reasonable control.  The costs and expenses of collection of the debit balance and any unpaid deficiency in the Account of the Customer with You, including but not limited to reasonable attorneys' fees and expenses, incurred and payable or paid by You shall be payable to You by the Customer.  The estimated annual income, estimated current yield, and market value calculations are estimates only, and have been obtained or prepared from sources You consider to be reliable, but You make no assurance as to their accuracy.

# Trade Wall Street
**FINANCIAL**

104 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

---

**NDV INVESTMENT COMPANY**
**SUITE 4 TEMPLE BLDG MAIN &**
**PRINCE WILLIAM STREET**
**CHARLESTON**

**Account Information**

Account Number:   38004503

**Statement Period**

December 1, 2011 to December 31, 2011

---

*Settled Trades Summary:*

| | | | |
|---|---|---|---|
| *TOTAL PURCHASED (USD):* | 0.00 | *TOTAL SHARES PURCHASED:* | 0.00 |
| *TOTAL SOLD (USD):* | 0.00 | *TOTAL SHARES SOLD:* | 0.00 |

*Please be advised that effective January 1, 2012, the VISA International Transaction Fee will be changing from 1% of the purchase amount to 3% for those accounts invested in Reich & Tang Money Market Funds.*

*Dear Customer,*

*Your Broker's clearing firm, Penson Financial Services, Inc. ("Penson"), has enhanced its service platform by moving from Sungard to Broadridge Financial Solutions, Inc.'s system, referred to as Brokerage Processing Services ("BPS"). This conversion to BPS commenced after the close of business on December 9, 2011 and is now complete.*

*As a result of the conversion, you will receive two statements for the month of December:*

*\*  One statement is issued under your pre-conversion account number, detailing account activities between December 1, 2011 and December 9, 2011. This statement also displays conversion related activities that moved your assets from your old account number to our new account number. THE ENDING EQUITY ON THIS STATEMENT WILL BE $0.00.*
*\* A second statement is issued under your post-conversion account number, detailing account activities between December 9, 2011 and December 31, 2011. This statement displays conversion related activities that moved your assets from your old account number to your new account number. The ending equity on this statement will be your actual account equity, as of December 31, 2011.*

*Please contact your broker if you have any questions regarding your account statements or the conversion.*

*To our valued customers:*
*In accordance with the Emergency Economic Stabilization Act of 2008, broker dealers are required to track and report cost basis to the IRS in three phases over the next three years.*
*2011: Equity Securities,*
*2012: Mutual funds and dividend reinvestment plan shares,*
*2013: Debt securities, options and all other financial instruments.*
*Beginning this upcoming tax reporting season the cost basis of any covered equity security transaction (purchased after 12/31/10) that is required to be reported on a 1099-B will include its associated cost basis. If you have any questions about this important change to the IRS mandated reporting requirements, please contact your broker.*

*It is your responsibility to review your confirmations and statements upon receipt or when they are made available electronically. Transactions shall be conclusive and binding upon you if no written objection is made to PFSI (within 10 days after available). In all cases PFSI reserves the right to determine the validity of any objection to the information contained in the account statement.*

*Securities Investor Protection Corporation ("SIPC") does not cover commodity contracts and options on futures. For information about SIPC or to request a SIPC brochure, please see www.sipc.org or contact SIPC at (202) 371-8300.*

# TradeWallStreet
**F I N A N C I A L**

L101 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

NDV INVESTMENT COMPANY
SUITE 4 TEMPLE BLDG MAIN &
PRINCE WILLIAM STREET
CHARLESTON

| Account Information | | Statement Period |
|---|---|---|
| Account Number: | 38004503 | December 1, 2011 to December 31, 2011 |

*DPP and REIT securities are generally illiquid and the estimated value of these securities may not be realized upon liquidation of the security. The value of the security will differ from the purchase price. In the event valuations are provided, they will be based upon estimated values obtained from the issuer's annual report. However, in some cases accurate valuation information is not available and will not be provided.*

*FINRA Rule 2340 requires that we advise you to promptly report any inaccuracy or discrepancy in your account to your brokerage firm and clearing firm (where these are different firms) and to re-confirm any oral communications in writing.*
*http://www.finra.org/web/groups/rules_regs/documents/notice_to_members/p018130.pdf*

*When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day your payment is received, and you will not receive your check back from your financial institution. Please contact your broker if you have questions about electronic check collection or do not want your payments collected electronically.*

*Pursuant to SEC Rule 606, Penson Financial Services, Inc. is required to make publicly available a quarterly report with regard to its routing of non-directed orders. For the purpose of this Rule, we have entered into an agreement with Quantum5 Market Surveillance (a Division of S3 Matching Technologies) to disclose all required information pertaining to this rule. This information can be accessed on the internet at: ftp://public.s3.com/11ac1-6/pfsi, or a written copy will be furnished at no cost upon request via telephone to 214-765-1009 or email to cs@penson.com.*

*SEC Rule 606(b) requires a broker-dealer to disclose to its customers, upon request, "the identity of the venue to which the customer's orders were routed for execution in the six months prior to the request, whether the orders were directed orders or non-directed orders, and the time of the transactions, if any, that resulted from such orders."*

*FINRA REQUIRES THAT WE NOTIFY YOU IN WRITING OF THE AVAILABILITY OF AN INVESTOR BROCHURE THAT INCLUDES INFORMATION DESCRIBING THE FINRA'S PUBLIC DISCLOSURE PROGRAM ('PROGRAM'). TO OBTAIN A BROCHURE OR MORE INFORMATION ABOUT THE PROGRAM OR FINRA, CONTACT THE FINRA PROGRAM HOTLINE AT (800) 289-9999 OR ACCESS THE FINRA WEB SITE AT www.finrabrokercheck.com*

**\* End of Statement \***

# TradeWallStreet
**FINANCIAL**

Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

NDV INVESTMENT COMPANY
SUITE 4 TEMPLE BUILDING MAIN & PRINCE
WILLIAM STREET
CHARLESTOWN_NEVIS

### Account Information

| | |
|---|---|
| Account Number: | 38004503 |
| Financial Advisor #: | Y321 |

### Your Financial Advisor

**TRADEWALL STREET
FINANCIAL**

### Statement Period

**Feb. 1, 2011 to Feb. 28, 2011**

### Office Serving You

**1101 Pennsylvania Avenue
Suite 600
Washington D.C.  20004
(202) 449-7260**

## Account Value Summary

| | | Local Currency | Exchange Rate | Base Currency (USD) |
|---|---|---|---|---|
| USD | Money Fund Balance | 0.02 | | 0.02 |
| USD | Margin Loan Balance | (6.91) | | (6.91) |
| USD | **TOTAL ACCOUNT VALUE** | **(6.89)** | **1.0000** | **(6.89)** |
| | | | | |
| PLN | No Value To Report | 0.00 | | 0.00 |
| PLN | **TOTAL ACCOUNT VALUE** | **0.00** | **0.3484** | **0.00** |
| | **GRAND TOTAL ( USD EQUIVALENT)** | | | **(6.89)** |

ACCOUNT VALUES ARE BASED ON PRICED SECURITIES. WE  MAY BE UNABLE TO PRICE ALL SECURITIES IN YOUR ACCOUNT.  FOR SOME OTHER FIXED INCOME SECURITIES, PRICES ARE APPROXIMATE
(NOT ACTUAL MARKET BIDS) AND ARE PROVIDED ONLY AS A GENERAL GUIDE.  THEY  DO NOT NECESSARILY REFLECT ACTUAL MARKET PRICES.

# TradeWallStreet
**F I N A N C I A L**

1101 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

NDV INVESTMENT COMPANY
SUITE 4 TEMPLE BUILDING MAIN & PRINCE
WILLIAM STREET
CHARLESTOWN_NEVIS

### Account Information

| | |
|---|---|
| Account Number: | 38004503 |
| Financial Advisor #: | Y321 |

### Your Financial Advisor

TRADEWALL STREET FINANCIAL
(202) 449-7260

### Statement Period

February 1, 2011 to February 28, 2011

### Office Serving You

1101 Pennsylvania Avenue
Suite 600
Washington D.C.  20004
(202) 449-7260

## Account Value

| Asset Category | Current Value 02/28/11 | Prior Value 01/31/11 | Percent of Acct Assets | Estimated Annual Income | Estimated Current Yield |
|---|---|---|---|---|---|
| Money Fund Balance | 0.02 | 33,486.73 | 100.00% | | |
| **Total: Portfolio Values** | **0.02** | **33,486.73** | **100.00%** | | |
| Less:  Margin Loan Balance | (6.91) | 0.00 | (34,550.00% ) | | |
| **Total Account Value** | **(6.89)** | **33,486.73** | **(34,450.00% )** | | |

## Asset Allocation



CASH + MNYMKT
100.00%

## Income Summary

| | This Period | Year to Date |
|---|---|---|
| Money Fund Dividends - Tax Exempt | 0.02 | 0.11 |
| Margin Interest | (6.91) | (6.91) |
| **Total: Income** | **(6.89)** | **(6.80)** |

The Account of the Customer is subject to the following terms and conditions ("Agreement") which the Customer agrees to and accepts by use, maintenance and/or continuation of the Account notwithstanding any notice or statement of intention to You to the contrary.

**1. Definitions.** "Account" shall refer individually and collectively to all accounts which the Customer has previously opened, now has open or may open in the future, in which the Customer has any interest, with You or any Introducing Broker, and any and all previous, current and future transactions in such accounts. "Customer" refers to the individual(s) and/or entity(ies) in whose name the Account referenced on the face of this Account statement is carried or who may otherwise have any interest in an Account. "Introducing Broker" means any brokerage firm which introduces securities transactions on behalf of the Customer, which transactions are cleared through You, whether one or more. "Obligations" means all indebtedness, debit balances, liabilities or other obligations of any kind of the Customer to You, whether now existing or hereafter arising. "Securities or other Property" shall mean all money, securities, commodities or other property of every kind and nature and all contracts and options relating thereto, whether for present or future delivery. "You" or "Your" refers to Penson Financial Services, Inc.

**2. Payment of Indebtedness Upon Demand.** The Customer shall at all times be liable for the payment upon demand of any Obligations owing from the Customer to You, and Customer shall be liable to You for any deficiency remaining in any Account in the event of the liquidation thereof, in whole or in part, by You, the Introducing Broker, or by the Customer, and the Customer shall pay such Obligations upon demand.

**3. Security Interest; Liquidation.** All Securities or other property now or hereafter held, carried or maintained by You in or for the Account shall be subject to a first and prior lien and security interest for the discharge of all of the Obligations of the Customer and are to be held by You as security for the payment of the Obligations of the Customer to You, to the fullest extent allowed by law. You shall have the right to transfer Securities or other Property so held by You from or to any Account of the Customer whenever You so determine. Whenever the Customer does not, on or before the settlement date, pay in full for any Securities or other Property purchased for the Account of the Customer, or deliver any Securities or other Property sold for such Account, or if any other Obligations of the Customer to You are unpaid, You are authorized (a) until payment or delivery is made, to pledge, repledge, hypothecate or rehypothecate, without notice, any and all Securities or other Property which You may hold for the Customer (either individually or jointly with others), separately or in common with other Securities or other Property, for the sum then due or for a greater or lesser sum and without retaining in your possession and control for delivery a like amount of similar Securities or other Property; (b) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (c) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (d) to buy any or all Securities or other Property which may be short in such Account; and/or (a) to cancel any open orders and to close any or all outstanding contracts; all without notice of sale or purchase, or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein. You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed. Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account. You are authorized, in Your discretion, should You for any reason whatsoever deem it necessary for Your protection, without notice, to cancel any outstanding order, to close out the Account of the Customer, in whole or in part, or to close out any commitment made on behalf of the Customer.

**4. Lending Agreement; Margin or Short Accounts.** With respect to any margin or short Account maintained by the Customer, You are authorized to lend to yourself, as principal or otherwise, or to others, any Securities or other Property held by You on margin for any Account or as collateral therefor either separately or without other securities. The Customer will at all times maintain such Securities or other Property in the Account of the Customer for margin and/or maintenance purposes as required by You in Your sole discretion, on demand, in accordance with Your general policies regarding margin and maintenance requirements, as such may be modified from time to time, or at other times as You may require, and will be charged, in accordance with Your usual custom or as otherwise determined by You with interest at rates permitted by the laws of the State of Texas. With respect to any margin or short Account of the Customer, You shall have the right at any time and from time to time, in accordance with Your general policies regarding Your margin or maintenance requirements, short Accounts or Accounts in general, as such may be modified from time to time, or at an earlier Point in time than called for by said general policies, in the event that You feel insecure with respect to the Customer's account for any reason in Your sole discretion: (a) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (b) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (c) to buy any or all Securities or other Property which may be short in such Account; and/or (d) to cancel any open orders and to close any or all outstanding contracts; all without demand for margin or additional margin, notice of sale or purchase or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein. You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed. Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account.

**5. Account Carried as Clearing Broker.** The Customer understands that You are carrying the Account of the Customer as clearing broker by arrangement with the Customer's Introducing Broker through whose courtesy the Account of the Customer has been introduced to You. The Customer understands that You act as custodian for funds and securities deposited with You, through the Customer's Introducing Broker, or as a result of transactions You may process for the Customer's Account. Inquiries regarding the Customer's Account or the activity therein should be directed to the Introducing Broker. If Customer is unable to reach the Introducing Broker concerning account activity, or a complaint, Customer may contact Penson at 1700 Pacific Avenue, Suite 1400, Dallas, TX 75201, (214) 765-1100, and speak with the Compliance Department. The Customer understands that the Introducing Broker and not You, is responsible for compliance with all applicable laws and regulations in connection with the Customer's Account. Until receipt by You from the Customer of written notice to the contrary, you may accept and rely upon from such Introducing broker and its representatives employees and other agents, without any inquiry or investigation by You: (a) orders for the purchase or sale in the Customer's Account of Securities or other Property, and (b) any other instructions concerning the Customer's Account. The

**5.** (continued) Customer understands that You act only to clear trades introduced by the Customer's Introducing Broker and to effect other back office functions for the Customer's Introducing Broker. The Customer confirms to You that the Customer is relying for any advice concerning the Customer's Account solely on the Customer's Introducing Broker. The Customer understands that You are not a principal or partner with and do not control in any way, the Introducing Broker or its representatives, employees or other agents. The Customer understands that You will not review the Customer's account and will have no responsibility for trades made in the Customer's Account. The Customer agrees that You shall not be responsible or liable for any acts or omissions of the Introducing Broker or its representatives, employees or other agents.

**THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN CONJUNCTION WITH THESE DISCLOSURES:**

a. ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORM IN WHICH A CLAIM IS FILED;

b. ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING; A PARTY'S ABILITY TO HAVE A COURT REVERSE OR MODIFY AN ARBITRATION AWARD IS VERY LIMITED.

c. THE ABILITY OF THE PARTIES TO OBTAIN DOCUMENTS, WITNESS STATEMENTS AND OTHER DISCOVERY IS GENERALLY MORE LIMITED IN ARBITRATION THAN IN COURT PROCEEDINGS;

d. THE ARBITRATORS DO NOT HAVE TO EXPLAIN THE REASON(S) FOR THEIR AWARD.

e. THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

f. THE RULES OF SOME ARBITRATION FORUMS MAY IMPOSE TIME LIMITS FOR BRINGING A CLAIM IN ARBITRATION. IN SOME CASES, A CLAIM THAT IS INELIGIBLE FOR ARBITRATION MAY BE BROUGHT IN COURT.

g. THE RULES OF THE ARBITRATION FORUM IN WHICH THE CLAIM IS FILED, AND ANY AMENDMENTS THERETO, SHALL BE INCORPORATED INTO THIS AGREEMENT.

**6. ARBITRATION AGREEMENT.** ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE UNDERSIGNED AND YOU, OR THE INTRODUCING BROKER, OR THE AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS OF YOU OR THE INTRODUCING BROKER, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S BUSINESS OR THE UNDERSIGNED'S ACCOUNTS, SHALL BE CONDUCTED PURSUANT TO THE CODE OF ARBITRATION PROCEDURE OF THE FINRA. ARBITRATION MUST BE COMMENCED BY SERVICE OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE. THE DECISION AND AWARD OF THE ARBITRATOR (S) SHALL BE CONCLUSIVE AND BINDING UPON ALL PARTIES, AND ANY JUDGMENT UPON ANY AWARD RENDERED MAY BE ENTERED IN A COURT HAVING JURISDICTION THEREOF, AND NEITHER PARTY SHALL OPPOSE SUCH ENTRY.

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is de-certified; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

**7. Other Agreements; Option Transactions, Charges.** The Customer agrees to be bound by the terms of Your Customer Account Agreement. If the Customer trades on margin or has short positions, the Customer agrees to be bound by the terms of Your Customer Margin and Short Account Agreement. If the Customer trades any options, the customer agrees to be bound by the terms of your Customer Option Agreement. If this is a joint Account, the Customers agree to be bound by Your Joint Account Agreement. The Customer understands that copies of these agreements are available from You and, to the extent applicable, are incorporated by reference herein. The terms of these other agreements are in addition to the provisions of this Agreement and any other written agreements between You and the Customer. You may charge the Customer Account maintenance fees, security transfer fees and account transfer fees, and other charges or fees as agreed between You and the Customer's Introducing Broker or as Independently established by You.

**8. Option Account.** Assignment notices for option contracts are allocated among client short positions pursuant to a manual procedure which randomly selects from all client short option positions, including positions established on the day of assignment, those contracts which are subject to exercise. All American short option positions are subject to assignment at any time. A more detailed description of Your random allocation procedure is available upon request. In accordance with the Customer Option Agreement, if applicable, the Customer must promptly notify the Introducing Broker of any change in the Customer's objectives or financial situation. Individual options commissions and other related charges have been included in the Customer's Confirmation; however, a summary of this information will be made available to the Customer upon request. The customer must promptly advise the introducing broker of any material change in the customer's investment objectives or financial situation.

**9. Miscellaneous.** Customer's financial statement is available for personal inspection or will be mailed to the Customer's request. The headings of each section of the Agreement are descriptive only and do not modify or qualify any provision of this Agreement. Except as provided in this Agreement, no provision of this Agreement may be altered, modified or amended unless in writing signed by Your authorized representative. This Agreement and all provisions shall inure to the benefit of You and Your successors, Your assigns, the Customer's Introducing Broker, and all other persons specified in Paragraph 6 above. Whenever the term Introducing Broker cannot be included in the Account statement, such funds are not segregated and may be used in Your business, subject to the limitations of 17 CFR Section 240.15c3-3 of the Securities Exchange Act of 1934. The Customer may receive these funds in the normal course of business following demand to You. You shall not be liable for losses caused directly or indirectly by any events beyond Your reasonable control. The costs and expenses of collection of the debit balance and any unpaid deficiency in the Account of the Customer with You, including but not limited to reasonable attorneys' fees and expenses, incurred and payable or paid by You shall be payable to You by the Customer. The estimated annual income, estimated current yield, and market value calculations are estimates only, and have been obtained or prepared from sources You consider to be reliable, but You make no assurance as to their accuracy.

# TradeWallStreet
## F I N A N C I A L

104 Pennsylvania Ave.
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

| | |
|---|---|
| NDV INVESTMENT COMPANY | |
| SUITE 4 TEMPLE BUILDING MAIN & PRINCE | |
| WILLIAM STREET | |
| CHARLESTOWN_NEVIS | |

**Account Information**

Account Number: 38004503

**Statement Period**

February 1, 2011 to February 28, 2011

## Portfolio Positions

| Cash & Equivalents | Symbol/ Cusip | Account Type | Quantity | Current Price | Current Value | Percent of Acct Assets | Estimated Annual Income | Estimated Current Yield |
|---|---|---|---|---|---|---|---|---|
| Money Market Fund | | MoneyFund | | 1.00 | 0.02 | 100.00 | | |
| **Total: Cash & Equivalents** | | | | | **0.02** | **100.00** | | |
| | | | | | | | | |
| **Total: Portfolio Values** | | | | | **0.02** | **100.00** | | |
| | | | | | | | | |
| Less: Margin Loan Balance | | Margin | | | (6.91) | -34550.00 | | |
| | | | | | | | | |
| **Total: Account Net Assets/Equity** | | | | | **(6.89)** | **-34450.00** | | |

*Account value and totals are based only on priced securities. We may be unable to price all securities in your account. For municipal securities and some other fixed income securities, prices are approximate (not actual market bids) and are provided only as a general guide. They do not necessarily reflect actual market prices. For current prices, please contact your financial consultant.*

## Account Activity

| Cash Account | Entry/Trade Date | Account Type | Transaction | Quantity | Description | Price | Amount |
|---|---|---|---|---|---|---|---|
| | | Cash | | | OPENING BALANCE | | 0.00 |
| | 02/07/11 | Cash | Journal | | DOMESTIC WIRE FEE | | (30.00) |
| | 02/07/11 | Cash | Journal | | WIRE TRANSFER | | (33,456.73) |
| | 02/08/11 | Cash | Received | | REDEEM:  DAILY $$ INT'L RET'L | | 33,486.73 |
| **Total: Cash Account Balance** | | | | | | | **0.00** |

**Margin Account**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | Margin | | | OPENING BALANCE | | 0.00 |
| | 02/28/11 | Margin | Debit Interest | | 7.45000%02/01-02/28   $1195 | | (6.91) |
| **Total: Margin Account Balance** | | | | | | | **(6.91)** |

# TradeWallStreet
## F I N A N C I A L

1101 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

## Statement of Account

| | | |
|---|---|---|
| **NDV INVESTMENT COMPANY**<br>**SUITE 4 TEMPLE BUILDING MAIN & PRINCE**<br>**WILLIAM STREET**<br>**CHARLESTOWN_NEVIS** | **Account Information**<br><br>Account Number:      **38004503** | **Statement Period**<br><br>**February 1, 2011 to February 28, 2011** |

## Account Activity

| R&T Daily $ Intl Ltd | Entry/Trade Date | Account Type | Transaction | Quantity | Description | Price | Amount |
|---|---|---|---|---|---|---|---|
| | | MoneyFund | | | OPENING BALANCE | | 33,486.73 |
| | 02/08/11 | MoneyFund | Disbursed | | REDEEM:   DAILY $$ INT'L RET'L | | (33,486.73) |
| | 02/28/11 | MoneyFund | Money Fund Dividends | | .00200%02/01-02/28     33486 | | .02 |
| **Total: Reich & Tang Daily $$ Int'l Ltd** | | | | | | | **.02** |

Trade Wall Street
F I N A N C I A L

11-20050-rdd   Doc 38-8   Filed 04/05/13   Entered 04/05/13 17:07:55   Exhibit   Pg
64 of 104

1101 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

| | | |
|---|---|---|
| **NDV INVESTMENT COMPANY** | **Account Information** | **Statement Period** |
| **SUITE 4 TEMPLE BUILDING MAIN & PRINCE** | **Account Number:** 38004503 | **February 1, 2011 to February 28, 2011** |
| **WILLIAM STREET** | | |
| **CHARLESTOWN_NEVIS** | | |

*Settled Trades Summary:*

| | | | |
|---|---|---|---|
| *TOTAL PURCHASED (USD):* | 0.00 | *TOTAL SHARES PURCHASED:* | 0.00 |
| *TOTAL SOLD (USD):* | 0.00 | *TOTAL SHARES SOLD:* | 0.00 |

*Pursuant to an agreement, a portion of each transaction fee or commission compensates brokerage firm, broker, advisor, finder, or foreign associate.*

*TWS FINANCIAL, LLC ANNUAL 2011-2012 MARGIN DISCLOSURE STATEMENT*

*We are furnishing this document to you to provide some basic facts about purchasing securities on margin, and to alert you to the risks involved with trading securities in a margin account. Before trading stocks in a margin account, you should carefully review the margin agreement provided by your broker. Consult your broker regarding any questions or concerns you may have with your margin accounts.*

*When you purchase securities, you may pay for the securities in full or you may borrow part of the purchase price from you brokerage firm. If you choose to borrow funds from your firm, you will open a margin account with the firm. The securities purchased are the firm's collateral for the loan to you. If the securities in your account decline in value, so does the value of the collateral supporting your loan, and as a result, the firm can take action, such as issue a margin call and/or sell securities in your account, in order to maintain the required equity in the account. It is important that you fully understand the risks involved in trading securities on margin. These risks include the following:*

*_ You can lose more funds than you deposit in the margin account. A decline in the value of the securities that are purchased on margin may require you to provide additional funds to the firm that has made the loan to avoid the forced sale of those securities or other securities in your account.*
*_ The firm can force the sale of securities in your account. If the equity in your account falls below the maintenance margin requirements under the law, or the firm's higher house requirements, the firm can sell the securities in your account to cover the margin deficiency. You will be responsible for any shortfall in the account after such a sale.*
*_ The firm can sell your securities without contacting you. Some investors mistakenly believe that a firm must contact them for a margin call to be valid, and that the firm cannot liquidate securities in their accounts to meet the call unless the firm has contacted them first. This is not the case. Most firms will attempt to notify their customers of margin calls, but they are not required to do so. However, even if a firm has contacted a customer and provided a specific date by which the customer can meet a margin call, the firm can still take necessary steps to protect its financial interest, including immediately selling the securities without notice to the customer.*
*_ You are not entitled to choose which security in your margin account is liquidated or sold to meet a margin call. Because the securities are collateral for the margin loan, the firm has the right to decide which security to sell in order to protect its interests.*
*_ The firm can increase its house maintenance margin requirement at any time and is not required to provide you advance written notice. These changes in firm policy often take effect immediately and may result in the issuance of a maintenance margin call. Your failure to satisfy the call may cause the member to liquidate or sell securities in your account.*
*_ You are not entitled to an extension of time on a margin call. While an extension of time to meet margin requirements may be available to customers under certain conditions, a customer does not have a right to the extension.*

*TWS FINANCIAL, LLC ANNUAL 2011-2012 DAY TRADING RISK DISCLOSURE STATEMENT RULE 2361*

*You should consider the following points before engaging in a day-trading strategy. For purposes of this notice, a "day-trading strategy" means an overall trading strategy characterized by the regular transmission by a customer of intra-day orders to effect both purchase and sale transactions in the same security or securities.*

# TradeWallStreet
### FINANCIAL

L104 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

## Statement of Account

NDV INVESTMENT COMPANY
SUITE 4 TEMPLE BUILDING MAIN & PRINCE
WILLIAM STREET
CHARLESTOWN_NEVIS

**Account Information**

Account Number:    38004503

**Statement Period**

February 1, 2011 to February 28, 2011

*Day trading can be extremely risky. Day trading generally is not appropriate for someone of limited resources and limited investment or trading experience and low risk tolerance. You should be prepared to lose all of the funds that you use for day trading. In particular, you should not fund day-trading activities with retirement savings, student loans, second mortgages, emergency funds, funds set aside for purposes such as education or home ownership, or funds required to meet your living expenses. Further, certain evidence indicates that an investment of less than $50,000 will significantly impair the ability of a day trader to make a profit. Of course, an investment of $50,000 or more will in no way guarantee success.*

*Be cautious of claims of large profits from day trading. You should be wary of advertisements or other statements that emphasize the potential for large profits in day trading. Day trading can also lead to large and immediate financial losses.*

*Day trading requires knowledge of securities markets. Day trading requires in-depth knowledge of the securities markets and trading techniques and strategies. In attempting to profit through day trading, you must compete with professional, licensed traders employed by securities firms. You should have appropriate experience before engaging in day trading.*

*Day trading requires knowledge of a firm's operations. You should be familiar with the securities firm's business practices, including the operation of the firm's order execution systems and procedures. Under certain market conditions, you may find it difficult or impossible to liquidate a position quickly at a reasonable price. This can occur, for example, when the market for a stock suddenly drops, or if trading is halted due to recent news events or unusual trading activity. The more volatile a stock is, the greater the likelihood that problems may be encountered in executing a transaction. In addition to normal market risks, you may experience losses due to system failures.*

*Day trading will generate substantial commissions, even if the per trade cost is low. Day trading involves aggressive trading, and generally you will pay commissions on each trade. The total daily commissions that you pay on your trades will add to your losses or significantly reduce your earnings. For instance, assuming that a trade costs $16 and an average of 29 transactions are conducted per day, an investor would need to generate an annual profit of $111,360 just to cover commission expenses.*

*Day trading on margin or short selling may result in losses beyond your initial investment. When you day trade with funds borrowed from a firm or someone else, you can lose more than the funds you originally placed at risk. A decline in the value of the securities that are purchased may require you to provide additional funds to the firm to avoid the forced sale of those securities or other securities in your account. Short selling as part of your day-trading strategy also may lead to extraordinary losses, because you may have to purchase a stock at a very high price in order to cover a short position.*

*Potential Registration Requirements: Persons providing investment advice for others or managing securities accounts for others may need to register as either an "Investment Advisor" under the Investment Advisors Act of 1940 or as a "Broker" or "Dealer" under the Securities Exchange Act of 1934. Such activities may also trigger state registration requirements.*

*TWS FINANCIAL, LLC ANNUAL 2011-2012 MARKET VOLATILITY AND TRADING PLATFORMS NOTICE*

*All trades are executed through Trade Wall Street Financial, Member of the FINRA and SIPC. Our clearing firm is Penson Financial Services. For more information, go to www.penson.com.*

*System response, trade executions and account access may be affected by market conditions, system performance, quote delays and other factors. The risk of loss in electronic trading can be substantial. You should therefore consider whether such trading is suitable for you in light of your financial resources. Money Market Funds are not FDIC Insured. Read our Risk Disclosures.*

# TradeWallStreet
### FINANCIAL

1101 Pennsylvania Ave.
Suite 600
Washington, DC 20004
(202) 449-7260

## Statement of Account

NDV INVESTMENT COMPANY
SUITE 4 TEMPLE BUILDING MAIN & PRINCE
WILLIAM STREET
CHARLESTOWN_NEVIS

**Account Information**

Account Number:          38004503

**Statement Period**

February 1, 2011 to February 28, 2011

*After-Hours Trading*

*There is no assurance that trades will be executed after the market closes.*

*Loss of Principal*

*Beware of the risk of trading.  Trading stocks and other investments are subject to fluctuations in value and possibly entire loss of principal.*

*TWS FINANCIAL, LLC ANNUAL 2011-2012 PRIVACY NOTICE*

*Trade Wall Street Financial is committed to protecting confidentiality of the information furnished to us by our clients.  We are providing you this information as required by Regulation S-P adopted by the Securities and Exchange Commission.*

*Information about You that We Collect*

*We collect non-public personal information about you from the following sources: information we receive from you on applications or other forms or through our Web Site and information we receive from a consumer-reporting agency.*

*Our Use of Information about You*

*Trade Wall Street Financial does not share your non-public personal information with any unaffiliated third parties with whom we have no contractual business relationships, unless:*
*- You give us written permission*
*- It is vital to completing a transaction for your account*
*- It is required by law to protect us against fraud or to comply with a subpoena or other court order.*
*We do not sell information about you to outside unaffiliated companies.*

*Trade Wall Street Financial has policies that restrict access to non-public personal information about you to those employees who have need for that information to provide investment alternatives or services to you, or to employees who assist those who provide investment alternatives or services to you.  We maintain physical, electronic, and procedural safeguards to protect your non-public personal information.*

*TWS FINANCIAL, LLC ANNUAL 2011-2012 SIPC NOTICE*

*All accounts are SIPC Protected for $500,000 Securities, including $100,000 claims for Cash.  Penson Financial Services, Inc. (PFSI) has also acquired "Excess SIPC" insurance from a third party insurer to protect client accounts up to their net equity for loss of securities and cash held at Penson Financial Services, Inc. (PFSI).  This "Excess SIPC" protection is in addition to the protection provided by the Securities and Investors Protection Act, which is administered by SIPC, and is subject to certain conditions and limitations, details of which are available upon request.  The above coverage does not protect against loss of the market value of securities.*

# Trade Wall Street
## F I N A N C I A L

1101 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

NDV INVESTMENT COMPANY
SUITE 4 TEMPLE BUILDING MAIN & PRINCE
WILLIAM STREET
CHARLESTOWN_NEVIS

| Account Information | |
| --- | --- |
| Account Number: | 38004503 |

| Statement Period |
| --- |
| February 1, 2011 to February 28, 2011 |

## ACCOUNT REVIEW

*It is always the client's responsibility to review their investment accounts on a routine basis. If there are any discrepancies of any kind, including but not limited to: current equity, buying power, or positions, the client must contact Trade Wall Street Financial prior to acting on any information that does not match. Also, if you ever believe for any reason that anything is incorrect in your account, please make sure you always contact us before acting. If a client acts before contacting us to verify the validity of their account information or fails to review their account on a daily basis, any issues that arise as a result of not reviewing their information or contacting our firm in a timely manner will be solely the client's responsibility.*

*It is also the client's responsibility to review all their open orders daily, especially if you are placing GTC (good till canceled) orders. If you believe you had an order that for some reason is not showing on your software or have any other issues or problems with any orders, you will need to contact us immediately. You will be responsible for this daily review of your open orders. Any issues caused by the failure to do this review and to contact us in a timely manner to resolve any discrepancies will be solely the client's responsibility.*

## SHORT SALES

*The term 'short sale' means any sale of a security, which the seller does not own, or any sale, which is consummated by the delivery of a security, borrowed by, or for the account of the seller. For stocks hard to borrow, short sales must be preceded by a request to Trade Wall Street Financial to make sure stocks can be borrowed. We will then contact the Penson Stock Loan Department to ensure the availability of the stock. If approval is granted by the Penson Stock Loan Department, Trade Wall Street Financial will inform you that the stock can be sold short. If approval is not received, the security in question cannot be shorted. If you short a stock that has not been located, the transaction may be cancelled and you will be responsible for any losses incurred. Short sales made on stocks not located will result in a buy-in. All trades that violate these rules will be put into TWS Financial's error account. All losses will be charged back to your account. You will not receive any profit from these trades as they are illegally gained. Repeated violations of these rules can result in your account being closed. Assuming the security in question can be shorted, the short sale must take place as 'sell short'. If the trader uses a sell to place a short sale or over-sells a position, it is possible that the trade will be executed illegally. This is a violation of FINRA and SEC rules. The trader is responsible to cover any illegal position immediately with a corresponding buy. These corrections must be reported via e-mail to Trade Wall Street Financial at the end of the trading day.*

*It is your responsibility to review your confirmations and statements upon receipt or when they are made available electronically. Transactions shall be conclusive and binding upon you if no written objection is made to PFSI (within 10 days after available). In all cases PFSI reserves the right to determine the validity of any objection to the information contained in the account statement.*

*Securities Investor Protection Corporation ("SIPC") does not cover commodity contracts and options on futures. For information about SIPC or to request a SIPC brochure, please see www.sipc.org or contact SIPC at (202) 371-8300.*

*DPP and REIT securities are generally illiquid and the estimated value of these securities may not be realized upon liquidation of the security. The value of the security will differ from the purchase price. In the event valuations are provided, they will be based upon estimated values obtained from the issuer's annual report. However, in some cases accurate valuation information is not available and will not be provided.*

*FINRA Rule 2340 requires that we advise you to promptly report any inaccuracy or discrepancy in your account to your brokerage firm and clearing firm (where these are different firms) and to re-confirm any oral communications in writing. http://www.finra.org/web/groups/rules_regs/documents/notice_to_members/p018130.pdf*

*When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day your payment is received, and you will not receive your check back from your financial institution. Please contact your broker if you have questions about electronic check collection or do not want your payments collected electronically.*

# Trade Wall Street
### F I N A N C I A L

104 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

**NDV INVESTMENT COMPANY**
**SUITE 4 TEMPLE BUILDING MAIN & PRINCE**
**WILLIAM STREET**
**CHARLESTOWN_NEVIS**

| Account Information | | Statement Period |
|---|---|---|
| **Account Number:** | **38004503** | **February 1, 2011 to February 28, 2011** |

*Pursuant to SEC Rule 606, Penson Financial Services, Inc. is required to make publicly available a quarterly report with regard to its routing of non-directed orders. For the purpose of this Rule, we have entered into an agreement with Quantum5 Market Surveillance (a Division of S3 Matching Technologies) to disclose all required information pertaining to this rule. This information can be accessed on the internet at: ftp://public.s3.com/11ac1-6/pfsi, or a written copy will be furnished at no cost upon request via telephone to 214-765-1009 or email to cs@penson.com.*

*SEC Rule 606(b) requires a broker-dealer to disclose to its customers, upon request, "the identity of the venue to which the customer's orders were routed for execution in the six months prior to the request, whether the orders were directed orders or non-directed orders, and the time of the transactions, if any, that resulted from such orders."*

*FINRA REQUIRES THAT WE NOTIFY YOU IN WRITING OF THE AVAILABILITY OF AN INVESTOR BROCHURE THAT INCLUDES INFORMATION DESCRIBING THE FINRA'S PUBLIC DISCLOSURE PROGRAM ('PROGRAM'). TO OBTAIN A BROCHURE OR MORE INFORMATION ABOUT THE PROGRAM OR FINRA, CONTACT THE FINRA PROGRAM HOTLINE AT (800) 289-9999 OR ACCESS THE FINRA WEB SITE AT www.finrabrokercheck.com*

**\* End of Statement \***



Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

NDV INVESTMENT COMPANY
SUITE 4 TEMPLE BUILDING MAIN & PRINCE
WILLIAM STREET
CHARLESTOWN_NEVIS

### Account Information

Account Number:    38004503
Financial Advisor #:  Y321

### Your Financial Advisor

**TRADEWALL STREET
FINANCIAL**

### Statement Period

**Jan. 1, 2011 to Jan. 31, 2011**

### Office Serving You

**1101 Pennsylvania Avenue
Suite 600
Washington D.C.  20004
(202) 449-7260**

## Account Value Summary

|  |  | Local Currency | Exchange Rate | Base Currency (USD) |
|---|---|---|---|---|
| USD | Margin Account Balance | 0.00 | | 0.00 |
| USD | Money Fund Balance | 33,486.73 | | 33,486.73 |
| USD | **TOTAL ACCOUNT VALUE** | **33,486.73** | **1.0000** | **33,486.73** |
| PLN | No Value To Report | 0.00 | | 0.00 |
| PLN | **TOTAL ACCOUNT VALUE** | **0.00** | **0.3487** | **0.00** |
| | **GRAND TOTAL ( USD EQUIVALENT)** | | | **33,486.73** |

ACCOUNT VALUES ARE BASED ON PRICED SECURITIES. WE  MAY BE UNABLE TO PRICE ALL SECURITIES IN YOUR ACCOUNT.  FOR SOME OTHER FIXED INCOME SECURITIES, PRICES ARE APPROXIMATE
(NOT ACTUAL MARKET BIDS) AND ARE PROVIDED ONLY AS A GENERAL GUIDE.  THEY  DO NOT NECESSARILY REFLECT ACTUAL MARKET PRICES.

# TradeWallStreet
## FINANCIAL

1101 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

| Account Information | | Statement Period |
|---|---|---|
| | | **January 1, 2011 to January 31, 2011** |

NDV INVESTMENT COMPANY
SUITE 4 TEMPLE BUILDING MAIN & PRINCE
WILLIAM STREET
CHARLESTOWN_NEVIS

**Account Information**
Account Number:     38004503
Financial Advisor #:     Y321

**Your Financial Advisor**
TRADEWALL STREET FINANCIAL
(202) 449-7260

**Office Serving You**
1101 Pennsylvania Avenue
Suite 600
Washington D.C.  20004
(202) 449-7260

## Account Value

| Asset Category | Current Value 01/31/11 | Prior Value 12/31/10 | Percent of Acct Assets | Estimated Annual Income | Estimated Current Yield |
|---|---|---|---|---|---|
| Margin Account Balance | 0.00 | 0.00 | | | |
| Money Fund Balance | 33,486.73 | 33,486.64 | 100.00% | 0.67 | |
| **Total: Portfolio Values** | **33,486.73** | **33,486.64** | **100.00%** | **0.67** | |
| **Total Account Value** | **33,486.73** | **33,486.64** | **100.00%** | **0.67** | |

## Asset Allocation



CASH + MNYMKT
100.00%

## Income Summary

| | This Period | Year to Date |
|---|---|---|
| **Money Fund Dividends - Tax Exempt** | 0.09 | 0.09 |
| **Total: Income** | **0.09** | **0.09** |

The Account of the Customer is subject to the following terms and conditions ("Agreement") which the Customer agrees to and accepts by use, maintenance and/or continuation of the Account notwithstanding any notice or statement of intention to You to the contrary.

**1. Definitions.** "Account" shall refer individually and collectively to all accounts which the Customer has previously opened, now has open or may open in the future, in which the Customer has any interest, with You or any Introducing Broker, and any and all previous, current and future transactions in such accounts. "Customer" refers to the individual(s) and/or entity(ies) in whose name the Account referenced on the face of this Account statement is carried or who may otherwise have any interest in an Account. "Introducing Broker" means any brokerage firm which introduces securities transactions on behalf of the Customer, which transactions are cleared through You, whether one or more. "Obligations" means all indebtedness, debit balances, liabilities or other obligations of any kind of the Customer to You, whether now existing or hereafter arising. "Securities or other Property" shall mean all money, securities, commodities or other property of every kind and nature and all contracts and options relating thereto, whether for present or future delivery. "You" or "Your" refers to Penson Financial Services, Inc.

**2. Payment of Indebtedness Upon Demand.** The Customer shall at all times be liable for the payment upon demand of any Obligations owing from the Customer to You, and Customer shall be liable to You for any deficiency remaining in any Account in the event of the liquidation thereof, in whole or in part, by You, the Introducing Broker, or by the Customer, and the Customer shall pay such Obligations upon demand.

**3. Security Interest; Liquidation.** All Securities or other property now or hereafter held, carried or maintained by You in or for the Account shall be subject to a first and prior lien and security interest for the discharge of all of the Obligations of the Customer and are to be held by You as security for the payment of the Obligations of the Customer to You, to the fullest extent allowed by law. You shall have the right to transfer Securities or other Property so held by You from or to any Account of the Customer whenever You so determine. Whenever the Customer does not, on or before the settlement date, pay in full for any Securities or other Property purchased for the Account of the Customer, or deliver any Securities or other Property sold for such Account, or if any other Obligations of the Customer to You are unpaid, You are authorized (a) until payment or delivery is made, to pledge, repledge, hypothecate or rehypothecate, without notice, any and all Securities or other Property which You may hold for the Customer (either individually or jointly with others), separately or in common with other Securities or other Property, for the sum then due or for a greater or lesser sum and without retaining in your possession and control for delivery a like amount of similar Securities or other Property; (b) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (c) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (d) to buy any or all Securities or other Property which may be short in such Account; and/or (a) to cancel any open orders and to close any or all outstanding contracts; all without notice of sale or purchase, or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein. You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed. Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account. You are authorized, in Your discretion, should You for any reason whatsoever deem it necessary for Your protection, without notice, to cancel any outstanding order, to close out the Account of the Customer, in whole or in part, or to close out any commitment made on behalf of the Customer.

**4. Lending Agreement; Margin or Short Accounts.** With respect to any margin or short Account maintained by the Customer, You are authorized to lend to yourself, as principal or otherwise, or to others, any Securities or other Property held by You on margin for any Account or as collateral therefor either separately or without other securities. The Customer will at all times maintain such Securities or other Property in the Account of the Customer for margin and/or maintenance purposes as required by You in Your sole discretion, on demand, in accordance with Your general policies regarding margin and maintenance requirements, as such may be modified from time to time, or at other times as You may require, and will be charged, in accordance with Your usual custom or as otherwise determined by You with interest at rates permitted by the laws of the State of Texas. With respect to any margin or short Account of the Customer, You shall have the right at any time and from time to time, in accordance with Your general policies regarding Your margin or maintenance requirements, short Accounts or Accounts in general, as such may be modified from time to time, or at an earlier Point in time than called for by said general policies, in the event that You feel insecure with respect to the Customer's account for any reason in Your sole discretion: (a) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (b) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (c) to buy any or all Securities or other Property which may be short in such Account, and/or (d) to cancel any open orders and to close any or all outstanding contracts; all without demand for margin or additional margin, notice of sale or purchase or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein. You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed. Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account.

**5. Account Carried as Clearing Broker.** The Customer understands that You are carrying the Account of the Customer as clearing broker by arrangement with the Customer's Introducing Broker through whose courtesy the Account of the Customer has been introduced to You. The Customer understands that You act as custodian for funds and securities deposited with You, through the Customer's Introducing Broker, or as a result of transactions You may process for the Customer's Account. Inquiries regarding the Customer's Account or the activity therein should be directed to the Introducing Broker. If Customer is unable to reach the Introducing Broker concerning account activity, or a complaint, Customer may contact Penson at 1700 Pacific Avenue, Suite 1400, Dallas, TX  75201, (214) 765-1100, and speak with the Compliance Department. The Customer understands that the Introducing Broker and not You, is responsible for compliance with all applicable laws and regulations in connection with the Customer's Account. Until receipt by You from the Customer of written notice to the contrary, you may accept and rely upon from such Introducing broker and its representatives employees and other agents, without any inquiry or investigation by You: (a) orders for the purchase or sale in the Customer's Account of Securities or other Property, and (b) any other instructions concerning the Customer's Account. The

**(continued)**
Customer understands that You act only to clear trades introduced by the Customer's Introducing Broker and to effect other back office functions for the Customer's Introducing Broker. The Customer confirms to You that the Customer is relying for any advice concerning the Customer's Account solely on the Customer's Introducing Broker. The Customer understands that You are not a principal of or partner with and do not control in any way, the Introducing Broker or its representatives, employees or other agents. The Customer understands that You will not review the Customer's account and will have no responsibility for trades made in the Customer's Account. The Customer agrees that You shall not be responsible or liable for any acts or omissions of the Introducing Broker or its representatives, employees or other agents.

**THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN CONJUNCTION WITH THESE DISCLOSURES:**

a.   ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORM IN WHICH A CLAIM IS FILED;

b.   ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING; A PARTY'S ABILITY TO HAVE A COURT REVERSE OR MODIFY AN ARBITRATION AWARD IS VERY LIMITED.

c.   THE ABILITY OF THE PARTIES TO OBTAIN DOCUMENTS, WITNESS STATEMENTS AND OTHER DISCOVERY IS GENERALLY MORE LIMITED IN ARBITRATION THAN IN COURT PROCEEDINGS;

d.   THE ARBITRATORS DO NOT HAVE TO EXPLAIN THE REASON(S) FOR THEIR AWARD.

e.   THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

f.   THE RULES OF SOME ARBITRATION FORUMS MAY IMPOSE TIME LIMITS FOR BRINGING A CLAIM IN ARBITRATION. IN SOME CASES, A CLAIM THAT IS INELIGIBLE FOR ARBITRATION MAY BE BROUGHT IN COURT.

g.   THE RULES OF THE ARBITRATION FORUM IN WHICH THE CLAIM IS FILED, AND ANY AMENDMENTS THERETO, SHALL BE INCORPORATED INTO THIS AGREEMENT.

**6. ARBITRATION AGREEMENT.** ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE UNDERSIGNED AND YOU, OR THE INTRODUCING BROKER, OR THE AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS OF YOU OR THE INTRODUCING BROKER, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S BUSINESS OR THE UNDERSIGNED'S ACCOUNTS, SHALL BE CONDUCTED PURSUANT TO THE CODE OF ARBITRATION PROCEDURE OF THE FINRA. ARBITRATION MUST BE COMMENCED BY SERVICE OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE. THE DECISION AND AWARD OF THE ARBITRATOR (S) SHALL BE CONCLUSIVE AND BINDING UPON ALL PARTIES, AND ANY JUDGMENT UPON ANY AWARD RENDERED MAY BE ENTERED IN A COURT HAVING JURISDICTION THEREOF, AND NEITHER PARTY SHALL OPPOSE SUCH ENTRY.

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is de-certified; or (iii) the customer is excluded from the class by the court.  Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

**7. Other Agreements; Option Transactions, Charges.** The Customer agrees to be bound by the terms of Your Customer Account Agreement. If the Customer trades on margin or has short positions, the Customer agrees to be bound by the terms of Your Customer Margin and Short Account Agreement. If the Customer trades any options, the customer agrees to be bound by the terms of your Customer Option Agreement. If this is a joint Account, the Customers agree to be bound by Your Joint Account Agreement. The Customer understands that copies of these agreements are available from You and, to the extent applicable, are incorporated by reference herein. The terms of these other agreements are in addition to the provisions of this Agreement and any other written agreements between You and the Customer. You may charge the Customer Account maintenance fees, security transfer fees and account transfer fees, and other charges or fees as agreed between You and the Customer's Introducing Broker or as Independently established by You.

**8. Option Account.** Assignment notices for option contracts are allocated among client short positions pursuant to a manual procedure which randomly selects from all client short option positions, including positions established on the day of assignment, those contracts which are subject to exercise.  All American short option positions are subject to assignment at any time.  A more detailed description of Your random allocation procedure is available upon request.  In accordance with the Customer Option Agreement, if applicable, the Customer must promptly notify the Introducing Broker of any change in the Customer's objectives or financial situation.  Individual options commissions and other related charges have been included in the Customer's Confirmation; however, a summary of this information will be made available to the Customer upon request.  The customer must promptly advise the introducing broker of any material change in the customer's investment objectives or financial situation.

**9. Miscellaneous.** Customer's financial statement is available for personal inspection or will be mailed to the Customer's request. The headings of each section of the Agreement are descriptive only and do not modify or qualify any provision of this Agreement.  Except as provided in this Agreement, no provision of this Agreement may be altered, modified or amended unless in writing signed by Your authorized representative.  This Agreement and all provisions shall inure to the benefit of You and Your successors, Your assigns, the Customer's Introducing Broker, and all other persons specified in Paragraph 6 above.  With respect to any Account balance included on the Account statement, such funds are not segregated and may be used in Your business, subject to the limitations of 17 CFR Section 240.15c3-3 of the Securities Exchange Act of 1934.  The Customer may receive these funds in the normal course of business following demand to You. You shall not be liable for losses caused directly or indirectly by any events beyond Your reasonable control.  The costs and expenses of collection of the debit balance and any unpaid deficiency in the Account of the Customer with You, including but not limited to reasonable attorneys' fees and expenses, incurred and payable or paid by You shall be payable to You by the Customer.  The estimated annual income, estimated current yield, and market value calculations are estimates only, and have been obtained or prepared from sources You consider to be reliable, but You make no assurance as to their accuracy.

# TradeWallStreet
**F I N A N C I A L**

104 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

## Statement of Account

| Account Information | | Statement Period |
|---|---|---|
| Account Number: | 38004503 | January 1, 2011 to January 31, 2011 |

NDV INVESTMENT COMPANY
SUITE 4 TEMPLE BUILDING MAIN & PRINCE
WILLIAM STREET
CHARLESTOWN_NEVIS

## Portfolio Positions

| Cash & Equivalents | Symbol/ Cusip | Account Type | Quantity | Current Price | Current Value | Percent of Acct Assets | Estimated Annual Income | Estimated Current Yield |
|---|---|---|---|---|---|---|---|---|
| Money Market Fund | | MoneyFund | | 1.00 | 33,486.73 | 100.00 | | .67 |
| Total: Cash & Equivalents | | | | | 33,486.73 | 100.00 | | .67 |
| Total: Account Net Assets/Equity | | | | | 33,486.73 | 100.00 | | .67 |

*Account value and totals are based only on priced securities. We may be unable to price all securities in your account. For municipal securities and some other fixed income securities, prices are approximate (not actual market bids) and are provided only as a general guide. They do not necessarily reflect actual market prices. For current prices, please contact your financial consultant.*

## Account Activity

| R&T Daily $ Intl Ltd | Entry/Trade Date | Account Type | Transaction | Quantity | Description | | Price | Amount |
|---|---|---|---|---|---|---|---|---|
| | | MoneyFund | | | OPENING BALANCE | | | 33,486.64 |
| | 01/31/11 | MoneyFund | Money Fund Dividends | | .00200%01/01-01/31 | 33486 | | .09 |
| Total: Reich & Tang Daily $$ Int'l Ltd | | | | | | | | 33,486.73 |

# TradeWallStreet
**F I N A N C I A L**

104 Pennsylvania Ave.
Suite 600
Washington, DC 20004
(202) 449-7260

## Statement of Account

| | | |
|---|---|---|
| **NDV INVESTMENT COMPANY** | **Account Information** | **Statement Period** |
| SUITE 4 TEMPLE BUILDING MAIN & PRINCE | Account Number:     38004503 | January 1, 2011 to January 31, 2011 |
| WILLIAM STREET | | |
| CHARLESTOWN_NEVIS | | |

*Settled Trades Summary:*

| | | | |
|---|---|---|---|
| *TOTAL PURCHASED (USD):* | 0.00 | *TOTAL SHARES PURCHASED:* | 0.00 |
| *TOTAL SOLD (USD):* | 0.00 | *TOTAL SHARES SOLD:* | 0.00 |

*Pursuant to an agreement, a portion of each transaction fee or commission compensates brokerage firm, broker, advisor, finder, or foreign associate.*

*TWS FINANCIAL, LLC ANNUAL 2011-2012 MARGIN DISCLOSURE STATEMENT*

*We are furnishing this document to you to provide some basic facts about purchasing securities on margin, and to alert you to the risks involved with trading securities in a margin account. Before trading stocks in a margin account, you should carefully review the margin agreement provided by your broker. Consult your broker regarding any questions or concerns you may have with your margin accounts.*

*When you purchase securities, you may pay for the securities in full or you may borrow part of the purchase price from you brokerage firm. If you choose to borrow funds from your firm, you will open a margin account with the firm. The securities purchased are the firm's collateral for the loan to you. If the securities in your account decline in value, so does the value of the collateral supporting your loan, and as a result, the firm can take action, such as issue a margin call and/or sell securities in your account, in order to maintain the required equity in the account. It is important that you fully understand the risks involved in trading securities on margin. These risks include the following:*

*_    You can lose more funds than you deposit in the margin account. A decline in the value of the securities that are purchased on margin may require you to provide additional funds to the firm that has made the loan to avoid the forced sale of those securities or other securities in your account.*
*_    The firm can force the sale of securities in your account. If the equity in your account falls below the maintenance margin requirements under the law, or the firm's higher house requirements, the firm can sell the securities in your account to cover the margin deficiency. You will be responsible for any shortfall in the account after such a sale.*
*_    The firm can sell your securities without contacting you. Some investors mistakenly believe that a firm must contact them for a margin call to be valid, and that the firm cannot liquidate securities in their accounts to meet the call unless the firm has contacted them first. This is not the case. Most firms will attempt to notify their customers of margin calls, but they are not required to do so. However, even if a firm has contacted a customer and provided a specific date by which the customer can meet a margin call, the firm can still take necessary steps to protect its financial interest, including immediately selling the securities without notice to the customer.*
*_    You are not entitled to choose which security in your margin account is liquidated or sold to meet a margin call. Because the securities are collateral for the margin loan, the firm has the right to decide which security to sell in order to protect its interests.*
*_    The firm can increase its house maintenance margin requirement at any time and is not required to provide you advance written notice. These changes in firm policy often take effect immediately and may result in the issuance of a maintenance margin call. Your failure to satisfy the call may cause the member to liquidate or sell securities in your account.*
*_    You are not entitled to an extension of time on a margin call. While an extension of time to meet margin requirements may be available to customers under certain conditions, a customer does not have a right to the extension.*

*TWS FINANCIAL, LLC ANNUAL 2011-2012 DAY TRADING RISK DISCLOSURE STATEMENT RULE 2361*

*You should consider the following points before engaging in a day-trading strategy. For purposes of this notice, a "day-trading strategy" means an overall trading strategy characterized by the regular transmission by a customer of intra-day orders to effect both purchase and sale transactions in the same security or securities.*

**Trade Wall Street**
F I N A N C I A L

L104 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

**Statement of Account**

NDV INVESTMENT COMPANY
SUITE 4 TEMPLE BUILDING MAIN & PRINCE
WILLIAM STREET
CHARLESTOWN_NEVIS

| Account Information | |
| --- | --- |
| Account Number: | 38004503 |

| Statement Period |
| --- |
| January 1, 2011 to January 31, 2011 |

*Day trading can be extremely risky. Day trading generally is not appropriate for someone of limited resources and limited investment or trading experience and low risk tolerance. You should be prepared to lose all of the funds that you use for day trading. In particular, you should not fund day-trading activities with retirement savings, student loans, second mortgages, emergency funds, funds set aside for purposes such as education or home ownership, or funds required to meet your living expenses. Further, certain evidence indicates that an investment of less than $50,000 will significantly impair the ability of a day trader to make a profit. Of course, an investment of $50,000 or more will in no way guarantee success.*

*Be cautious of claims of large profits from day trading. You should be wary of advertisements or other statements that emphasize the potential for large profits in day trading. Day trading can also lead to large and immediate financial losses.*

*Day trading requires knowledge of securities markets. Day trading requires in-depth knowledge of the securities markets and trading techniques and strategies. In attempting to profit through day trading, you must compete with professional, licensed traders employed by securities firms. You should have appropriate experience before engaging in day trading.*

*Day trading requires knowledge of a firm's operations. You should be familiar with the securities firm's business practices, including the operation of the firm's order execution systems and procedures. Under certain market conditions, you may find it difficult or impossible to liquidate a position quickly at a reasonable price. This can occur, for example, when the market for a stock suddenly drops, or if trading is halted due to recent news events or unusual trading activity. The more volatile a stock is, the greater the likelihood that problems may be encountered in executing a transaction. In addition to normal market risks, you may experience losses due to system failures.*

*Day trading will generate substantial commissions, even if the per trade cost is low. Day trading involves aggressive trading, and generally you will pay commissions on each trade. The total daily commissions that you pay on your trades will add to your losses or significantly reduce your earnings. For instance, assuming that a trade costs $16 and an average of 29 transactions are conducted per day, an investor would need to generate an annual profit of $111,360 just to cover commission expenses.*

*Day trading on margin or short selling may result in losses beyond your initial investment. When you day trade with funds borrowed from a firm or someone else, you can lose more than the funds you originally placed at risk. A decline in the value of the securities that are purchased may require you to provide additional funds to the firm to avoid the forced sale of those securities or other securities in your account. Short selling as part of your day-trading strategy also may lead to extraordinary losses, because you may have to purchase a stock at a very high price in order to cover a short position.*

*Potential Registration Requirements: Persons providing investment advice for others or managing securities accounts for others may need to register as either an "Investment Advisor" under the Investment Advisors Act of 1940 or as a "Broker" or "Dealer" under the Securities Exchange Act of 1934. Such activities may also trigger state registration requirements.*

*TWS FINANCIAL, LLC ANNUAL 2011-2012 MARKET VOLATILITY AND TRADING PLATFORMS NOTICE*

*All trades are executed through Trade Wall Street Financial, Member of the FINRA and SIPC. Our clearing firm is Penson Financial Services. For more information, go to www.penson.com.*

*System response, trade executions and account access may be affected by market conditions, system performance, quote delays and other factors. The risk of loss in electronic trading can be substantial. You should therefore consider whether such trading is suitable for you in light of your financial resources. Money Market Funds are not FDIC Insured. Read our Risk Disclosures.*

# Trade Wall Street
**F I N A N C I A L**

1101 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

---

NDV INVESTMENT COMPANY
SUITE 4 TEMPLE BUILDING MAIN & PRINCE
WILLIAM STREET
CHARLESTOWN_NEVIS

**Account Information**

Account Number:    38004503

**Statement Period**

**January 1, 2011 to January 31, 2011**

---

*After-Hours Trading*

*There is no assurance that trades will be executed after the market closes.*

*Loss of Principal*

*Beware of the risk of trading.  Trading stocks and other investments are subject to fluctuations in value and possibly entire loss of principal.*

*TWS FINANCIAL, LLC ANNUAL 2011-2012 PRIVACY NOTICE*

*Trade Wall Street Financial is committed to protecting confidentiality of the information furnished to us by our clients.  We are providing you this information as required by Regulation S-P adopted by the Securities and Exchange Commission.*

*Information about You that We Collect*

*We collect non-public personal information about you from the following sources: information we receive from you on applications or other forms or through our Web Site and information we receive from a consumer-reporting agency.*

*Our Use of Information about You*

*Trade Wall Street Financial does not share your non-public personal information with any unaffiliated third parties with whom we have no contractual business relationships, unless:*
*- You give us written permission*
*- It is vital to completing a transaction for your account*
*- It is required by law to protect us against fraud or to comply with a subpoena or other court order.*
*We do not sell information about you to outside unaffiliated companies.*

*Trade Wall Street Financial has policies that restrict access to non-public personal information about you to those employees who have need for that information to provide investment alternatives or services to you, or to employees who assist those who provide investment alternatives or services to you.  We maintain physical, electronic, and procedural safeguards to protect your non-public personal information.*

*TWS FINANCIAL, LLC ANNUAL 2011-2012 SIPC NOTICE*

*All accounts are SIPC Protected for $500,000 Securities, including $100,000 claims for Cash.  Penson Financial Services, Inc. (PFSI) has also acquired "Excess SIPC" insurance from a third party insurer to protect client accounts up to their net equity for loss of securities and cash held at Penson Financial Services, Inc. (PFSI).  This "Excess SIPC" protection is in addition to the protection provided by the Securities and Investors Protection Act, which is administered by SIPC, and is subject to certain conditions and limitations, details of which are available upon request.  The above coverage does not protect against loss of the market value of securities.*

# TradeWallStreet
### F I N A N C I A L

1101 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

**Statement of Account**

---

**NDV INVESTMENT COMPANY**
**SUITE 4 TEMPLE BUILDING MAIN & PRINCE**
**WILLIAM STREET**
**CHARLESTOWN_NEVIS**

**Account Information**

Account Number:          38004503

**Statement Period**

January 1, 2011 to January 31, 2011

## ACCOUNT REVIEW

*It is always the client's responsibility to review their investment accounts on a routine basis.  If there are any discrepancies of any kind, including but not limited to: current equity, buying power, or positions, the client must contact Trade Wall Street Financial prior to acting on any information that does not match.  Also, if you ever believe for any reason that anything is incorrect in your account, please make sure you always contact us before acting.  If a client acts before contacting us to verify the validity of their account information or fails to review their account on a daily basis, any issues that arise as a result of not reviewing their information or contacting our firm in a timely manner will be solely the client's responsibility.*

*It is also the client's responsibility to review all their open orders daily, especially if you are placing GTC (good till canceled) orders.  If you believe you had an order that for some reason is not showing on your software or have any other issues or problems with any orders, you will need to contact us immediately.  You will be responsible for this daily review of your open orders.  Any issues caused by the failure to do this review and to contact us in a timely manner to resolve any discrepancies will be solely the client's responsibility.*

## SHORT SALES

*The term 'short sale' means any sale of a security, which the seller does not own, or any sale, which is consummated by the delivery of a security, borrowed by, or for the account of the seller.  For stocks hard to borrow, short sales must be preceded by a request to Trade Wall Street Financial to make sure stocks can be borrowed.  We will then contact the Penson Stock Loan Department to ensure the availability of the stock.  If approval is granted by the Penson Stock Loan Department, Trade Wall Street Financial will inform you that the stock can be sold short.  If approval is not received, the security in question cannot be shorted.  If you short a stock that has not been located, the transaction may be cancelled and you will be responsible for any losses incurred.  Short sales made on stocks not located will result in a buy-in.  All trades that violate these rules will be put into TWS Financial's error account.  All losses will be charged back to your account.  You will not receive any profit from these trades as they are illegally gained.  Repeated violations of these rules can result in your account being closed.  Assuming the security in question can be shorted, the short sale must take place as 'sell short'.  If the trader uses a sell to place a short sale or over-sells a position, it is possible that the trade will be executed illegally.  This is a violation of FINRA and SEC rules.  The trader is responsible to cover any illegal position immediately with a corresponding buy.  These corrections must be reported via e-mail to Trade Wall Street Financial at the end of the trading day.*

*It is your responsibility to review your confirmations and statements upon receipt or when they are made available electronically.  Transactions shall be conclusive and binding upon you if no written objection is made to PFSI (within 10 days after available).  In all cases PFSI reserves the right to determine the validity of any objection to the information contained in the account statement.*

*Securities Investor Protection Corporation ("SIPC") does not cover commodity contracts and options on futures.  For information about SIPC or to request a SIPC brochure, please see www.sipc.org or contact SIPC at (202) 371-8300.*

*DPP and REIT securities are generally illiquid and the estimated value of these securities may not be realized upon liquidation of the security. The value of the security will differ from the purchase price.  In the event valuations are provided, they will be based upon estimated values obtained from the issuer's annual report.  However, in some cases accurate valuation information is not available and will not be provided.*

*FINRA Rule 2340 requires that we advise you to promptly report any inaccuracy or discrepancy in your account to your brokerage firm and clearing firm (where these are different firms) and to re-confirm any oral communications in writing.
http://www.finra.org/web/groups/rules_regs/documents/notice_to_members/p018130.pdf*

*When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction.  When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day your payment is received, and you will not receive your check back from your financial institution.  Please contact your broker if you have questions about electronic check collection or do not want your payments collected electronically.*

# Trade**Wall**Street
**F I N A N C I A L**

1101 Pennsylvania Ave.
Suite 600
Washington, DC 20004
(202) 449-7260

## Statement of Account

---

**NDV INVESTMENT COMPANY**
**SUITE 4 TEMPLE BUILDING MAIN & PRINCE**
**WILLIAM STREET**
**CHARLESTOWN_NEVIS**

**Account Information**

Account Number:     **38004503**

**Statement Period**

**January 1, 2011 to January 31, 2011**

---

*Pursuant to SEC Rule 606, Penson Financial Services, Inc. is required to make publicly available a quarterly report with regard to its routing of non-directed orders. For the purpose of this Rule, we have entered into an agreement with Quantum5 Market Surveillance (a Division of S3 Matching Technologies) to disclose all required information pertaining to this rule. This information can be accessed on the internet at: ftp://public.s3.com/11ac1-6/pfsi, or a written copy will be furnished at no cost upon request via telephone to 214-765-1009 or email to cs@penson.com.*

*SEC Rule 606(b) requires a broker-dealer to disclose to its customers, upon request, "the identity of the venue to which the customer's orders were routed for execution in the six months prior to the request, whether the orders were directed orders or non-directed orders, and the time of the transactions, if any, that resulted from such orders."*

*FINRA REQUIRES THAT WE NOTIFY YOU IN WRITING OF THE AVAILABILITY OF AN INVESTOR BROCHURE THAT INCLUDES INFORMATION DESCRIBING THE FINRA'S PUBLIC DISCLOSURE PROGRAM ('PROGRAM'). TO OBTAIN A BROCHURE OR MORE INFORMATION ABOUT THE PROGRAM OR FINRA, CONTACT THE FINRA PROGRAM HOTLINE AT (800) 289-9999 OR ACCESS THE FINRA WEB SITE AT www.finrabrokercheck.com*

**\* End of Statement \***



Trade**Wall**Street
FINANCIAL

Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

NDV INVESTMENT COMPANY
SUITE 4 TEMPLE BUILDING MAIN & PRINCE
WILLIAM STREET
CHARLESTON
ST KITTS & NEV

### Account Information

Account Number:    38004503
Financial Advisor #:   Y321

### Your Financial Advisor

**TRADEWALL STREET
FINANCIAL**

### Statement Period

**June 1, 2011 to June 30, 2011**

### Office Serving You

**1101 Pennsylvania Avenue
Suite 600
Washington D.C.  20004
(202) 449-7260**

## Account Value Summary

|  |  | Local Currency | Exchange Rate | Base Currency (USD) |
|---|---|---|---|---|
| USD | Money Fund Balance | 0.00 |  | 0.00 |
| USD | Margin Loan Balance | 0.00 |  | 0.00 |
| USD | **TOTAL ACCOUNT VALUE** | **0.00** | **1.0000** | **0.00** |
| PLN | No Value To Report | 0.00 |  | 0.00 |
| PLN | **TOTAL ACCOUNT VALUE** | **0.00** | **0.3642** | **0.00** |
| | **GRAND TOTAL ( USD EQUIVALENT)** | | | **0.00** |

ACCOUNT VALUES ARE BASED ON PRICED SECURITIES. WE  MAY BE UNABLE TO PRICE ALL SECURITIES IN YOUR ACCOUNT.  FOR SOME OTHER FIXED INCOME SECURITIES, PRICES ARE APPROXIMATE
(NOT ACTUAL MARKET BIDS) AND ARE PROVIDED ONLY AS A GENERAL GUIDE.  THEY  DO NOT NECESSARILY REFLECT ACTUAL MARKET PRICES.

# TradeWallStreet
## FINANCIAL

1101 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

NDV INVESTMENT COMPANY
SUITE 4 TEMPLE BUILDING MAIN & PRINCE
WILLIAM STREET
CHARLESTON
ST KITTS & NEV

### Account Information

| Account Number: | 38004503 |
|---|---|
| Financial Advisor #: | Y321 |

### Your Financial Advisor

TRADEWALL STREET FINANCIAL
(202) 449-7260

### Statement Period

**June 1, 2011 to June 30, 2011**

### Office Serving You

1101 Pennsylvania Avenue
Suite 600
Washington D.C.  20004
(202) 449-7260

## Account Value

| Asset Category | Current Value 06/30/11 | Prior Value 05/31/11 | Percent of Acct Assets | Estimated Annual Income | Estimated Current Yield |
|---|---|---|---|---|---|
| Money Fund Balance | 0.00 | 0.00 | | | |
| **Total: Portfolio Values** | **0.00** | **0.00** | | | |
| Less:  Margin Loan Balance | 0.00 | (6.97) | | | |
| **Total Account Value** | **0.00** | **(6.97)** | | | |

## Asset Allocation

## Income Summary

| | This Period | Year to Date |
|---|---|---|
| **Money Fund Dividends - Tax Exempt** | 0.00 | 0.11 |
| **Margin Interest** | 0.00 | (6.99) |
| **Total: Income** | **0.00** | **(6.88)** |

The Account of the Customer is subject to the following terms and conditions ("Agreement") which the Customer agrees to and accepts by use, maintenance and/or continuation of the Account notwithstanding any notice or statement of intention to You to the contrary.

**1.    Definitions.**  "Account" shall refer individually and collectively to all accounts which the Customer has previously opened, now has open or may open in the future, in which the Customer has any interest, with You or any Introducing Broker, and any and all previous, current and future transactions in such accounts. "Customer" refers to the individual(s) and/or entity(ies) in whose name the Account referenced on the face of this Account statement is carried or who may otherwise have any interest in an Account. "Introducing Broker" means any brokerage firm which introduces securities transactions on behalf of the Customer, which transactions are cleared through You, whether one or more.  "Obligations" means all indebtedness, debit balances, liabilities or other obligations of any kind of the Customer to You, whether now existing or hereafter arising. "Securities or other Property" shall mean all money, securities, commodities or other property of every kind and nature and all contracts and options relating thereto, whether for present or future delivery.  "You" or "Your" refers to Penson Financial Services, Inc.

**2.    Payment of Indebtedness Upon Demand.**  The Customer shall at all times be liable for the payment upon demand of any Obligations owing from the Customer to You, and Customer shall be liable to You for any deficiency remaining in any Account in the event of the liquidation thereof, in whole or in part, by You, the Introducing Broker, or by the Customer, and the Customer shall pay such Obligations upon demand.

**3.    Security Interest; Liquidation.**  All Securities or other property now or hereafter held, carried or maintained by You in or for the Account shall be subject to a first and prior lien and security interest for the discharge of all of the Obligations of the Customer and are to be held by You as security for the payment of the Obligations of the Customer to You, to the fullest extent allowed by law.  You shall have the right to transfer Securities or other Property so held by You from or to any Account of the Customer whenever You so determine. Whenever the Customer does not, on or before the settlement date, pay in full for any Securities or other Property purchased for the Account of the Customer, or deliver any Securities or other Property sold for such Account, or if any other Obligations of the Customer to You are unpaid, You are authorized (a) until payment or delivery is made, to pledge, repledge, hypothecate or rehypothecate, without notice, any and all Securities or other Property which You may hold for the Customer (either individually or jointly with others), separately or in common with other Securities or other Property, for the sum then due or for a greater or lesser sum and without retaining in your possession and control for delivery a like amount of similar Securities or other Property; (b) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (c) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (d) to buy any or all Securities or other Property which may be short in such Account; and/or (a) to cancel any open orders and to close any or all outstanding contracts; all without notice of sale or purchase, or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein. You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed.  Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account. You are authorized, in Your discretion, should You for any reason whatsoever deem it necessary for Your protection, without notice, to cancel any outstanding order, to close out the Account of the Customer, in whole or in part, or to close out any commitment made on behalf of the Customer.

**4.    Lending Agreement; Margin or Short Accounts.**  With respect to any margin or short Account maintained by the Customer, You are authorized to lend to yourself, as principal or otherwise, or to others, any Securities or other Property held by You on margin for any Account or as collateral therefor either separately or without other securities. The Customer will at all times maintain such Securities or other Property in the Account of the Customer for margin and/or maintenance purposes as required by You in Your sole discretion, on demand, in accordance with Your general policies regarding margin and maintenance requirements, as such may be modified from time to time, or at other times as You may require, and will be charged, in accordance with Your usual custom or as otherwise determined by You with interest at rates permitted by the laws of the State of Texas.  With respect to any margin or short Account of the Customer, You shall have the right at any time and from time to time, in accordance with Your general policies regarding Your margin or maintenance requirements, short Accounts or Accounts in general, as such may be modified from time to time, or at an earlier Point in time than called for by said general policies, in the event that You feel insecure with respect to the Customer's account for any reason in Your sole discretion: (a) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (b) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (c) to buy any or all Securities or other Property which may be short in such Account, and/or (d) to cancel any open orders and to close any or all outstanding contracts; all without demand for margin or additional margin, notice of sale or purchase or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein. You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed. Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account.

**5.    Account Carried as Clearing Broker.**  The Customer understands that You are carrying the Account of the Customer as clearing broker by arrangement with the Customer's Introducing Broker through whose courtesy the Account of the Customer has been introduced to You.  The Customer understands that You act as custodian for funds and securities deposited with You, through the Customer's Introducing Broker, or as a result of transactions You may process for the Customer's Account.  Inquiries regarding the Customer's Account or the activity therein should be directed to the Introducing Broker.  If Customer is unable to reach the Introducing Broker concerning account activity, or a complaint, Customer may contact Penson at 1700 Pacific Avenue, Suite 1400, Dallas, TX 75201, (214) 765-1100, and speak with the Compliance Department.  The Customer understands that the Introducing Broker and not You, is responsible for compliance with all applicable laws and regulations in connection with the Customer's Account. Until receipt by You from the Customer of written notice to the contrary, you may accept and rely upon from such Introducing broker and its representatives employees and other agents, without any inquiry or investigation by You: (a) orders for the purchase or sale in the Customer's Account of Securities or other Property, and (b) any other instructions concerning the Customer's Account. The

**(continued)**

Customer understands that You act only to clear trades introduced by the Customer's Introducing Broker and to effect other back office functions for the Customer's Introducing Broker. The Customer confirms to You that the Customer is relying for any advice concerning the Customer's Account solely on the Customer's Introducing Broker. The Customer understands that You are not a principal or partner with and do not control in any way, the Introducing Broker or its representatives, employees or other agents. The Customer understands that You will not review the Customer's account and will have no responsibility for trades made in the Customer's Account. The Customer agrees that You shall not be responsible or liable for any acts or omissions of the Introducing Broker or its representatives, employees or other agents.

THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN CONJUNCTION WITH THESE DISCLOSURES:

**a.**    ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORM IN WHICH A CLAIM IS FILED;
**b.**    ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING; A PARTY'S ABILITY TO HAVE A COURT REVERSE OR MODIFY AN ARBITRATION AWARD IS VERY LIMITED.
**c.**    THE ABILITY OF THE PARTIES TO OBTAIN DOCUMENTS, WITNESS STATEMENTS AND OTHER DISCOVERY IS GENERALLY MORE LIMITED IN ARBITRATION THAN IN COURT PROCEEDINGS;
**d.**    THE ARBITRATORS DO NOT HAVE TO EXPLAIN THE REASON(S) FOR THEIR AWARD.
**e.**    THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.
**f.**    THE RULES OF SOME ARBITRATION FORUMS MAY IMPOSE TIME LIMITS FOR BRINGING A CLAIM IN ARBITRATION. IN SOME CASES, A CLAIM THAT IS INELIGIBLE FOR ARBITRATION MAY BE BROUGHT IN COURT.
**g.**    THE RULES OF THE ARBITRATION FORUM IN WHICH THE CLAIM IS FILED, AND ANY AMENDMENTS THERETO, SHALL BE INCORPORATED INTO THIS AGREEMENT.

**6.    ARBITRATION AGREEMENT.**  ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE UNDERSIGNED AND YOU, OR THE INTRODUCING BROKER, OR THE AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS OF YOU OR THE INTRODUCING BROKER, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S BUSINESS OR THE UNDERSIGNED'S ACCOUNTS, SHALL BE CONDUCTED PURSUANT TO THE CODE OF ARBITRATION PROCEDURE OF THE FINRA.  ARBITRATION MUST BE COMMENCED BY SERVICE OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE. THE DECISION AND AWARD OF THE ARBITRATOR (S) SHALL BE CONCLUSIVE AND BINDING UPON ALL PARTIES, AND ANY JUDGMENT UPON ANY AWARD RENDERED MAY BE ENTERED IN A COURT HAVING JURISDICTION THEREOF, AND NEITHER PARTY SHALL OPPOSE SUCH ENTRY.

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is de-certified; or (iii) the customer is excluded from the class by the court.  Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

**7.    Other Agreements; Option Transactions, Charges.**  The Customer agrees to be bound by the terms of Your Customer Account Agreement.  If the Customer trades on margin or has short positions, the Customer agrees to be bound by the terms of Your Customer Margin and Short Account Agreement.  If the Customer trades any options, the customer agrees to be bound by the terms of your Customer Option Agreement. If this is a joint Account, the Customers agree to be bound by Your Joint Account Agreement. The Customer understands that copies of these agreements are available from You and, to the extent applicable, are incorporated by reference herein.  The terms of these other agreements are in addition to the provisions of this Agreement and any other written agreements between You and the Customer.  You may charge the Customer Account maintenance fees, security transfer fees and account transfer fees, and other charges or fees as agreed between You and the Customer's Introducing Broker or as Independently established by You.

**8.    Option Account.**  Assignment notices for option contracts are allocated among client short positions pursuant to a manual procedure which randomly selects from all client short option positions, including positions established on the day of assignment, those contracts which are subject to exercise.  All American short option positions are subject to assignment at any time.  A more detailed description of Your random allocation procedure is available upon request.  In accordance with the Customer Option Agreement, if applicable, the Customer must promptly notify the Introducing Broker of any change in the Customer's objectives or financial situation.  Individual options commissions and other related charges have been included in the Customer's Confirmation; however, a summary of this information will be made available to the Customer upon request.  The customer must promptly advise the introducing broker of any material change in the customer's investment objectives or financial situation.

**9.    Miscellaneous.**  Customer's financial statement is available for personal inspection or will be mailed on the Customer's request. The headings of each section of the Agreement are descriptive only and do not modify or qualify any provision of this Agreement.  Except as provided in this Agreement, no provision of this Agreement may be altered, modified or amended unless in writing signed by Your authorized representative.  This Agreement and all provisions shall inure to the benefit of You and Your successors, Your assigns, the Customer's Introducing Broker, and all other persons specified in Paragraph 6 above.  With respect to any joint Account of the Customer Account balance included on the Account statement, such funds are not segregated and may be used in Your business, subject to the limitations of 17 CFR Section 240.15c3-3 of the Securities Exchange Act of 1934. The Customer may receive these funds in the normal course of business following demand to You. You shall not be liable for losses caused directly or indirectly by any events beyond Your reasonable control. The costs and expenses of collection of the debit balance and any unpaid deficiency in the Account of the Customer with You, including but not limited to reasonable attorneys' fees and expenses, incurred and payable or paid by You shall be payable to You by the Customer. The estimated annual income, estimated current yield, and market value calculations are estimates only, and have been obtained or prepared from sources You consider to be reliable, but You make no assurance as to their accuracy.

# TradeWallStreet
## FINANCIAL

104 Pennsylvania Ave.
Suite 600
Washington, DC 20004
(202) 449-7260

## Statement of Account

| NDV INVESTMENT COMPANY<br>SUITE 4 TEMPLE BUILDING MAIN & PRINCE<br>WILLIAM STREET<br>CHARLESTON | Account Information | Statement Period |
|---|---|---|
| | Account Number:   38004503 | June 1, 2011 to June 30, 2011 |

### Portfolio Positions

| | Symbol/<br>Cusip | Account<br>Type | Quantity | Current<br>Price | Current Value | Percent of<br>Acct Assets | Estimated<br>Annual Income | Estimated<br>Current Yield |
|---|---|---|---|---|---|---|---|---|
| Total: Portfolio Values | | | | | 0.00 | | | |
| Less: Margin Loan Balance | | Margin | | | 0.00 | | | |
| Total: Account Net Assets/Equity | | | | | 0.00 | | | |

*Account value and totals are based only on priced securities. We may be unable to price all securities in your account. For municipal securities and some other fixed income securities, prices are approximate (not actual market bids) and are provided only as a general guide. They do not necessarily reflect actual market prices. For current prices, please contact your financial consultant.*

### Account Activity

| Margin Account | Entry/Trade Date | Account Type | Transaction | Quantity | Description | Price | Amount |
|---|---|---|---|---|---|---|---|
| | | Margin | | | OPENING BALANCE | | (6.97) |
| | 06/02/11 | Margin | Journal | | WRITE OFF TO REP Y321 | | 6.97 |
| Total: Margin Account Balance | | | | | | | 0.00 |

# TradeWallStreet
### F I N A N C I A L

1101 Pennsylvania Ave.
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

---

**NDV INVESTMENT COMPANY**
**SUITE 4 TEMPLE BUILDING MAIN & PRINCE**
**WILLIAM STREET**
**CHARLESTON**

| Account Information | |
|---|---|
| Account Number: | 38004503 |

| Statement Period |
|---|
| June 1, 2011 to June 30, 2011 |

*Settled Trades Summary:*

| | | | |
|---|---|---|---|
| *TOTAL PURCHASED (USD):* | 0.00 | *TOTAL SHARES PURCHASED:* | 0.00 |
| *TOTAL SOLD (USD):* | 0.00 | *TOTAL SHARES SOLD:* | 0.00 |

*Pursuant to an agreement, a portion of each transaction fee or commission compensates brokerage firm, broker, advisor, finder, or foreign associate.*

*TWS FINANCIAL, LLC ANNUAL 2011-2012 MARGIN DISCLOSURE STATEMENT*

*We are furnishing this document to you to provide some basic facts about purchasing securities on margin, and to alert you to the risks involved with trading securities in a margin account. Before trading stocks in a margin account, you should carefully review the margin agreement provided by your broker. Consult your broker regarding any questions or concerns you may have with your margin accounts.*

*When you purchase securities, you may pay for the securities in full or you may borrow part of the purchase price from you brokerage firm. If you choose to borrow funds from your firm, you will open a margin account with the firm. The securities purchased are the firm's collateral for the loan to you. If the securities in your account decline in value, so does the value of the collateral supporting your loan, and as a result, the firm can take action, such as issue a margin call and/or sell securities in your account, in order to maintain the required equity in the account. It is important that you fully understand the risks involved in trading securities on margin. These risks include the following:*

_    *You can lose more funds than you deposit in the margin account. A decline in the value of the securities that are purchased on margin may require you to provide additional funds to the firm that has made the loan to avoid the forced sale of those securities or other securities in your account.*
_    *The firm can force the sale of securities in your account. If the equity in your account falls below the maintenance margin requirements under the law, or the firm's higher house requirements, the firm can sell the securities in your account to cover the margin deficiency. You will be responsible for any shortfall in the account after such a sale.*
_    *The firm can sell your securities without contacting you. Some investors mistakenly believe that a firm must contact them for a margin call to be valid, and that the firm cannot liquidate securities in their accounts to meet the call unless the firm has contacted them first. This is not the case. Most firms will attempt to notify their customers of margin calls, but they are not required to do so. However, even if a firm has contacted a customer and provided a specific date by which the customer can meet a margin call, the firm can still take necessary steps to protect its financial interest, including immediately selling the securities without notice to the customer.*
_    *You are not entitled to choose which security in your margin account is liquidated or sold to meet a margin call. Because the securities are collateral for the margin loan, the firm has the right to decide which security to sell in order to protect its interests.*
_    *The firm can increase its house maintenance margin requirement at any time and is not required to provide you advance written notice. These changes in firm policy often take effect immediately and may result in the issuance of a maintenance margin call. Your failure to satisfy the call may cause the member to liquidate or sell securities in your account.*
_    *You are not entitled to an extension of time on a margin call. While an extension of time to meet margin requirements may be available to customers under certain conditions, a customer does not have a right to the extension.*

*TWS FINANCIAL, LLC ANNUAL 2011-2012 DAY TRADING RISK DISCLOSURE STATEMENT RULE 2361*

*You should consider the following points before engaging in a day-trading strategy. For purposes of this notice, a "day-trading strategy" means an overall trading strategy characterized by the regular transmission by a customer of intra-day orders to effect both purchase and sale transactions in the same security or securities.*

**TradeWallStreet**
F I N A N C I A L

1101 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

NDV INVESTMENT COMPANY
SUITE 4 TEMPLE BUILDING MAIN & PRINCE
WILLIAM STREET
CHARLESTON

**Account Information**

Account Number:     38004503

**Statement Period**

June 1, 2011 to June 30, 2011

*Day trading can be extremely risky. Day trading generally is not appropriate for someone of limited resources and limited investment or trading experience and low risk tolerance. You should be prepared to lose all of the funds that you use for day trading. In particular, you should not fund day-trading activities with retirement savings, student loans, second mortgages, emergency funds, funds set aside for purposes such as education or home ownership, or funds required to meet your living expenses. Further, certain evidence indicates that an investment of less than $50,000 will significantly impair the ability of a day trader to make a profit. Of course, an investment of $50,000 or more will in no way guarantee success.*

*Be cautious of claims of large profits from day trading. You should be wary of advertisements or other statements that emphasize the potential for large profits in day trading. Day trading can also lead to large and immediate financial losses.*

*Day trading requires knowledge of securities markets. Day trading requires in-depth knowledge of the securities markets and trading techniques and strategies. In attempting to profit through day trading, you must compete with professional, licensed traders employed by securities firms. You should have appropriate experience before engaging in day trading.*

*Day trading requires knowledge of a firm's operations. You should be familiar with the securities firm's business practices, including the operation of the firm's order execution systems and procedures. Under certain market conditions, you may find it difficult or impossible to liquidate a position quickly at a reasonable price. This can occur, for example, when the market for a stock suddenly drops, or if trading is halted due to recent news events or unusual trading activity. The more volatile a stock is, the greater the likelihood that problems may be encountered in executing a transaction. In addition to normal market risks, you may experience losses due to system failures.*

*Day trading will generate substantial commissions, even if the per trade cost is low. Day trading involves aggressive trading, and generally you will pay commissions on each trade. The total daily commissions that you pay on your trades will add to your losses or significantly reduce your earnings. For instance, assuming that a trade costs $16 and an average of 29 transactions are conducted per day, an investor would need to generate an annual profit of $111,360 just to cover commission expenses.*

*Day trading on margin or short selling may result in losses beyond your initial investment. When you day trade with funds borrowed from a firm or someone else, you can lose more than the funds you originally placed at risk. A decline in the value of the securities that are purchased may require you to provide additional funds to the firm to avoid the forced sale of those securities or other securities in your account. Short selling as part of your day-trading strategy also may lead to extraordinary losses, because you may have to purchase a stock at a very high price in order to cover a short position.*

*Potential Registration Requirements: Persons providing investment advice for others or managing securities accounts for others may need to register as either an "Investment Advisor" under the Investment Advisors Act of 1940 or as a "Broker" or "Dealer" under the Securities Exchange Act of 1934. Such activities may also trigger state registration requirements.*

*TWS FINANCIAL, LLC ANNUAL 2011-2012 MARKET VOLATILITY AND TRADING PLATFORMS NOTICE*

*All trades are executed through Trade Wall Street Financial, Member of the FINRA and SIPC. Our clearing firm is Penson Financial Services. For more information, go to www.penson.com.*

*System response, trade executions and account access may be affected by market conditions, system performance, quote delays and other factors. The risk of loss in electronic trading can be substantial. You should therefore consider whether such trading is suitable for you in light of your financial resources. Money Market Funds are not FDIC Insured. Read our Risk Disclosures.*

# TradeWallStreet
**F I N A N C I A L**

1101 Pennsylvania Ave.
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

---

NDV INVESTMENT COMPANY
SUITE 4 TEMPLE BUILDING MAIN & PRINCE
WILLIAM STREET
CHARLESTON

| Account Information | |
|---|---|
| Account Number: | 38004503 |

| Statement Period |
|---|
| **June 1, 2011 to June 30, 2011** |

*After-Hours Trading*

There is no assurance that trades will be executed after the market closes.

*Loss of Principal*

Beware of the risk of trading.  Trading stocks and other investments are subject to fluctuations in value and possibly entire loss of principal.

*TWS FINANCIAL, LLC ANNUAL 2011-2012 PRIVACY NOTICE*

Trade Wall Street Financial is committed to protecting confidentiality of the information furnished to us by our clients.  We are providing you this information as required by Regulation S-P adopted by the Securities and Exchange Commission.

*Information about You that We Collect*

We collect non-public personal information about you from the following sources: information we receive from you on applications or other forms or through our Web Site and information we receive from a consumer-reporting agency.

*Our Use of Information about You*

Trade Wall Street Financial does not share your non-public personal information with any unaffiliated third parties with whom we have no contractual business relationships, unless:
- You give us written permission
- It is vital to completing a transaction for your account
- It is required by law to protect us against fraud or to comply with a subpoena or other court order.
We do not sell information about you to outside unaffiliated companies.

Trade Wall Street Financial has policies that restrict access to non-public personal information about you to those employees who have need for that information to provide investment alternatives or services to you, or to employees who assist those who provide investment alternatives or services to you.  We maintain physical, electronic, and procedural safeguards to protect your non-public personal information.

*TWS FINANCIAL, LLC ANNUAL 2011-2012 SIPC NOTICE*

All accounts are SIPC Protected for $500,000 Securities, including $100,000 claims for Cash.  Penson Financial Services, Inc. (PFSI) has also acquired "Excess SIPC" insurance from a third party insurer to protect client accounts up to their net equity for loss of securities and cash held at Penson Financial Services, Inc. (PFSI).  This "Excess SIPC" protection is in addition to the protection provided by the Securities and Investors Protection Act, which is administered by SIPC, and is subject to certain conditions and limitations, details of which are available upon request.  The above coverage does not protect against loss of the market value of securities.

# Trade Wall Street
### F I N A N C I A L

1101 Pennsylvania Ave.
Suite 600
Washington, DC 20004
(202) 449-7260

## Statement of Account

**NDV INVESTMENT COMPANY**
**SUITE 4 TEMPLE BUILDING MAIN & PRINCE**
**WILLIAM STREET**
**CHARLESTON**

| Account Information | |
| --- | --- |
| Account Number: | 38004503 |

| Statement Period |
| --- |
| **June 1, 2011 to June 30, 2011** |

## ACCOUNT REVIEW

*It is always the client's responsibility to review their investment accounts on a routine basis. If there are any discrepancies of any kind, including but not limited to: current equity, buying power, or positions, the client must contact Trade Wall Street Financial prior to acting on any information that does not match. Also, if you ever believe for any reason that anything is incorrect in your account, please make sure you always contact us before acting. If a client acts before contacting us to verify the validity of their account information or fails to review their account on a daily basis, any issues that arise as a result of not reviewing their information or contacting our firm in a timely manner will be solely the client's responsibility.*

*It is also the client's responsibility to review all their open orders daily, especially if you are placing GTC (good till canceled) orders. If you believe you had an order that for some reason is not showing on your software or have any other issues or problems with any orders, you will need to contact us immediately. You will be responsible for this daily review of your open orders. Any issues caused by the failure to do this review and to contact us in a timely manner to resolve any discrepancies will be solely the client's responsibility.*

## SHORT SALES

*The term 'short sale' means any sale of a security, which the seller does not own, or any sale, which is consummated by the delivery of a security, borrowed by, or for the account of the seller. For stocks hard to borrow, short sales must be preceded by a request to Trade Wall Street Financial to make sure stocks can be borrowed. We will then contact the Penson Stock Loan Department to ensure the availability of the stock. If approval is granted by the Penson Stock Loan Department, Trade Wall Street Financial will inform you that the stock can be sold short. If approval is not received, the security in question cannot be shorted. If you short a stock that has not been located, the transaction may be cancelled and you will be responsible for any losses incurred. Short sales made on stocks not located will result in a buy-in. All trades that violate these rules will be put into TWS Financial's error account. All losses will be charged back to your account. You will not receive any profit from these trades as they are illegally gained. Repeated violations of these rules can result in your account being closed. Assuming the security in question can be shorted, the short sale must take place as 'sell short'. If the trader uses a sell to place a short sale or over-sells a position, it is possible that the trade will be executed illegally. This is a violation of FINRA and SEC rules. The trader is responsible to cover any illegal position immediately with a corresponding buy. These corrections must be reported via e-mail to Trade Wall Street Financial at the end of the trading day.*

*It is your responsibility to review your confirmations and statements upon receipt or when they are made available electronically. Transactions shall be conclusive and binding upon you if no written objection is made to PFSI (within 10 days after available). In all cases PFSI reserves the right to determine the validity of any objection to the information contained in the statement.*

*Securities Investor Protection Corporation ("SIPC") does not cover commodity contracts and options on futures. For information about SIPC or to request a SIPC brochure, please see www.sipc.org or contact SIPC at (202) 371-8300.*

*DPP and REIT securities are generally illiquid and the estimated value of these securities may not be realized upon liquidation of the security. The value of the security will differ from the purchase price. In the event valuations are provided, they will be based upon estimated values obtained from the issuer's annual report. However, in some cases accurate valuation information is not available and will not be provided.*

*FINRA Rule 2340 requires that we advise you to promptly report any inaccuracy or discrepancy in your account to your brokerage firm and clearing firm (where these are different firms) and to re-confirm any oral communications in writing.*
*http://www.finra.org/web/groups/rules_regs/documents/notice_to_members/p018130.pdf*

*When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day your payment is received, and you will not receive your check back from your financial institution. Please contact your broker if you have questions about electronic check collection or do not want your payments collected electronically.*

# Trade Wall Street
**FINANCIAL**

1101 Pennsylvania Ave.
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

NDV INVESTMENT COMPANY
SUITE 4 TEMPLE BUILDING MAIN & PRINCE
WILLIAM STREET
CHARLESTON

**Account Information**

Account Number:     38004503

**Statement Period**

June 1, 2011 to June 30, 2011

*Pursuant to SEC Rule 606, Penson Financial Services, Inc. is required to make publicly available a quarterly report with regard to its routing of non-directed orders. For the purpose of this Rule, we have entered into an agreement with Quantum5 Market Surveillance (a Division of S3 Matching Technologies) to disclose all required information pertaining to this rule. This information can be accessed on the internet at: ftp://public.s3.com/11ac1-6/pfsi, or a written copy will be furnished at no cost upon request via telephone to 214-765-1009 or email to cs@penson.com.*

*SEC Rule 606(b) requires a broker-dealer to disclose to its customers, upon request, "the identity of the venue to which the customer's orders were routed for execution in the six months prior to the request, whether the orders were directed orders or non-directed orders, and the time of the transactions, if any, that resulted from such orders."*

*FINRA REQUIRES THAT WE NOTIFY YOU IN WRITING OF THE AVAILABILITY OF AN INVESTOR BROCHURE THAT INCLUDES INFORMATION DESCRIBING THE FINRA'S PUBLIC DISCLOSURE PROGRAM ('PROGRAM'). TO OBTAIN A BROCHURE OR MORE INFORMATION ABOUT THE PROGRAM OR FINRA, CONTACT THE FINRA PROGRAM HOTLINE AT (800) 289-9999 OR ACCESS THE FINRA WEB SITE AT www.finrabrokercheck.com*

**\* End of Statement \***



Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

NDV INVESTMENT COMPANY
SUITE 4 TEMPLE BUILDING MAIN & PRINCE
WILLIAM STREET
CHARLESTOWN_NEVIS

### Account Information

**Account Number:**    38004503
**Financial Advisor #:**  Y321

### Your Financial Advisor

**TRADEWALL STREET
FINANCIAL**

### Statement Period

**Mar. 1, 2011 to Mar. 31, 2011**

### Office Serving You

**1101 Pennsylvania Avenue
Suite 600
Washington D.C.  20004
(202) 449-7260**

## Account Value Summary

|  |  | Local Currency | Exchange Rate | Base Currency (USD) |
|---|---|---|---|---|
| USD | Money Fund Balance | 0.00 | | 0.00 |
| USD | Margin Loan Balance | (6.92) | | (6.92) |
| USD | **TOTAL ACCOUNT VALUE** | **(6.92)** | **1.0000** | **(6.92)** |
| PLN | No Value To Report | 0.00 | | 0.00 |
| PLN | **TOTAL ACCOUNT VALUE** | **0.00** | **0.3521** | **0.00** |
| | **GRAND TOTAL ( USD EQUIVALENT)** | | | **(6.92)** |

ACCOUNT VALUES ARE BASED ON PRICED SECURITIES. WE  MAY BE UNABLE TO PRICE ALL SECURITIES IN YOUR ACCOUNT.  FOR SOME OTHER FIXED INCOME SECURITIES, PRICES ARE APPROXIMATE (NOT ACTUAL MARKET BIDS) AND ARE PROVIDED ONLY AS A GENERAL GUIDE.  THEY  DO NOT NECESSARILY REFLECT ACTUAL MARKET PRICES.

# TradeWall Street
## FINANCIAL

1101 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

**NDV INVESTMENT COMPANY**
**SUITE 4 TEMPLE BUILDING MAIN & PRINCE**
**WILLIAM STREET**
**CHARLESTOWN_NEVIS**

### Account Information

| | |
|---|---|
| Account Number: | 38004503 |
| Financial Advisor #: | Y321 |

### Your Financial Advisor

TRADEWALL STREET FINANCIAL
(202) 449-7260

### Statement Period

March 1, 2011 to March 31, 2011

### Office Serving You

1101 Pennsylvania Avenue
Suite 600
Washington D.C. 20004
(202) 449-7260

## Account Value

| Asset Category | Current Value 03/31/11 | Prior Value 02/28/11 | Percent of Acct Assets | Estimated Annual Income | Estimated Current Yield |
|---|---|---|---|---|---|
| Money Fund Balance | 0.00 | 0.02 | | | |
| **Total: Portfolio Values** | **0.00** | **0.02** | | | |
| Less: Margin Loan Balance | (6.92) | (6.91) | | | |
| **Total Account Value** | **(6.92)** | **(6.89)** | | | |

## Asset Allocation

## Income Summary

| | This Period | Year to Date |
|---|---|---|
| **Money Fund Dividends - Tax Exempt** | 0.00 | 0.11 |
| **Margin Interest** | (0.03) | (6.94) |
| **Total: Income** | **(0.03)** | **(6.83)** |

The Account of the Customer is subject to the following terms and conditions ("Agreement") which the Customer agrees to and accepts by use, maintenance and/or continuation of the Account notwithstanding any notice or statement of intention to You to the contrary.

**1.   Definitions.**  "Account" shall refer individually and collectively to all accounts which the Customer has previously opened, now has open or may open in the future, in which the Customer has any interest, with You or any Introducing Broker, and any and all previous, current and future transactions in such accounts.  "Customer" refers to the individual(s) and/or entity(ies) in whose name the Account referenced on the face of this Account statement is carried or who may otherwise have any interest in an Account. "Introducing Broker" means any brokerage firm which introduces securities transactions on behalf of the Customer, which transactions are cleared through You, whether one or more.  "Obligations" means all indebtedness, debit balances, liabilities or other obligations of any kind of the Customer to You, whether now existing or hereafter arising.  "Securities or other Property" shall mean all money, securities, commodities or other property of every kind and nature and all contracts and options relating thereto, whether for present or future delivery.  "You" or "Your" refers to Penson Financial Services, Inc.

**2.   Payment of Indebtedness Upon Demand.**  The Customer shall at all times be liable for the payment upon demand of any Obligations owing from the Customer to You, and Customer shall be liable to You for any deficiency remaining in any Account in the event of the liquidation thereof, in whole or in part, by You, the Introducing Broker, or by the Customer, and the Customer shall pay such Obligations upon demand.

**3.   Security Interest; Liquidation.**  All Securities or other property now or hereafter held, carried or maintained by You in or for the Account shall be subject to a first and prior lien and security interest for the discharge of all of the Obligations of the Customer and are to be held by You as security for the payment of the Obligations of the Customer to You, to the fullest extent allowed by law.  You shall have the right to transfer Securities or other Property so held by You from or to any Account of the Customer whenever You so determine. Whenever the Customer does not, on or before the settlement date, pay in full for any Securities or other Property purchased for the Account of the Customer, or deliver any Securities or other Property sold for such Account, or if any other Obligations of the Customer to You are unpaid, You are authorized (a) until payment or delivery is made, to pledge, repledge, hypothecate or rehypothecate, without notice, any and all Securities or other Property which You may hold for the Customer (either individually or jointly with others), separately or in common with other Securities or other Property, for the sum then due or for a greater or lesser sum and without retaining in your possession and control for delivery a like amount of similar Securities or other Property; (b) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (c) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (d) to buy any or all Securities or other Property which may be short in such Account; and/or (a) to cancel any open orders and to close any or all outstanding contracts; all without notice of sale or purchase, or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein.  You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed.  Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account.  You are authorized, in Your discretion, should You for any reason whatsoever deem it necessary for Your protection, without notice, to cancel any outstanding order, to close out the Account of the Customer, in whole or in part, or to close out any commitment made on behalf of the Customer.

**4.   Lending Agreement; Margin or Short Accounts.**  With respect to any margin or short Account maintained by the Customer, You are authorized to lend to yourself, as principal or otherwise, or to others, any Securities or other Property held by You on margin for any Account or as collateral therefor either separately or without other securities. The Customer will at all times maintain such Securities or other Property in the Account of the Customer for margin and/or maintenance purposes as required by You in Your sole discretion, on demand, in accordance with Your general policies regarding margin and maintenance requirements, as such may be modified from time to time, or at other times as You may require, and will be charged, in accordance with Your usual custom or as otherwise determined by You with interest at rates permitted by the laws of the State of Texas.  With respect to any margin or short Account of the Customer, You shall have the right at any time and from time to time, in accordance with Your general policies regarding Your margin or maintenance requirements, short Accounts or Accounts in general, as such may be modified from time to time, or at an earlier Point in time than called for by said general policies, in the event that You feel insecure with respect to the Customer's account for any reason in Your sole discretion: (a) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (b) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (c) to buy any or all Securities or other Property which may be short in such Account; and/or (d) to cancel any open orders and to close any or all outstanding contracts; all without demand for margin or additional margin, notice of sale or purchase or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein. You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed.  Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account.

**5.   Account Carried as Clearing Broker.**  The Customer understands that You are carrying the Account of the Customer as clearing broker by arrangement with the Customer's Introducing Broker through whose courtesy the Account of the Customer has been introduced to You.  The Customer understands that You act as custodian for funds and securities deposited with You, through the Customer's Introducing Broker, or as a result of transactions You may process for the Customer's Account.  Inquiries regarding the Customer's Account or the activity therein should be directed to the Introducing Broker.  If Customer is unable to reach the Introducing Broker concerning account activity, or a complaint, Customer may contact Penson at 1700 Pacific Avenue, Suite 1400, Dallas, TX  75201, (214) 765-1100, and speak with the Compliance Department.  The Customer understands that the Introducing Broker and not You, is responsible for compliance with all applicable laws and regulations in connection with the Customer's Account.  Until receipt by You from the Customer of written notice to the contrary, you may accept and rely upon from such Introducing broker and its representatives employees and other agents, without any inquiry or investigation by You: (a) orders for the purchase or sale in the Customer's Account of Securities or other Property, and (b) any other instructions concerning the Customer's Account. The

(continued)

Customer understands that You act only to clear trades introduced by the Customer's Introducing Broker and to effect other back office functions for the Customer's Introducing Broker.  The Customer confirms to You that the Customer is relying for any advice concerning the Customer's Account solely on the Customer's Introducing Broker.  The Customer understands that You are not a principal of or partner with and do not control in any way, the Introducing Broker or its representatives, employees or other agents.  The Customer understands that You will not review the Customer's account and will have no responsibility for trades made in the Customer's Account.  The Customer agrees that You shall not be responsible or liable for any acts or omissions of the Introducing Broker or its representatives, employees or other agents.

**THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN CONJUNCTION WITH THESE DISCLOSURES:**

a.   ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORM IN WHICH A CLAIM IS FILED;

b.   ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING; A PARTY'S ABILITY TO HAVE A COURT REVERSE OR MODIFY AN ARBITRATION AWARD IS VERY LIMITED.

c.   THE ABILITY OF THE PARTIES TO OBTAIN DOCUMENTS, WITNESS STATEMENTS AND OTHER DISCOVERY IS GENERALLY MORE LIMITED IN ARBITRATION THAN IN COURT PROCEEDINGS;

d.   THE ARBITRATORS DO NOT HAVE TO EXPLAIN THE REASON(S) FOR THEIR AWARD.

e.   THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

f.   THE RULES OF SOME ARBITRATION FORUMS MAY IMPOSE TIME LIMITS FOR BRINGING A CLAIM IN ARBITRATION. IN SOME CASES, A CLAIM THAT IS INELIGIBLE FOR ARBITRATION MAY BE BROUGHT IN COURT.

g.   THE RULES OF THE ARBITRATION FORUM IN WHICH THE CLAIM IS FILED, AND ANY AMENDMENTS THERETO, SHALL BE INCORPORATED INTO THIS AGREEMENT.

**6.   ARBITRATION AGREEMENT.**  ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE UNDERSIGNED AND YOU, OR THE INTRODUCING BROKER, OR THE AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS OF YOU OR THE INTRODUCING BROKER, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S BUSINESS OR THE UNDERSIGNED'S ACCOUNTS, SHALL BE CONDUCTED PURSUANT TO THE CODE OF ARBITRATION PROCEDURE OF THE FINRA.  ARBITRATION MUST BE COMMENCED BY SERVICE OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE. THE DECISION AND AWARD OF THE ARBITRATOR (S) SHALL BE CONCLUSIVE AND BINDING UPON ALL PARTIES, AND ANY JUDGMENT UPON ANY AWARD RENDERED MAY BE ENTERED IN A COURT HAVING JURISDICTION THEREOF, AND NEITHER PARTY SHALL OPPOSE SUCH ENTRY.

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is de-certified; or (iii) the customer is excluded from the class by the court.  Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

**7.   Other Agreements; Option Transactions, Charges.**  The Customer agrees to be bound by the terms of Your Customer Account Agreement.  If the Customer trades on margin or has short positions, the Customer agrees to be bound by the terms of Your Customer Margin and Short Account Agreement.  If the Customer trades any options, the customer agrees to be bound by the terms of your Customer Option Agreement. If this is a joint Account, the Customers agree to be bound by Your Joint Account Agreement. The Customer understands that copies of these agreements are available from You and, to the extent applicable, are incorporated by reference herein.  The terms of these other agreements are in addition to the provisions of this Agreement and any other written agreements between You and the Customer.  You may charge the Customer Account maintenance fees, security transfer fees and account transfer fees, and other charges or fees as agreed between You and the Customer's Introducing Broker or as Independently established by You.

**8.   Option Account.**  Assignment notices for option contracts are allocated among client short positions pursuant to a manual procedure which randomly selects from all client short option positions, including positions established on the day of assignment, those contracts which are subject to exercise.  All American short option positions are subject to assignment at any time.  A more detailed description of Your random allocation procedure is available upon request.  In accordance with the Customer Option Agreement, if applicable, the Customer must promptly notify the Introducing Broker of any change in the Customer's objectives or financial situation.  Individual options commissions and other related charges have been included in the Customer's Confirmation; however, a summary of this information will be made available to the Customer upon request.  The customer must promptly advise the introducing broker of any material change in the customer's investment objectives or financial situation.

**9.   Miscellaneous.**  Customer's financial statement is available for personal inspection or will be mailed to the Customer's request.  The headings of each section of the Agreement are descriptive only and do not modify or qualify any provision of this Agreement.  Except as provided in this Agreement, no provision of this Agreement may be altered, modified or amended unless in writing signed by Your authorized representative.  This Agreement and all provisions shall inure to the benefit of You and Your successors, Your assigns, the Customer's Introducing Broker, and all other persons specified in Paragraph 6 above.  With respect to any free credit balance included on the Account statement, such funds are not segregated and may be used in Your business, subject to the limitations of 17 CFR Section 240.15c3-3 of the Securities Exchange Act of 1934.  The Customer may receive these funds in the normal course of business following demand to You.  You shall not be liable for losses caused directly or indirectly by any events beyond Your reasonable control.  The costs and expenses of collection of the debit balance and any unpaid deficiency in the Account of the Customer with You, including but not limited to reasonable attorneys' fees and expenses, incurred and payable or paid by You shall be payable to You by the Customer.  The estimated annual income, estimated current yield, and market value calculations are estimates only, and have been obtained or prepared from sources You consider to be reliable, but You make no assurance as to their accuracy.

# TradeWallStreet
## F I N A N C I A L

1101 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

**NDV INVESTMENT COMPANY**
**SUITE 4 TEMPLE BUILDING MAIN & PRINCE**
**WILLIAM STREET**
**CHARLESTOWN_NEVIS**

**Account Information**

| Account Number: | 38004503 |
|---|---|

**Statement Period**

March 1, 2011 to March 31, 2011

## Portfolio Positions

| Cash & Equivalents | Symbol/ Cusip | Account Type | Quantity | Current Price | Current Value | Percent of Acct Assets | Estimated Annual Income | Estimated Current Yield |
|---|---|---|---|---|---|---|---|---|
| Money Market Fund | | MoneyFund | | 1.00 | 0.00 | | | |
| **Total: Cash & Equivalents** | | | | | **0.00** | | | |
| | | | | | | | | |
| **Total: Portfolio Values** | | | | | **0.00** | | | |
| | | | | | | | | |
| Less: Margin Loan Balance | | Margin | | | (6.92) | | | |
| **Total: Account Net Assets/Equity** | | | | | **(6.92)** | | | |

*Account value and totals are based only on priced securities. We may be unable to price all securities in your account. For municipal securities and some other fixed income securities, prices are approximate (not actual market bids) and are provided only as a general guide. They do not necessarily reflect actual market prices. For current prices, please contact your financial consultant.*

## Account Activity

| Margin Account | Entry/Trade Date | Account Type | Transaction | Quantity | Description | Price | Amount |
|---|---|---|---|---|---|---|---|
| | | Margin | | | OPENING BALANCE | | (6.91) |
| | 03/01/11 | Margin | Received | | REDEEM: DAILY $$ INT'L RET'L | | .02 |
| | 03/31/11 | Margin | Debit Interest | | 7.45000%03/01-03/31   $6 | | (.03) |
| **Total: Margin Account Balance** | | | | | | | **(6.92)** |

**R&T Daily $ Intl Ltd**

| | | MoneyFund | | | OPENING BALANCE | | .02 |
|---|---|---|---|---|---|---|---|
| | 03/01/11 | MoneyFund | Disbursed | | REDEEM: DAILY $$ INT'L RET'L | | (.02) |
| **Total: Reich & Tang Daily $$ Int'l Ltd** | | | | | | | **0.00** |

# TradeWallStreet
## FINANCIAL

1104 Pennsylvania Ave.
Suite 600
Washington, DC 20004
(202) 449-7260

**Statement of Account**

---

**NDV INVESTMENT COMPANY**
**SUITE 4 TEMPLE BUILDING MAIN & PRINCE**
**WILLIAM STREET**
**CHARLESTOWN_NEVIS**

| Account Information | |
|---|---|
| Account Number: | 38004503 |

**Statement Period**

**March 1, 2011 to March 31, 2011**

*Settled Trades Summary:*

| | | | |
|---|---|---|---|
| *TOTAL PURCHASED (USD):* | 0.00 | *TOTAL SHARES PURCHASED:* | 0.00 |
| *TOTAL SOLD (USD):* | 0.00 | *TOTAL SHARES SOLD:* | 0.00 |

*A copy of the Penson Financial Services, Inc. (PFSI) Statement of Financial Condition at December 31, 2010 is available on the website at www.penson.com. A copy may also be obtained at no cost by calling 1-888-321-6162. At December 31, 2010, PFSI had net capital of $139,495,210, and was $96,493,676 in excess of its required net capital of $43,001,534. At February 28, 2011, PFSI had net capital of $141,651,483 and was $95,180,304 in excess of its required net capital of $46,471,179.*

*Pursuant to an agreement, a portion of each transaction fee or commission compensates brokerage firm, broker, advisor, finder, or foreign associate.*

*TWS FINANCIAL, LLC ANNUAL 2011-2012 MARGIN DISCLOSURE STATEMENT*

*We are furnishing this document to you to provide some basic facts about purchasing securities on margin, and to alert you to the risks involved with trading securities in a margin account. Before trading stocks in a margin account, you should carefully review the margin agreement provided by your broker. Consult your broker regarding any questions or concerns you may have with your margin accounts.*

*When you purchase securities, you may pay for the securities in full or you may borrow part of the purchase price from you brokerage firm. If you choose to borrow funds from your firm, you will open a margin account with the firm. The securities purchased are the firm's collateral for the loan to you. If the securities in your account decline in value, so does the value of the collateral supporting your loan, and as a result, the firm can take action, such as issue a margin call and/or sell securities in your account, in order to maintain the required equity in the account. It is important that you fully understand the risks involved in trading securities on margin. These risks include the following:*

_    *You can lose more funds than you deposit in the margin account. A decline in the value of the securities that are purchased on margin may require you to provide additional funds to the firm that has made the loan to avoid the forced sale of those securities or other securities in your account.*
_    *The firm can force the sale of securities in your account. If the equity in your account falls below the maintenance margin requirements under the law, or the firm's higher house requirements, the firm can sell the securities in your account to cover the margin deficiency. You will be responsible for any shortfall in the account after such a sale.*
_    *The firm can sell your securities without contacting you. Some investors mistakenly believe that a firm must contact them for a margin call to be valid, and that the firm cannot liquidate securities in their accounts to meet the call unless the firm has contacted them first. This is not the case. Most firms will attempt to notify their customers of margin calls, but they are not required to do so. However, even if a firm has contacted a customer and provided a specific date by which the customer can meet a margin call, the firm can still take necessary steps to protect its financial interest, including immediately selling the securities without notice to the customer.*
_    *You are not entitled to choose which security in your margin account is liquidated or sold to meet a margin call. Because the securities are collateral for the margin loan, the firm has the right to decide which security to sell in order to protect its interests.*
_    *The firm can increase its house maintenance margin requirement at any time and is not required to provide you advance written notice. These changes in firm policy often take effect immediately and may result in the issuance of a maintenance margin call. Your failure to satisfy the call may cause the member to liquidate or sell securities in your account.*
_    *You are not entitled to an extension of time on a margin call. While an extension of time to meet margin requirements may be available to customers under certain conditions, a customer does not have a right to the extension.*

**Trade Wall Street**
**F I N A N C I A L**

1101 Pennsylvania Ave.
Suite 600
Washington, DC 20004
(202) 449-7260

**Statement of Account**

---

NDV INVESTMENT COMPANY
SUITE 4 TEMPLE BUILDING MAIN & PRINCE
WILLIAM STREET
CHARLESTOWN_NEVIS

| Account Information | |
| --- | --- |
| Account Number: | 38004503 |

| Statement Period |
| --- |
| March 1, 2011 to March 31, 2011 |

*TWS FINANCIAL, LLC ANNUAL 2011-2012 DAY TRADING RISK DISCLOSURE STATEMENT RULE 2361*

*You should consider the following points before engaging in a day-trading strategy. For purposes of this notice, a "day-trading strategy" means an overall trading strategy characterized by the regular transmission by a customer of intra-day orders to effect both purchase and sale transactions in the same security or securities.*

*Day trading can be extremely risky. Day trading generally is not appropriate for someone of limited resources and limited investment or trading experience and low risk tolerance. You should be prepared to lose all of the funds that you use for day trading. In particular, you should not fund day-trading activities with retirement savings, student loans, second mortgages, emergency funds, funds set aside for purposes such as education or home ownership, or funds required to meet your living expenses. Further, certain evidence indicates that an investment of less than $50,000 will significantly impair the ability of a day trader to make a profit. Of course, an investment of $50,000 or more will in no way guarantee success.*

*Be cautious of claims of large profits from day trading. You should be wary of advertisements or other statements that emphasize the potential for large profits in day trading. Day trading can also lead to large and immediate financial losses.*

*Day trading requires knowledge of securities markets. Day trading requires in-depth knowledge of the securities markets and trading techniques and strategies. In attempting to profit through day trading, you must compete with professional, licensed traders employed by securities firms. You should have appropriate experience before engaging in day trading.*

*Day trading requires knowledge of a firm's operations. You should be familiar with the securities firm's business practices, including the operation of the firm's order execution systems and procedures. Under certain market conditions, you may find it difficult or impossible to liquidate a position quickly at a reasonable price. This can occur, for example, when the market for a stock suddenly drops, or if trading is halted due to recent news events or unusual trading activity. The more volatile a stock is, the greater the likelihood that problems may be encountered in executing a transaction. In addition to normal market risks, you may experience losses due to system failures.*

*Day trading will generate substantial commissions, even if the per trade cost is low. Day trading involves aggressive trading, and generally you will pay commissions on each trade. The total daily commissions that you pay on your trades will add to your losses or significantly reduce your earnings. For instance, assuming that a trade costs $16 and an average of 29 transactions are conducted per day, an investor would need to generate an annual profit of $111,360 just to cover commission expenses.*

*Day trading on margin or short selling may result in losses beyond your initial investment. When you day trade with funds borrowed from a firm or someone else, you can lose more than the funds you originally placed at risk. A decline in the value of the securities that are purchased may require you to provide additional funds to the firm to avoid the forced sale of those securities or other securities in your account. Short selling as part of your day-trading strategy also may lead to extraordinary losses, because you may have to purchase a stock at a very high price in order to cover a short position.*

*Potential Registration Requirements: Persons providing investment advice for others or managing securities accounts for others may need to register as either an "Investment Advisor" under the Investment Advisors Act of 1940 or as a "Broker" or "Dealer" under the Securities Exchange Act of 1934. Such activities may also trigger state registration requirements.*

*TWS FINANCIAL, LLC ANNUAL 2011-2012 MARKET VOLATILITY AND TRADING PLATFORMS NOTICE*

*All trades are executed through Trade Wall Street Financial, Member of the FINRA and SIPC. Our clearing firm is Penson Financial Services. For more information, go to www.penson.com.*

*System response, trade executions and account access may be affected by market conditions, system performance, quote delays and other factors. The risk of loss in electronic trading can be substantial. You should therefore consider whether such trading is suitable for you in light of your financial resources. Money Market Funds are not FDIC Insured. Read our Risk Disclosures.*

# Trade Wall Street
## F I N A N C I A L

104 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

| NDV INVESTMENT COMPANY | Account Information | Statement Period |
|---|---|---|
| SUITE 4 TEMPLE BUILDING MAIN & PRINCE | | |
| WILLIAM STREET | Account Number:    38004503 | March 1, 2011 to March 31, 2011 |
| CHARLESTOWN_NEVIS | | |

*After-Hours Trading*

*There is no assurance that trades will be executed after the market closes.*

*Loss of Principal*

*Beware of the risk of trading. Trading stocks and other investments are subject to fluctuations in value and possibly entire loss of principal.*

*TWS FINANCIAL, LLC ANNUAL 2011-2012 PRIVACY NOTICE*

*Trade Wall Street Financial is committed to protecting confidentiality of the information furnished to us by our clients. We are providing you this information as required by Regulation S-P adopted by the Securities and Exchange Commission.*

*Information about You that We Collect*

*We collect non-public personal information about you from the following sources: information we receive from you on applications or other forms or through our Web Site and information we receive from a consumer-reporting agency.*

*Our Use of Information about You*

*Trade Wall Street Financial does not share your non-public personal information with any unaffiliated third parties with whom we have no contractual business relationships, unless:*
*- You give us written permission*
*- It is vital to completing a transaction for your account*
*- It is required by law to protect us against fraud or to comply with a subpoena or other court order.*
*We do not sell information about you to outside unaffiliated companies.*

*Trade Wall Street Financial has policies that restrict access to non-public personal information about you to those employees who have need for that information to provide investment alternatives or services to you, or to employees who assist those who provide investment alternatives or services to you. We maintain physical, electronic, and procedural safeguards to protect your non-public personal information.*

*TWS FINANCIAL, LLC ANNUAL 2011-2012 SIPC NOTICE*

*All accounts are SIPC Protected for $500,000 Securities, including $100,000 claims for Cash. Penson Financial Services, Inc. (PFSI) has also acquired "Excess SIPC" insurance from a third party insurer to protect client accounts up to their net equity for loss of securities and cash held at Penson Financial Services, Inc. (PFSI). This "Excess SIPC" protection is in addition to the protection provided by the Securities and Investors Protection Act, which is administered by SIPC, and is subject to certain conditions and limitations, details of which are available upon request. The above coverage does not protect against loss of the market value of securities.*

**TradeWallStreet**
F I N A N C I A L

1104 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

**Statement of Account**

NDV INVESTMENT COMPANY
SUITE 4 TEMPLE BUILDING MAIN & PRINCE
WILLIAM STREET
CHARLESTOWN_NEVIS

**Account Information**

Account Number:          38004503

**Statement Period**

March 1, 2011 to March 31, 2011

*ACCOUNT REVIEW*

*It is always the client's responsibility to review their investment accounts on a routine basis. If there are any discrepancies of any kind, including but not limited to: current equity, buying power, or positions, the client must contact Trade Wall Street Financial prior to acting on any information that does not match. Also, if you ever believe for any reason that anything is incorrect in your account, please make sure you always contact us before acting. If a client acts before contacting us to verify the validity of their account information or fails to review their account on a daily basis, any issues that arise as a result of not reviewing their information or contacting our firm in a timely manner will be solely the client's responsibility.*

*It is also the client's responsibility to review all their open orders daily, especially if you are placing GTC (good till canceled) orders. If you believe you had an order that for some reason is not showing on your software or have any other issues or problems with any orders, you will need to contact us immediately. You will be responsible for this daily review of your open orders. Any issues caused by the failure to do this review and to contact us in a timely manner to resolve any discrepancies will be solely the client's responsibility.*

*SHORT SALES*

*The term 'short sale' means any sale of a security, which the seller does not own, or any sale, which is consummated by the delivery of a security, borrowed by, or for the account of the seller. For stocks hard to borrow, short sales must be preceded by a request to Trade Wall Street Financial to make sure stocks can be borrowed. We will then contact the Penson Stock Loan Department to ensure the availability of the stock. If approval is granted by the Penson Stock Loan Department, Trade Wall Street Financial will inform you that the stock can be sold short. If approval is not received, the security in question cannot be shorted. If you short a stock that has not been located, the transaction may be cancelled and you will be responsible for any losses incurred. Short sales made on stocks not located will result in a buy-in. All trades that violate these rules will be put into TWS Financial's error account. All losses will be charged back to your account. You will not receive any profit from these trades as they are illegally gained. Repeated violations of these rules can result in your account being closed. Assuming the security in question can be shorted, the short sale must take place as 'sell short'. If the trader uses a sell to place a short sale or over-sells a position, it is possible that the trade will be executed illegally. This is a violation of FINRA and SEC rules. The trader is responsible to cover any illegal position immediately with a corresponding buy. These corrections must be reported via e-mail to Trade Wall Street Financial at the end of the trading day.*

*It is your responsibility to review your confirmations and statements upon receipt or when they are made available electronically. Transactions shall be conclusive and binding upon you if no written objection is made to PFSI (within 10 days after available). In all cases PFSI reserves the right to determine the validity of any objection to the information contained in an account statement.*

*Securities Investor Protection Corporation ("SIPC") does not cover commodity contracts and options on futures. For information about SIPC or to request a SIPC brochure, please see www.sipc.org or contact SIPC at (202) 371-8300.*

*DPP and REIT securities are generally illiquid and the estimated value of these securities may not be realized upon liquidation of the security. The value of the security will differ from the purchase price. In the event valuations are provided, they will be based upon estimated values obtained from the issuer's annual report. However, in some cases accurate valuation information is not available and will not be provided.*

*FINRA Rule 2340 requires that we advise you to promptly report any inaccuracy or discrepancy in your account to your brokerage firm and clearing firm (where these are different firms) and to re-confirm any oral communications in writing.*
*http://www.finra.org/web/groups/rules_regs/documents/notice_to_members/p018130.pdf*

*When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day your payment is received, and you will not receive your check back from your financial institution. Please contact your broker if you have questions about electronic check collection or do not want your payments collected electronically.*

# Trade Wall Street
## F I N A N C I A L

104 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

**Statement of Account**

---

**NDV INVESTMENT COMPANY**
**SUITE 4 TEMPLE BUILDING MAIN & PRINCE**
**WILLIAM STREET**
**CHARLESTOWN_NEVIS**

**Account Information**

Account Number:   **38004503**

**Statement Period**

**March 1, 2011 to March 31, 2011**

*Pursuant to SEC Rule 606, Penson Financial Services, Inc. is required to make publicly available a quarterly report with regard to its routing of non-directed orders.  For the purpose of this Rule, we have entered into an agreement with Quantum5 Market Surveillance (a Division of S3 Matching Technologies) to disclose all required information pertaining to this rule.  This information can be accessed on the internet at:  ftp://public.s3.com/11ac1-6/pfsi, or a written copy will be furnished at no cost upon request via telephone to 214-765-1009 or email to cs@penson.com.*

*SEC Rule 606(b) requires a broker-dealer to disclose to its customers, upon request, "the identity of the venue to which the customer's orders were routed for execution in the six months prior to the request, whether the orders were directed orders or non-directed orders, and the time of the transactions, if any, that resulted from such orders."*

*FINRA REQUIRES THAT WE NOTIFY YOU IN WRITING OF THE AVAILABILITY OF AN INVESTOR BROCHURE THAT INCLUDES INFORMATION DESCRIBING THE FINRA'S PUBLIC DISCLOSURE PROGRAM ('PROGRAM').  TO OBTAIN A BROCHURE OR MORE INFORMATION ABOUT THE PROGRAM OR FINRA, CONTACT THE FINRA PROGRAM HOTLINE AT (800) 289-9999 OR ACCESS THE FINRA WEB SITE AT www.finrabrokercheck.com*

**\* End of Statement \***



Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

NDV INVESTMENT COMPANY
SUITE 4 TEMPLE BUILDING MAIN & PRINCE
WILLIAM STREET
CHARLESTOWN_NEVIS

### Account Information

**Account Number:**    38004503
**Financial Advisor #:**  Y321

### Your Financial Advisor

**TRADEWALL STREET
FINANCIAL**

### Statement Period

**May 1, 2011 to May 31, 2011**

### Office Serving You

**1101 Pennsylvania Avenue
Suite 600
Washington D.C.  20004
(202) 449-7260**

## Account Value Summary

|  |  | Local Currency | Exchange Rate | Base Currency (USD) |
|---|---|---|---|---|
| USD | Money Fund Balance | 0.00 | | 0.00 |
| USD | Margin Loan Balance | (6.97) | | (6.97) |
| USD | **TOTAL ACCOUNT VALUE** | **(6.97)** | **1.0000** | **(6.97)** |
| PLN | No Value To Report | 0.00 | | 0.00 |
| PLN | **TOTAL ACCOUNT VALUE** | **0.00** | **0.3635** | **0.00** |
| | **GRAND TOTAL ( USD EQUIVALENT)** | | | **(6.97)** |

ACCOUNT VALUES ARE BASED ON PRICED SECURITIES. WE  MAY BE UNABLE TO PRICE ALL SECURITIES IN YOUR ACCOUNT.  FOR SOME OTHER FIXED INCOME SECURITIES, PRICES ARE APPROXIMATE
(NOT ACTUAL MARKET BIDS) AND ARE PROVIDED ONLY AS A GENERAL GUIDE.  THEY  DO NOT NECESSARILY REFLECT ACTUAL MARKET PRICES.

# TradeWallStreet
## FINANCIAL

1101 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

NDV INVESTMENT COMPANY
SUITE 4 TEMPLE BUILDING MAIN & PRINCE
WILLIAM STREET
CHARLESTOWN_NEVIS

**Account Information**

| Account Number: | 38004503 |
|---|---|
| Financial Advisor #: | Y321 |

**Your Financial Advisor**

TRADEWALL STREET FINANCIAL
(202) 449-7260

**Statement Period**

May 1, 2011 to May 31, 2011

**Office Serving You**

1101 Pennsylvania Avenue
Suite 600
Washington D.C.  20004
(202) 449-7260

## Account Value

| Asset Category | Current Value 05/31/11 | Prior Value 04/29/11 | Percent of Acct Assets | Estimated Annual Income | Estimated Current Yield |
|---|---|---|---|---|---|
| Money Fund Balance | 0.00 | 0.00 | | | |
| Total: Portfolio Values | 0.00 | 0.00 | | | |
| Less:  Margin Loan Balance | (6.97) | (6.94) | | | |
| Total Account Value | (6.97) | (6.94) | | | |

## Asset Allocation

## Income Summary

| | This Period | Year to Date |
|---|---|---|
| Money Fund Dividends - Tax Exempt | 0.00 | 0.11 |
| Margin Interest | (0.03) | (6.99) |
| Total: Income | (0.03) | (6.88) |

The Account of the Customer is subject to the following terms and conditions ("Agreement") which the Customer agrees to and accepts by use, maintenance and/or continuation of the Account notwithstanding any notice or statement of intention to You to the contrary.

**1.    Definitions.**  "Account" shall refer individually and collectively to all accounts which the Customer has previously opened, now has open or may open in the future, in which the Customer has any interest, with You or any Introducing Broker, and any and all previous, current and future transactions in such accounts. "Customer" refers to the individual(s) and/or entity(ies) in whose name the Account referenced on the face of this Account statement is carried or who may otherwise have any interest in an Account. "Introducing Broker" means any brokerage firm which introduces securities transactions on behalf of the Customer, which transactions are cleared through You, whether one or more. "Obligations" means all indebtedness, debit balances, liabilities or other obligations of any kind of the Customer to You, whether now existing or hereafter arising. "Securities or other Property" shall mean all money, securities, commodities or other property of every kind and nature and all contracts and options relating thereto, whether for present or future delivery. "You" or "Your" refers to Penson Financial Services, Inc.

**2.    Payment of Indebtedness Upon Demand.**  The Customer shall at all times be liable for the payment upon demand of any Obligations owing from the Customer to You, and Customer shall be liable to You for any deficiency remaining in any Account in the event of the liquidation thereof, in whole or in part, by You, the Introducing Broker, or by the Customer, and the Customer shall pay such Obligations upon demand.

**3.    Security Interest; Liquidation.**  All Securities or other property now or hereafter held, carried or maintained by You in or for the Account shall be subject to a first and prior lien and security interest for the discharge of all of the Obligations of the Customer and are to be held by You as security for the payment of the Obligations of the Customer to You, to the fullest extent allowed by law.  You shall have the right to transfer Securities or other Property so held by You from or to any Account of the Customer whenever You so determine. Whenever the Customer does not, on or before the settlement date, pay in full for any Securities or other Property purchased for the Account of the Customer, or deliver any Securities or other Property sold for such Account, or if any other Obligations of the Customer to You are unpaid, You are authorized (a) until payment or delivery is made, to pledge, repledge, hypothecate or rehypothecate, without notice, any and all Securities or other Property which You may hold for the Customer (either individually or jointly with others), separately or in common with other Securities or other Property, for the sum then due or for a greater or lesser sum and without retaining in your possession and control for delivery a like amount of similar Securities or other Property; (b) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (c) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (d) to buy any or all Securities or other Property which may be short in such Account; and/or (a) to cancel any open orders and to close any or all outstanding contracts; all without notice of sale or purchase, or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein.  You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed.  Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account.  You are authorized, in Your discretion, should You for any reason whatsoever deem it necessary for Your protection, without notice, to cancel any outstanding order, to close out the Account of the Customer, in whole or in part, or to close out any commitment made on behalf of the Customer.

**4.    Lending Agreement; Margin or Short Accounts.**  With respect to any margin or short Account maintained by the Customer, You are authorized to lend to yourself, as principal or otherwise, or to others, any Securities or other Property held by You on margin for any Account or as collateral therefor either separately or without other securities. The Customer will at all times maintain such Securities or other Property in the Account of the Customer for margin and/or maintenance purposes as required by You in Your sole discretion, on demand, in accordance with Your general policies regarding margin and maintenance requirements, as such may be modified from time to time, or at other times as You may require, and will be charged, in accordance with Your usual custom or as otherwise determined by You with interest at rates permitted by the laws of the State of Texas.  With respect to any margin or short Account of the Customer, You shall have the right at any time and from time to time, in accordance with Your general policies regarding Your margin or maintenance requirements, short Accounts or Accounts in general, as such may be modified from time to time, or at an earlier Point in time than called for by said general policies, in the event that You feel insecure with respect to the Customer's account for any reason in Your sole discretion: (a) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (b) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (c) to buy any or all Securities or other Property which may be short in such Account, and/or (d) to cancel any open orders and to close any or all outstanding contracts; all without demand for margin or additional margin, notice of sale or purchase or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein.  You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed.  Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account.

**5.    Account Carried as Clearing Broker.**  The Customer understands that You are carrying the Account of the Customer as clearing broker by arrangement with the Customer's Introducing Broker through whose courtesy the Account of the Customer has been introduced to You.  The Customer understands that You act as custodian for funds and securities deposited with You, through the Customer's Introducing Broker, or as a result of transactions You may process for the Customer's Account.  Inquiries regarding the Customer's Account or the activity therein should be directed to the Introducing Broker.  If Customer is unable to reach the Introducing Broker concerning account activity, or a complaint, Customer may contact Penson at 1700 Pacific Avenue, Suite 1400, Dallas, TX  75201, (214) 765-1100, and speak with the Compliance Department.  The Customer understands that the Introducing Broker and not You, is responsible for compliance with all applicable laws and regulations in connection with the Customer's Account.  Until receipt by You from the Customer of written notice to the contrary, you may accept and rely upon from such Introducing broker and its representatives employees and other agents, without any inquiry or investigation by You: (a) orders for the purchase or sale in the Customer's Account of Securities or other Property, and (b) any other instructions concerning the Customer's Account. The

**(continued)**
Customer understands that You act only to clear trades introduced by the Customer's Introducing Broker and to effect other back office functions for the Customer's Introducing Broker.  The Customer confirms to You that the Customer is relying for any advice concerning the Customer's Account solely on the Customer's Introducing Broker.  The Customer understands that You are not a principal of or partner with and do not control in any way, the Introducing Broker or its representatives, employees or other agents.  The Customer understands that You will not review the Customer's account and will have no responsibility for trades made in the Customer's Account.  The Customer agrees that You shall not be responsible for or liable for any acts or omissions of the Introducing Broker or its representatives, employees or other agents.

**THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN CONJUNCTION WITH THESE DISCLOSURES:**

a.    ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORM IN WHICH A CLAIM IS FILED;

b.    ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING; A PARTY'S ABILITY TO HAVE A COURT REVERSE OR MODIFY AN ARBITRATION AWARD IS VERY LIMITED.

c.    THE ABILITY OF THE PARTIES TO OBTAIN DOCUMENTS, WITNESS STATEMENTS AND OTHER DISCOVERY IS GENERALLY MORE LIMITED IN ARBITRATION THAN IN COURT PROCEEDINGS;

d.    THE ARBITRATORS DO NOT HAVE TO EXPLAIN THE REASON(S) FOR THEIR AWARD.

e.    THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

f.    THE RULES OF SOME ARBITRATION FORUMS MAY IMPOSE TIME LIMITS FOR BRINGING A CLAIM IN ARBITRATION. IN SOME CASES, A CLAIM THAT IS INELIGIBLE FOR ARBITRATION MAY BE BROUGHT IN COURT.

g.    THE RULES OF THE ARBITRATION FORUM IN WHICH THE CLAIM IS FILED, AND ANY AMENDMENTS THERETO, SHALL BE INCORPORATED INTO THIS AGREEMENT.

**6.    ARBITRATION AGREEMENT.**  ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE UNDERSIGNED AND YOU, OR THE INTRODUCING BROKER, OR THE AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS OF YOU OR THE INTRODUCING BROKER, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S BUSINESS OR THE UNDERSIGNED'S ACCOUNTS, SHALL BE CONDUCTED PURSUANT TO THE CODE OF ARBITRATION PROCEDURE OF THE FINRA.  ARBITRATION MUST BE COMMENCED BY SERVICE OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE. THE DECISION AND AWARD OF THE ARBITRATOR (S) SHALL BE CONCLUSIVE AND BINDING UPON ALL PARTIES, AND ANY JUDGMENT UPON ANY AWARD RENDERED MAY BE ENTERED IN A COURT HAVING JURISDICTION THEREOF, AND NEITHER PARTY SHALL OPPOSE SUCH ENTRY.

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is de-certified; or (iii) the customer is excluded from the class by the court.  Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

**7.    Other Agreements; Option Transactions, Charges.**  The Customer agrees to be bound by the terms of Your Customer Account Agreement.  If the Customer trades on margin or has short positions, the Customer agrees to be bound by the terms of Your Customer Margin and Short Account Agreement.  If the Customer trades any options, the customer agrees to be bound by the terms of your Customer Option Agreement. If this is a joint Account, the Customers agree to be bound by Your Joint Account Agreement. The Customer understands that copies of these agreements are available from You and, to the extent applicable, are incorporated by reference herein.  The terms of these other agreements are in addition to the provisions of this Agreement and any other written agreements between You and the Customer.  You may charge the Customer Account maintenance fees, security transfer fees and account transfer fees, and other charges or fees as agreed between You and the Customer's Introducing Broker or as independently established by You.

**8.    Option Account.**  Assignment notices for option contracts are allocated among client short positions pursuant to a manual procedure which randomly selects from all client short option positions, including positions established on the day of assignment, those contracts which are subject to exercise.  All American short option positions are subject to assignment at any time.  A more detailed description of Your random allocation procedure is available upon request.  In accordance with the Customer Option Agreement, if applicable, the Customer must promptly notify the Introducing Broker of any change in the Customer's objectives or financial situation.  Individual options commissions and other related charges have been included in the Customer's Confirmation; however, a summary of this information will be made available to the Customer upon request.  The customer must promptly advise the introducing broker of any material change in the customer's investment objectives or financial situation.

**9.    Miscellaneous.**  Customer's financial statement is available for personal inspection or will be mailed on the Customer's request.  The headings of each section of the Agreement are descriptive only and do not modify or qualify any provision of this Agreement.  Except as provided in this Agreement, no provision of this Agreement may be altered, modified or amended unless in writing signed by Your authorized representative.  This Agreement and all provisions shall inure to the benefit of You and Your successors, Your assigns, the Customer's Introducing Broker, and all other persons specified in Paragraph 6 above.  Within seven (7) business days of the last funded debit balance included on the Account statement, such funds are not segregated and may be used in Your business, subject to the limitations of 17 CFR Section 24O.15c3-3 of the Securities Exchange Act of 1934.  The Customer may receive these funds in the normal course of business following demand to You.  You shall not be liable for losses caused directly or indirectly by any events beyond Your reasonable control.  The costs and expenses of collection of the debit balance and any unpaid deficiency in the Account of the Customer with You, including but not limited to reasonable attorneys' fees and expenses, incurred and payable or paid by You shall be payable to You by the Customer.  The estimated annual income, estimated current yield, and market value calculations are estimates only, and have been obtained or prepared from sources You consider to be reliable, but You make no assurance as to their accuracy.

# Trade**Wall**Street
## F I N A N C I A L

104 Pennsylvania Ave.
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

**NDV INVESTMENT COMPANY**
**SUITE 4 TEMPLE BUILDING MAIN & PRINCE**
**WILLIAM STREET**
**CHARLESTOWN_NEVIS**

| Account Information | |
|---|---|
| Account Number: | **38004503** |

| Statement Period |
|---|
| **May 1, 2011 to May 31, 2011** |

## Portfolio Positions

| | Symbol/ Cusip | Account Type | Quantity | Current Price | Current Value | Percent of Acct Assets | Estimated Annual Income | Estimated Current Yield |
|---|---|---|---|---|---|---|---|---|
| Total: Portfolio Values | | | | | 0.00 | | | |
| | | | | | | | | |
| Less: Margin Loan Balance | | Margin | | | (6.97) | | | |
| | | | | | | | | |
| Total: Account Net Assets/Equity | | | | | (6.97) | | | |

*Account value and totals are based only on priced securities. We may be unable to price all securities in your account. For municipal securities and some other fixed income securities, prices are approximate (not actual market bids) and are provided only as a general guide. They do not necessarily reflect actual market prices. For current prices, please contact your financial consultant.*

## Account Activity

| Margin Account | Entry/Trade Date | Account Type | Transaction | Quantity | Description | | Price | Amount |
|---|---|---|---|---|---|---|---|---|
| | | Margin | | | OPENING BALANCE | | | (6.94) |
| | 05/31/11 | Margin | Debit Interest | | 7.45000%/04/30-05/31 | $6 | | (.03) |
| Total: Margin Account Balance | | | | | | | | (6.97) |

# TradeWallStreet
## F I N A N C I A L

1101 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

**Statement of Account**

| | | |
|---|---|---|
| NDV INVESTMENT COMPANY | **Account Information** | **Statement Period** |
| SUITE 4 TEMPLE BUILDING MAIN & PRINCE | **Account Number:**    38004503 | **May 1, 2011 to May 31, 2011** |
| WILLIAM STREET | | |
| CHARLESTOWN_NEVIS | | |

*Settled Trades Summary:*

| | | | |
|---|---|---|---|
| *TOTAL PURCHASED (USD):* | 0.00 | *TOTAL SHARES PURCHASED:* | 0.00 |
| *TOTAL SOLD (USD):* | 0.00 | *TOTAL SHARES SOLD:* | 0.00 |

*Pursuant to an agreement, a portion of each transaction fee or commission compensates brokerage firm, broker, advisor, finder, or foreign associate.*

*TWS FINANCIAL, LLC ANNUAL 2011-2012 MARGIN DISCLOSURE STATEMENT*

*We are furnishing this document to you to provide some basic facts about purchasing securities on margin, and to alert you to the risks involved with trading securities in a margin account. Before trading stocks in a margin account, you should carefully review the margin agreement provided by your broker. Consult your broker regarding any questions or concerns you may have with your margin accounts.*

*When you purchase securities, you may pay for the securities in full or you may borrow part of the purchase price from you brokerage firm. If you choose to borrow funds from your firm, you will open a margin account with the firm. The securities purchased are the firm's collateral for the loan to you. If the securities in your account decline in value, so does the value of the collateral supporting your loan, and as a result, the firm can take action, such as issue a margin call and/or sell securities in your account, in order to maintain the required equity in the account. It is important that you fully understand the risks involved in trading securities on margin. These risks include the following:*

*_    You can lose more funds than you deposit in the margin account. A decline in the value of the securities that are purchased on margin may require you to provide additional funds to the firm that has made the loan to avoid the forced sale of those securities or other securities in your account.*
*_    The firm can force the sale of securities in your account. If the equity in your account falls below the maintenance margin requirements under the law, or the firm's higher house requirements, the firm can sell the securities in your account to cover the margin deficiency. You will be responsible for any shortfall in the account after such a sale.*
*_    The firm can sell your securities without contacting you. Some investors mistakenly believe that a firm must contact them for a margin call to be valid, and that the firm cannot liquidate securities in their accounts to meet the call unless the firm has contacted them first. This is not the case. Most firms will attempt to notify their customers of margin calls, but they are not required to do so. However, even if a firm has contacted a customer and provided a specific date by which the customer can meet a margin call, the firm can still take necessary steps to protect its financial interest, including immediately selling the securities without notice to the customer.*
*_    You are not entitled to choose which security in your margin account is liquidated or sold to meet a margin call. Because the securities are collateral for the margin loan, the firm has the right to decide which security to sell in order to protect its interests.*
*_    The firm can increase its house maintenance margin requirement at any time and is not required to provide you advance written notice. These changes in firm policy often take effect immediately and may result in the issuance of a maintenance margin call. Your failure to satisfy the call may cause the member to liquidate or sell securities in your account.*
*_    You are not entitled to an extension of time on a margin call. While an extension of time to meet margin requirements may be available to customers under certain conditions, a customer does not have a right to the extension.*

*TWS FINANCIAL, LLC ANNUAL 2011-2012 DAY TRADING RISK DISCLOSURE STATEMENT RULE 2361*

*You should consider the following points before engaging in a day-trading strategy. For purposes of this notice, a "day-trading strategy" means an overall trading strategy characterized by the regular transmission by a customer of intra-day orders to effect both purchase and sale transactions in the same security or securities.*

# TradeWallStreet
### F I N A N C I A L

104 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

## Statement of Account

| | | | |
|---|---|---|---|
| NDV INVESTMENT COMPANY | **Account Information** | | **Statement Period** |
| SUITE 4 TEMPLE BUILDING MAIN & PRINCE | **Account Number:** 38004503 | | **May 1, 2011 to May 31, 2011** |
| WILLIAM STREET | | | |
| CHARLESTOWN_NEVIS | | | |

*Day trading can be extremely risky. Day trading generally is not appropriate for someone of limited resources and limited investment or trading experience and low risk tolerance. You should be prepared to lose all of the funds that you use for day trading. In particular, you should not fund day-trading activities with retirement savings, student loans, second mortgages, emergency funds, funds set aside for purposes such as education or home ownership, or funds required to meet your living expenses. Further, certain evidence indicates that an investment of less than $50,000 will significantly impair the ability of a day trader to make a profit. Of course, an investment of $50,000 or more will in no way guarantee success.*

*Be cautious of claims of large profits from day trading. You should be wary of advertisements or other statements that emphasize the potential for large profits in day trading. Day trading can also lead to large and immediate financial losses.*

*Day trading requires knowledge of securities markets. Day trading requires in-depth knowledge of the securities markets and trading techniques and strategies. In attempting to profit through day trading, you must compete with professional, licensed traders employed by securities firms. You should have appropriate experience before engaging in day trading.*

*Day trading requires knowledge of a firm's operations. You should be familiar with the securities firm's business practices, including the operation of the firm's order execution systems and procedures. Under certain market conditions, you may find it difficult or impossible to liquidate a position quickly at a reasonable price. This can occur, for example, when the market for a stock suddenly drops, or if trading is halted due to recent news events or unusual trading activity. The more volatile a stock is, the greater the likelihood that problems may be encountered in executing a transaction. In addition to normal market risks, you may experience losses due to system failures.*

*Day trading will generate substantial commissions, even if the per trade cost is low. Day trading involves aggressive trading, and generally you will pay commissions on each trade. The total daily commissions that you pay on your trades will add to your losses or significantly reduce your earnings. For instance, assuming that a trade costs $16 and an average of 29 transactions are conducted per day, an investor would need to generate an annual profit of $111,360 just to cover commission expenses.*

*Day trading on margin or short selling may result in losses beyond your initial investment. When you day trade with funds borrowed from a firm or someone else, you can lose more than the funds you originally placed at risk. A decline in the value of the securities that are purchased may require you to provide additional funds to the firm to avoid the forced sale of those securities or other securities in your account. Short selling as part of your day-trading strategy also may lead to extraordinary losses, because you may have to purchase a stock at a very high price in order to cover a short position.*

*Potential Registration Requirements: Persons providing investment advice for others or managing securities accounts for others may need to register as either an "Investment Advisor" under the Investment Advisors Act of 1940 or as a "Broker" or "Dealer" under the Securities Exchange Act of 1934. Such activities may also trigger state registration requirements.*

*TWS FINANCIAL, LLC ANNUAL 2011-2012 MARKET VOLATILITY AND TRADING PLATFORMS NOTICE*

*All trades are executed through Trade Wall Street Financial, Member of the FINRA and SIPC. Our clearing firm is Penson Financial Services. For more information, go to www.penson.com.*

*System response, trade executions and account access may be affected by market conditions, system performance, quote delays and other factors. The risk of loss in electronic trading can be substantial. You should therefore consider whether such trading is suitable for you in light of your financial resources. Money Market Funds are not FDIC Insured. Read our Risk Disclosures.*

# TradeWallStreet
**F I N A N C I A L**

104 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

# Statement of Account

| | | |
|---|---|---|
| NDV INVESTMENT COMPANY<br>SUITE 4 TEMPLE BUILDING MAIN & PRINCE<br>WILLIAM STREET<br>CHARLESTOWN_NEVIS | **Account Information**<br><br>Account Number:   38004503 | **Statement Period**<br><br>May 1, 2011 to May 31, 2011 |

*After-Hours Trading*

*There is no assurance that trades will be executed after the market closes.*

*Loss of Principal*

*Beware of the risk of trading.  Trading stocks and other investments are subject to fluctuations in value and possibly entire loss of principal.*

*TWS FINANCIAL, LLC ANNUAL 2011-2012 PRIVACY NOTICE*

*Trade Wall Street Financial is committed to protecting confidentiality of the information furnished to us by our clients.  We are providing you this information as required by Regulation S-P adopted by the Securities and Exchange Commission.*

*Information about You that We Collect*

*We collect non-public personal information about you from the following sources: information we receive from you on applications or other forms or through our Web Site and information we receive from a consumer-reporting agency.*

*Our Use of Information about You*

*Trade Wall Street Financial does not share your non-public personal information with any unaffiliated third parties with whom we have no contractual business relationships, unless:*
*- You give us written permission*
*- It is vital to completing a transaction for your account*
*- It is required by law to protect us against fraud or to comply with a subpoena or other court order.*
*We do not sell information about you to outside unaffiliated companies.*

*Trade Wall Street Financial has policies that restrict access to non-public personal information about you to those employees who have need for that information to provide investment alternatives or services to you, or to employees who assist those who provide investment alternatives or services to you.  We maintain physical, electronic, and procedural safeguards to protect your non-public personal information.*

*TWS FINANCIAL, LLC ANNUAL 2011-2012 SIPC NOTICE*

*All accounts are SIPC Protected for $500,000 Securities, including $100,000 claims for Cash.  Penson Financial Services, Inc. (PFSI) has also acquired "Excess SIPC" insurance from a third party insurer to protect client accounts up to their net equity for loss of securities and cash held at Penson Financial Services, Inc. (PFSI).  This "Excess SIPC" protection is in addition to the protection provided by the Securities and Investors Protection Act, which is administered by SIPC, and is subject to certain conditions and limitations, details of which are available upon request.  The above coverage does not protect against loss of the market value of securities.*

# Trade Wall Street
**F I N A N C I A L**

1101 Pennsylvania Ave
Suite 600
Washington, DC 20004
(202) 449-7260

**Statement of Account**

---

**NDV INVESTMENT COMPANY**
**SUITE 4 TEMPLE BUILDING MAIN & PRINCE**
**WILLIAM STREET**
**CHARLESTOWN_NEVIS**

| Account Information | | Statement Period |
|---|---|---|
| **Account Number:** | **38004503** | **May 1, 2011 to May 31, 2011** |

## ACCOUNT REVIEW

*It is always the client's responsibility to review their investment accounts on a routine basis. If there are any discrepancies of any kind, including but not limited to: current equity, buying power, or positions, the client must contact Trade Wall Street Financial prior to acting on any information that does not match. Also, if you ever believe for any reason that anything is incorrect in your account, please make sure you always contact us before acting. If a client acts before contacting us to verify the validity of their account information or fails to review their account on a daily basis, any issues that arise as a result of not reviewing their information or contacting our firm in a timely manner will be solely the client's responsibility.*

*It is also the client's responsibility to review all their open orders daily, especially if you are placing GTC (good till canceled) orders. If you believe you had an order that for some reason is not showing on your software or have any other issues or problems with any orders, you will need to contact us immediately. You will be responsible for this daily review of your open orders. Any issues caused by the failure to do this review and to contact us in a timely manner to resolve any discrepancies will be solely the client's responsibility.*

## SHORT SALES

*The term 'short sale' means any sale of a security, which the seller does not own, or any sale, which is consummated by the delivery of a security, borrowed by, or for the account of the seller. For stocks hard to borrow, short sales must be preceded by a request to Trade Wall Street Financial to make sure stocks can be borrowed. We will then contact the Penson Stock Loan Department to ensure the availability of the stock. If approval is granted by the Penson Stock Loan Department, Trade Wall Street Financial will inform you that the stock can be sold short. If approval is not received, the security in question cannot be shorted. If you short a stock that has not been located, the transaction may be cancelled and you will be responsible for any losses incurred. Short sales made on stocks not located will result in a buy-in. All trades that violate these rules will be put into TWS Financial's error account. All losses will be charged back to your account. You will not receive any profit from these trades as they are illegally gained. Repeated violations of these rules can result in your account being closed. Assuming the security in question can be shorted, the short sale must take place as 'sell short'. If the trader uses a sell to place a short sale or over-sells a position, it is possible that the trade will be executed illegally. This is a violation of FINRA and SEC rules. The trader is responsible to cover any illegal position immediately with a corresponding buy. These corrections must be reported via e-mail to Trade Wall Street Financial at the end of the trading day.*

*It is your responsibility to review your confirmations and statements upon receipt or when they are made available electronically. Transactions shall be conclusive and binding upon you if no written objection is made to PFSI (within 10 days after available). In all cases PFSI reserves the right to determine the validity of any objection to the information contained in an account statement.*

*Securities Investor Protection Corporation ("SIPC") does not cover commodity contracts and options on futures. For information about SIPC or to request a SIPC brochure, please see www.sipc.org or contact SIPC at (202) 371-8300.*

*DPP and REIT securities are generally illiquid and the estimated value of these securities may not be realized upon liquidation of the security. The value of the security will differ from the purchase price. In the event valuations are provided, they will be based upon estimated values obtained from the issuer's annual report. However, in some cases accurate valuation information is not available and will not be provided.*

*FINRA Rule 2340 requires that we advise you to promptly report any inaccuracy or discrepancy in your account to your brokerage firm and clearing firm (where these are different firms) and to re-confirm any oral communications in writing. http://www.finra.org/web/groups/rules_regs/documents/notice_to_members/p018130.pdf*

*When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day your payment is received, and you will not receive your check back from your financial institution. Please contact your broker if you have questions about electronic check collection or do not want your payments collected electronically.*

# Trade WallStreet
### F I N A N C I A L

1101 Pennsylvania Ave.
Suite 600
Washington, DC 20004
(202) 449-7260

## Statement of Account

| | | | |
|---|---|---|---|
| **NDV INVESTMENT COMPANY** | **Account Information** | | **Statement Period** |
| **SUITE 4 TEMPLE BUILDING MAIN & PRINCE** | **Account Number:**   38004503 | | **May 1, 2011 to May 31, 2011** |
| **WILLIAM STREET** | | | |
| **CHARLESTOWN_NEVIS** | | | |

*Pursuant to SEC Rule 606, Penson Financial Services, Inc. is required to make publicly available a quarterly report with regard to its routing of non-directed orders. For the purpose of this Rule, we have entered into an agreement with Quantum5 Market Surveillance (a Division of S3 Matching Technologies) to disclose all required information pertaining to this rule. This information can be accessed on the internet at: ftp://public.s3.com/11ac1-6/pfsi, or a written copy will be furnished at no cost upon request via telephone to 214-765-1009 or email to cs@penson.com.*

*SEC Rule 606(b) requires a broker-dealer to disclose to its customers, upon request, "the identity of the venue to which the customer's orders were routed for execution in the six months prior to the request, whether the orders were directed orders or non-directed orders, and the time of the transactions, if any, that resulted from such orders."*

*FINRA REQUIRES THAT WE NOTIFY YOU IN WRITING OF THE AVAILABILITY OF AN INVESTOR BROCHURE THAT INCLUDES INFORMATION DESCRIBING THE FINRA'S PUBLIC DISCLOSURE PROGRAM ('PROGRAM'). TO OBTAIN A BROCHURE OR MORE INFORMATION ABOUT THE PROGRAM OR FINRA, CONTACT THE FINRA PROGRAM HOTLINE AT (800) 289-9999 OR ACCESS THE FINRA WEB SITE AT www.finrabrokercheck.com*

**\* End of Statement \***